JAMES D. BOYLE, ESQ.
Nevada Bar No. 08384
E-mail:  jboyle@nevadafirm.com
F. THOMAS EDWARDS, ESQ.
Nevada Bar No. 09549
Email:  tedwards@nevadafirm.com
HOLLEY DRIGGS WALCH
FINE WRAY PUZEY & THOMPSON
400 South Fourth Street, Suite 300
Las Vegas, Nevada 89101
Phone: 702/791-0308
Fax:    702/791-1912

JEFFREY MALSCH, ESQ.
(Pro Hac Vice Application Forthcoming)
E-mail: jmalsch@pmlegalfirm.com
DANNY C. LALLIS, ESQ.
(Pro Hac Vice Application Forthcoming)
E-mail: dlallis@pmlegalfirm.com
PISCIOTTI MALSCH PC
30 Columbia Turnpike, Suite 205
Florham Park, New Jersey 07932
Phone: (973) 245-8100

*Attorneys for Defendant Slide Fire Solutions, LP*

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| DEVON PRESCOTT, individually and on behalf of all those similarly situated; BROOKE FREEMAN, individually and on behalf of all those similarly situated; TASANEEPORN UPRIGHT, individually and on behalf of all those similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>SLIDE FIRE SOLUTIONS, LP, a Foreign Corporation; DOE MANUFACTURERS 1 – 100, inclusive; and ROE RETAILERS 1 – 100, inclusive,<br><br>                    Defendants. | CASE NO.:    2:18-cv-00296-GMN−GWF<br><br>**DEFENDANT SLIDE FIRE SOLUTIONS, LP'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULES 12(B)(2) AND 12(B)(6)**<br><br><br>**ORAL ARGUMENT REQUESTED**<br>**Pursuant to Local Rule 78-1.** |

12459-01.001/2008736.docx

Defendant Slide Fire Solutions, LP ("Slide Fire"), by and through counsel, hereby moves to dismiss Plaintiffs' Complaint (ECF No. 1-2) pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. This motion is based upon the following memorandum of points and authorities, the pleadings on file, and any oral argument presented at a hearing on the motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

This purported class action lawsuit arises out of the intentional criminal actions of Stephen Paddock ("Paddock") who, from his thirty-second-floor hotel room at Mandalay Bay, opened fire on the attendees of the Route 91 Harvest Music Festival in Las Vegas, Nevada. In the Complaint, it is expressly acknowledged that "[t]he damage suffered by Plaintiffs was wrought by a civilian who engaged in a military-style assault from long range." (ECF No. 1-2, Compl., ¶¶ 1-2.) Despite admitting that the cause of the horrific incident in question was Paddock's intentional and criminal acts, Plaintiffs – concertgoers who witnessed the shooting and allegedly suffered emotional distress – are not suing the estate of the man who planned, plotted, and carried out this heinous act. Instead, Plaintiffs have commenced a lawsuit against various manufacturers and retailers of "bump stocks," including Slide Fire. To this end, Plaintiffs allege that at least one of the rifles recovered from Paddock's room was equipped with an aftermarket "bump stock" manufactured by Slide Fire.

Traditionally, when using a rifle, it is held steady with the non-trigger hand, and a shot is fired by pulling the trigger with one's finger. "Bump firing" occurs when a shooter keeps his trigger finger steady and uses his non-trigger hand to pull the rifle forward. When the firearm recoils after the shot ("bumps back"), the trigger will be re-set and the shooter can pull the rifle forward again, leading to another shot. Thus, instead of keeping the rifle steady and depressing the trigger with a finger, "bump-firing" requires the trigger finger to remain steady while the combination of the rifle's recoil and pulling of the rifle forward causes the trigger to be pressed.

Slide Fire, a Texas company, is a federally licensed firearms manufacturer that makes component parts for firearms including stocks for rifles, which are designed to help shooters "bump fire" a rifle. Although not required by law to do so, prior to manufacturing these stocks,

1    Slide Fire submitted the design to the Firearms Technology Branch of the Bureau of Alcohol,

2    Tobacco, Firearms and Explosives ("ATF").  The ATF confirmed that the "bump-stock" is "a

3    firearm part and is not regulated as a firearm under the Gun Control Act or the National Firearms

4    Act."  This simply means that a person can purchase this component part without completing a

5    federal Form 4473 and undergoing a background check, and that the bump-stock is not considered

6    to be a machinegun or other destructive device requiring a special license and tax stamp.

7            Despite these facts and acknowledging that the stock is legally manufactured and sold,

8    Plaintiffs have filed a six-count Complaint against Slide Fire, other unnamed manufacturers of

9    similar aftermarket stocks, and other unnamed retailers and distributors of these component parts

10   for firearms.  Plaintiffs bring causes of action for, among other things, negligent marketing,

11   negligent infliction of emotional distress, product liability, and public nuisance.  Tellingly,

12   Plaintiffs do not identify any specific defect in design or manufacture.  Rather, Plaintiffs argue that

13   the bump-stocks are inherently unreasonably dangerous and that the defendants collectively failed

14   to prevent persons from criminally misusing these lawfully-manufactured component parts.

15           Accordingly, Defendants bring this motion to dismiss pursuant to Rules 12(b)(2) and

16   12(b)(6).  Preliminarily, given the alleged facts, there is no basis for general or specific personal

17   jurisdiction because Slide Fire cannot be considered "at home" in Nevada and Plaintiffs' purported

18   causes of action do not arise from Slide Fire's connections to the forum.  Additionally, even if

19   personal jurisdiction could be established, the lawsuit should still be dismissed for failing to state

20   a claim.  In this regard, Plaintiffs' claims are precluded by the Protection of Lawful Commerce in

21   Arms Act ("PLCAA") because the lawsuit is attempting to hold the manufacturer of a component

22   part of a firearm liable for the criminal actions of Paddock.  This type of lawsuit – where one seeks

23   to hold the lawful manufacturer of a non-defective product liable for the intentional criminal

24   actions of a third party – is precisely the reason the PLCAA was enacted.  Further, even if the

25   PLCAA were not applied, Plaintiffs' causes of action would still fail under Nevada's common law.

26   ///

27   ///

28

3

## II.    PROCEDURAL HISTORY AND SUMMARY OF PERTINENT FACTS

### A.  PROCEDURAL HISTORY

On October 6, 2017, Plaintiffs filed their Complaint in the District Court of Clark County, Nevada.[1]  (ECF No. 1-2, Compl.)  Defendant Slide Fire timely removed this case.  (ECF No. 1.)

### B.  THE PARTIES

Plaintiffs Devon Prescott, Brooke Freeman, and Tasaneeporn Upright are citizens of Nevada who attended the Route 91 Harvest Music Festival.  (ECF No. 1-2, Compl., ¶¶ 22-24.) The Complaint contains no other specific allegations regarding these plaintiffs' specific experiences at the concert.  The class of plaintiffs is defined to include anyone who attended the concert and "suffered emotion distress from being fired upon" and/or witnessing "injuries to family members, friends, and fellow concert goers."  (Id. ¶ 71.)

Defendant Slide Fire, a Texas limited partnership, is a federally-licensed manufacturer of firearms that makes component parts for firearms.  (Id. Compl. ¶ 25; see also Ex. A, Slide Fire's FFL.)  The other defendants are as-of-yet unidentified manufacturers of similar stocks and retailers and sellers of such aftermarket stocks.  (ECF No. 1-2, Compl., ¶¶ 27-32.)

### C.  SLIDE FIRE'S STOCK DESIGN AND APPROVAL BY THE ATF

One of the component firearm parts Slide Fire manufactures is a replacement stock for rifles that are designed to help a user to "bump-fire" a rifle.  (See Ex. B, Slide Fire Catalog.)[2]  In

---

[1] Plaintiffs filed their lawsuit five days after the tragic shooting by Paddock.  Then, on October 10, 2017, Plaintiffs' counsel issued a national press release and held a press conference to announce the filing of this lawsuit.  See Class Action Lawsuit Filed Against Bump Stock Manufacturers and Retailers on Behalf of Las Vegas Shooting Victims, bradycampaign.org, available at http://www.bradycampaign.org/press-room/class-action-lawsuit-filed-against-bump-stock-manufacturers-and-retailers (last accessed 2/18/2018).

[2] The Slide Fire Catalog and the ATF approval letter were cited and referenced in Plaintiffs' Complaint.  As such, copies of these documents can be considered on a motion to dismiss.  Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010) ("[A] court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiffs' claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.").

2010, Slide Fire submitted its design for a "replacement shoulder stock" to the ATF for review and assessment.  (**Ex. C**, ATF Ltr. 6/7/10.)  The ATF evaluated the design to determine whether it could be considered a firearm or a part to convert a firearm into a machinegun, which would subject it to regulation by the Gun Control Act and/or the National Firearms Act.  (Id.; see also 26 U.S.C. § 5845(a)-(b).)  The ATF concluded, "[i]n order to use the installed device, the shooter must apply constant forward pressure with the non-shooting hand and constant rearward pressure with the shooting hand.  Accordingly, we find that the 'bump-stock' is **a firearm part** and is not regulated as a firearm under the Gun Control Act or the National Firearms Act."  (Ex. C.) (emphasis added).[3]

D. **PLAINTIFFS' ALLEGATIONS**

1. **Factual Allegations**

Paddock rented rooms at the Mandalay Bay Hotel and Casino and then brought to "his hotel room in excess of a dozen rifles and hundreds of rounds of ammunition."  (ECF No. 1-2, Compl., ¶ 39.)  On October 1, 2017, Paddock open-fired from the thirty-second floor window of the Mandalay Bay Hotel and Casino onto the audience attending the Route 91 Harvest Music Festival.  (Id. ¶¶ 37-39.)  Plaintiffs allege that, upon information and belief, one of the rifles used by Paddock included an aftermarket bump-fire stock manufactured by Slide Fire.  (Id. ¶ 41.)

2. **Personal Jurisdiction Allegations**

In terms of establishing personal jurisdiction, Plaintiffs generally claim that "each and every Defendant has done, and continues to do, business in the State of Nevada, and committed a tort in the State of Nevada."  (ECF No. 1-2, Compl., ¶¶ 33-35).  The Complaint contains no other factual or legal allegations pertaining to jurisdiction.

---

[3] The ATF has approved other similar stock designs where the combined effect of the recoil and pulling forward on the rifle results in a trigger pull but has found that "electronically-driven trigger devices" are "machineguns" because they are a "combination of parts designed and intended, for use in converting a weapon into a machinegun."  (Compare **Ex. D**, ATF Ltr. 4/2/12 (approving Bump Fire stock) with **Ex. E**, ATF Ltr. 9/11/17 (finding that the "auto-glove" can be considered a machinegun).)  These documents**, and Slide Fire's FFL,** are matters of public record, which can also be considered on a motion to dismiss.  See, e.g., Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010).

### 3. Liability Allegations

Plaintiffs' causes of action are: (1) negligence; (2) negligent infliction of emotional distress (bystander); (3) negligent infliction of emotional distress (direct); (4) negligent products liability; (5) strict products liability; and (6) public nuisance. (Compl. ¶¶ 78-159). To support the negligence causes of action, Plaintiffs allege that the defendants negligently marketed, sold, advertised, and/or promoted the bump stock as a device to help individuals with limited mobility to shoot certain firearms and as "an inexpensive way to circumvent federal law in obtaining fully automatic weapons." (Id. ¶ 80.) To support their products liability and public nuisances causes of action, Plaintiffs allege that the defendants negligently manufactured, designed, and distributed bump-stocks that "were dangerous and unsafe for their intended use" and/or that contained an unspecified defect. (Id. ¶¶ 124, 135 – 137, 149.) Ultimately, Plaintiffs seek relief in the form of medical mental health monitoring as well as compensatory and punitive damages. (Id. at p. 29.)

## III.    ARGUMENT

Plaintiffs' lawsuit should be dismissed for lack of personal jurisdiction or, in the alternative, for failure to state a claim upon which relief may be granted.

### A. PLAINTIFFS' CLAIMS AGAINST SLIDE FIRE SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

#### 1. Standard

Rule 12(b)(2) provides for the dismissal of a case for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). In this instance, Nevada's long-arm statute permits the "exercise [of] jurisdiction over a party to a civil action on any basis not inconsistent with the constitution of [Nevada] or the Constitution of the United States." Nev. Rev. Stat. 14.065(1). Thus, the long-arm statute reaches the limits of due process set by the Constitution. Judas Priest v. Second Judicial Dist. Court, 104 Nev. 424, 426 (1988).

An assertion of personal jurisdiction must comport with due process. See, e.g., Wash. Shoe

Co. v. A-Z Sporting Goods, Inc., 704 F.3d 668, 672 (9th Cir. 2012).  Two categories of personal jurisdiction exist: (1) general jurisdiction and (2) specific jurisdiction.  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-15 (1984).  General jurisdiction arises where a defendant has continuous and systematic ties with the forum, even if those ties are unrelated to the litigation.  Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1171 (9th Cir. 2006).  For general jurisdiction, "the plaintiff must demonstrate that the defendant has sufficient contacts to constitute the kind of continuous and systematic general business contacts that approximate physical presence.  In re W. States Wholesale Nat. Gas Litig., 605 F. Supp. 2d 1118, 1131 (D. Nev. 2009).  A defendant's affiliations with the forum state must be "so continuous and systematic" as to render it "at home" in that forum.  Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014).  A corporation's place of incorporation and principal place of business are the bases for general jurisdiction because "those affiliations are unique and easily ascertainable."  Id. at 760.

Specific jurisdiction, on the other hand, exists when the lawsuit arises out of the defendant's contact with the forum.  Daimler, 134 S. Ct. at 761.  Under such circumstances, the assertion of personal jurisdiction "does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  In cases involving "single or occasional acts" occurring or having an impact in the forum state, the central inquiry is "whether there was 'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011).  The Ninth Circuit employs a three-prong test for analyzing an assertion of specific personal jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) The claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) The exercise of jurisdiction must comport with fair play and substantial justice,

7

i.e., must be reasonable.

Schwarzenegger, 374 F.3d at 802.  "The plaintiff bears the burden of satisfying the first two prongs of the test.  If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state."  Id.

    **2.**  **Argument**

        **a.**  **The Court Lacks General Jurisdiction Over Slide Fire**

As noted above, general jurisdiction may be found in the corporation's place of incorporation and principal place of business.  Daimler, 134 S. Ct. at 761.  Here, Slide Fire is a Texas limited partnership formed in Texas and each and every partner is a citizen of Texas.  (See ECF No. 1, Removal, ¶ 8.)  Therefore, Texas is where Slide Fire is located and where it maintains its principal place of business, and Plaintiffs' Complaint contains no facts to support a conclusion that Slide Fire is "at home" in Nevada.  Goodyear, 564 U.S. at 919.  Accordingly, Plaintiffs cannot establish general jurisdiction over Slide Fire.

        **b.**  **The Court Lacks Specific Jurisdiction Over Slide Fire**

A court may exercise specific jurisdiction over a non-resident defendant when the plaintiff's cause of action arises out of or is related to a defendant's conduct with the forum state. Walden v. Fiore, 134 S. Ct. 1115, 1122-23 (2014).  For specific jurisdiction to attach, a defendant's actions within the forum must "give rise to the liabilities sued on."  Daimler, 134 S. Ct. at 754.

For suits sounding in tort, the appropriate test for specific jurisdiction is a purposeful direction analysis.  This "effects" test requires a defendant to "allegedly have (1) committed an intentional act (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  Dole Food Co. v. Watts, 303 F.3d 1104 (9th Cir. 2002). The mere fact that a product may be circulated and have an effect in a forum state **is not sufficient** to establish specific personal jurisdiction.  Calder v. Jones, 465 U.S. 783, 789 (1984); Picot v. Weston, 780 F.3d 1206, 1212 (9th Cir. 2015) (noting that this assessment involves looking to the "actions by the defendant *himself* that create a substantial connection with the forum state").  "[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State."

_Walden_, 134 S. Ct. at 1126; _Picot_, 780 F.3 at 1212.  Moreover, the causes of action must actually arise from these specific contacts with the forum and there must be "an affiliation between the forum and the underlying controversy."  _Daimler_, 134 S. Ct. at 761.  "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." _Bristol-Myers Squibb Co. v. Superior Court_, 137 S. Ct. 1773, 1781 (2017).

In this instance, Plaintiffs allege that Paddock replaced at least one of the stocks on his rifles with a bump-stock manufactured by Slide Fire.  (ECF No. 1-2, Compl., ¶ 41.)  The Complaint is silent as to how, when, or where Paddock obtained the bump-stock – only that it was allegedly transported by Paddock to his hotel room and then it was recovered after the shooting.  As noted above, however, the activities of a third-party are insufficient to confer specific jurisdiction over an out-of-state defendant.  As the Supreme Court recently stated, "[w]hat is needed – and what is missing here – is a connection between the forum and the specific claims at issue." _Bristol-Myers Squibb_, 137 S. Ct. at 1781.  As alleged by Plaintiffs, the only contact with the forum state concerns the unilateral activity of a third party (Paddock).  Therefore, Plaintiffs failed to carry their burden of pleading sufficient facts to establish specific personal jurisdiction over Defendant Slide Fire.

**B.  PLAINTIFFS' CLAIMS AGAINST SLIDE FIRE SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

**1.  Standard**

Rule 12(b)(6) mandates that any cause of action which fails to state a claim upon which relief can be granted must be dismissed by the court.  Fed. R. Civ. P. 12(b)(6); see _N. Star Int'l v. Arizona Corp. Comm'n_, 720 F.2d 578, 581 (9th Cir. 1983).  Dismissal is appropriate when the complaint lacks fair notice to the defendant of a "legally cognizable right of action" and the grounds on which said claims rest.  _Bell Atl. Corp. v. Twombly_, 550 U.S. 544, 555 (2007).  Although a court must take all material allegations as true, a court is not required to accept as true allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  _Sprewell v. Golden State Warriors_, 266 F.3d 979, 988 (9th Cir. 2001).  Similarly, legal conclusions are insufficient to state a claim.  _Ashcroft v. Iqbal_, 556 U.S. 662, 678 (2009).

### 2. **Argument**

Plaintiffs' lawsuit against Slide Fire should be dismissed pursuant to the plain terms of the PLCAA. Alternatively, even if the PLCAA were not applied, Plaintiffs' individual claims are otherwise not legally viable under Nevada law.

### a. **Plaintiffs' Lawsuit is Preempted by the PLCAA**

#### i. The PLCAA

The PLCAA is a federal preemption statute that prohibits lawsuits brought by any person against the manufacturer or seller of a firearm, ammunition, or a component part of a firearm or ammunition for damages caused by the criminal misuse of the product unless the action fits within one of the limited exceptions to the Act. In this way, the Act preempts all common law theories of liability other than the claims identified as exceptions in the Act. If a plaintiff's causes of actions do not meet any of the enumerated exceptions to the Act, the entire lawsuit must be dismissed.

The PLCAA was enacted with the express purpose of prohibiting civil lawsuits against manufacturers of firearms, ammunition, *and component parts of firearms or ammunition* for damages "resulting from the misuse of their products by others." See Preamble to 15 U.S.C. § 7901. In passing the Act, Congress specifically incorporated a number of its findings into the Act, including: that lawsuits which seek to hold manufacturers liable for a third-party's misuse or illegal misuse of firearms or component parts of firearms invokes an undue burden on interstate commerce and that the businesses involved in the firearms industry should not be liable for harm caused by the misuse of their products when they function as designed. See id. §§ 7901(a)(3)-(6).

Congress expressly found that manufacturers and sellers of firearms and component parts for firearms "are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended." Id. § 7901(a)(5). In fact, the PLCAA's stated purpose is ***"[t]o prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm solely caused by the criminal or unlawful misuse of firearms products or ammunition products by others when the product functioned as designed***

*and intended."* Id. § 7901(b)(1) (emphasis added.)

The PLCAA requires dismissal of claims that meet the definition of a "qualified civil liability action." See 15 U.S.C. § 7902(b). A "qualified civil liability action" is defined as:

> A civil action or proceeding or an administrative proceeding brought by another person against a manufacturer or seller of a qualified product or a trade association, for damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief resulting from the criminal or unlawful misuse of a qualified product by the person or a third party.

Id. § 7903(5)(A). A "qualified product" includes "a component part of a firearm." Id. § 7903(4). A "manufacturer" is defined as "a person who is engaged in the business of manufacturing the product in interstate or foreign commerce and who is licensed to engage in business as such a manufacturer under chapter 44 of title 18." Id. § 7903(2). The PLCAA defines an "unlawful use" as "conduct that violates a statute, ordinance, or regulation as it relates to the use of a qualified product." 15 U.S.C. § 7903(9).

A "qualified civil liability action" may not be brought in any state or federal court. Id. § 7902(a). However, the PLCAA provides six narrow exceptions to the definition of a "qualified civil liability action":

> The term "qualified civil liability action" shall not include:

> (i)  an action brought against a transferor convicted under section 924(h) of Title 18, or a comparable or identical State felony law, by a party directly harmed by the conduct of which the transferee is so convicted;

> (ii)  an action brought against a seller for negligent entrustment or negligence per se;

> (iii)  an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought . . . .

> (iv)  an action for breach of contract or warranty in connection with the purchase of the product;

> (v)  an action for death. or physical injuries or property damage resulting directly from a defect in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner, except that where the

discharge of the product was caused by a volitional act that constituted a criminal offense, then such act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage; or

(vi)    an action or proceeding commenced by the Attorney General to enforce the provisions of chapter 44 of Title 18 or chapter 53 of Title 26.

15 U.S.C. § 7903(5)(A)(i)-(vi).

In this way, the Act serves as a filter for qualified lawsuits.  See Woods v. Steadman's Hardware, Inc., 2013 U.S. Dist. LEXIS 26261, at *10-11 (D. Mont. Feb. 26, 2013) (explaining that a plaintiffs' claims must meet an exception listed in the PLCAA, "i.e., pass the PLCAA filter").  "Subject to [the] exceptions . . . the PLCAA establishes a new legal standard for actions that fall within the definition of a qualified civil liability action that preempts common law claims based on general tort liability."  Sambrano v. Savage Arms. Inc., 338 P.3d 103, 105 (N.M. Ct. App. 2014).  If a lawsuit meets the definition of a "qualified civil liability action," all causes of action must be immediately dismissed except for causes of action that are recognized within one of the exceptions listed above.  Thus, only claims that fit within one of the six enumerated exceptions to the PLCAA may proceed past the initial pleadings or motion stage, and all other claims are barred and cannot proceed to discovery or trial. Ultimately, assessing whether the PLCAA applies is a two-step process: (1) whether the claim is a "qualified civil liability action" and (2) if so, whether any of the exceptions of the Act apply.

In enacting the PLCAA, Congress created a new federal law that preempts certain statutory and common law claims.  See Estate of Charlot v. Bushmaster Firearms, Inc., 628 F. Supp. 2d 174, 182 (D.D.C. 2009).  The PLCAA created a new federal standard that governs when plaintiffs can sue manufacturers or sellers of firearms or firearm products:

[T]he Act permissibly sets forth a new rule of law that is applicable both to pending actions and to future actions. The PLCAA bars qualified civil liability actions, as defined in the statute. The definition of qualified civil liability action permissibly sets forth a new legal standard to be applied to all actions.

City of New York v. Beretta U.S.A. Corp., 524 F.3d 384, 395 (2d Cir. 2008).  Accordingly, the PLCAA "preempts and displaces conflicting state law."  Bushmaster, supra, 628 F. Supp. 2d at 182; see also Ileto v. Glock Inc., 565 F.3d 1126, 1139-40 (9th Cir. 2009); City of New York, supra,

12

524 F.3d at 395-96. As the Ninth Circuit explained in <u>Ileto</u>, "Congress clearly intended to preempt common-law claims, such as general tort theories of liability" and explained that:

> [This] conclusion is bolstered by Congress' inclusion of the second exception to preemption: **The PLCAA does not preempt claims against a seller of firearms for negligent entrustment or negligence per se. That exception demonstrates that Congress consciously considered how to treat tort claims. While Congress chose generally to preempt all common-law claims, it carved out an exception for certain specified common-law claims.**

<u>Ileto</u>, 565 F.3d at 1135 n. 6 (internal citations omitted) (emphasis added); <u>see also</u> <u>Russello v. United States</u>, 464 U.S. 16, 22 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). Since Congress chose to preempt all general tort theories of liability apart from the common law claims delineated in the exceptions to the PLCAA, Plaintiffs are not permitted to proceed under general theories of negligence, negligent infliction of emotional distress, or public nuisance. Plaintiffs' strict liability claims are also barred, as they stem from the intentional, criminal actions of Paddock using a product that functioned as intended.

## ii.    A Bump Stock is a "Qualified Product" Under the PLCAA

The PLCAA covers all qualified civil liability actions resulting from the criminal or unlawful misuse of a qualified product. A "qualified product" means:

> a firearm (as defined in subparagraph (A) or (B) of section 921(a)(3) of title 18, United States Code), including any antique firearm (as defined in section 921(a)(16) of such title), or ammunition (as defined in section 921(a)(17)(A) of such title, or **a component part of a firearm** or ammunition, that has been shipped or transported in interstate or foreign commerce.

<u>Id.</u> § 7903(4) (emphasis added). As the PLCAA itself does not define "component part of a firearm," the Court must therefore employ traditional tools of statutory construction, which includes examining (1) the plain text of the statute; (2) the structure and context; (3) the legislative and drafting history; and (4) the purpose. <u>See, e.g.</u>, <u>Richlin Security Serv. Co. v. Chertoff</u>, 553 U.S. 571, 589 (2008). Principles of statutory instruction demonstrate that the words of a statute are to be "read in their context and with a view to their place in the overall statutory scheme."

1    <u>Davis v. Mich. Dep't of Treasury</u>, 489 U.S. 803, 809 (1989); <u>see also</u> <u>Robinson v. Shell Oil Co.</u>,

2    519 U.S. 337, 341 (1997) (explaining that when interpreting a statute, a court must consider "the

3    broader context of the statute as a whole"); <u>United States v. Morton</u>, 467 U.S. 822, 828 (1984)

4    ("We do not . . . construe statutory phrases in isolation; we read statutes as a whole.").

5    　　　Even when a statute is not ambiguous, courts will still utilize legislative history in "a good-

6    faith effort to discern legislative intent."  <u>Samantar v. Yousuf</u>, 560 U.S. 305, 316 n. 9 (2010).

7    "Interpretation of a word or phrase depends upon reading the whole statutory text, considering the

8    purpose and context of the statute, and consulting any precedents or authority that inform the

9    analysis." <u>Dolan v. Postal Serv.</u>, 546 U.S. 481, 486 (2006); <u>see also</u> <u>Chapman v. Houston Welfare</u>

10   <u>Rights Org.</u>, 441 U.S. 600, 608 (1979) ("As in all cases of statutory construction, our task is to

11   interpret the words of th[e] statut[e] in light of the purposes Congress sought to serve.").

12   　　　When there is no statutory definition, terms must be given their ordinary meaning.  <u>Asgrow</u>

13   <u>Seed Co. v. Winterboer</u>, 513 U.S. 179, 187 (1995).  Specifically, a court can look to the dictionary

14   definition.  <u>Taniguchi v. Kan Pac. Saipan, Ltd.</u>, 566 U.S. 560, 564 (2012).  The word "component"

15   is defined in the Merriam Webster dictionary as "a constituent part," such as "stereo components."

16   Component,　　　Merriam-Webster　　　Dictionary,　　　<u>https://www.merriam-</u>

17   <u>webster.com/dictionary/component</u> (last accessed Feb. 16, 2018).  The word "part" is defined as

18   "an essential portion or integral element".    Part, Merriam-Webster Dictionary,

19   <u>https://www.merriam-webster.com/dictionary/part</u> (last accessed Feb. 16, 2018).[4]

20   　　　Additionally, when defining the term rifle, the current "ATF Guidebook – Importation &

21   Verification of Firearms, Ammunition, and Implements of War – Firearms Verification," included

22   an illustration to show "the primary characteristics exhibited in the rifle category," illustrating the

23   potential component parts of a rifle configuration:

24

---

25   [4] The Oxford English Dictionary similarly defines the words "component" to mean "[a] constituent
26   element or part" and "part" to mean "[a] piece or section of something which together with another
     or others makes up the whole (whether actually separate from the rest or not)," and "[a]n essential
27   element; an integral portion of a larger whole."

28                                                   14

(**Ex. F**, BATF Guidebook at p. 19.)  Thus, the receiver, barrel, trigger, <u>and stock</u> are included as "components" of a rifle, which is "intended to be fired from the shoulder."  The term "component part" as used in the PLCAA is therefore not ambiguous.  A stock is clearly a component part of a rifle because it is needed to permit the rifle to be "fired from the shoulder."  Not only does ATF's own guidebook list the stock as a primary component of a rifle, but the ATF previously classified Slide Fire's bump-stock as a firearm part.  (<u>See</u> Ex. C, ATF Ltr.)

The argument that a stock is a component part of a rifle can also be supported by looking to descriptions utilized in criminal and civil cases.  <u>See</u> <u>Broughman v. Carver</u>, 624 F.3d 670, 673 (4th Cir. 2010) (noting that the defendant "builds custom bolt action rifles by assembling the component parts of a firearm" and explaining that in constructing such firearms, he combines "frames or receivers," "rifled barrels," and "wooden stocks"); <u>Atl. Research Mktg. Sys. v. Troy</u>, 616 F. Supp. 2d 157, 160 (D. Mass. 2009) ("The M-16 and AR-15 rifles are used by military and law enforcement personnel as well as by private gun owners.  **These guns include a shoulder stock, a receiver, and a barrel.**"  (Emphasis added).)

Indeed, other cases support the conclusion that a stock is to be considered a component part of a rifle.  <u>See</u> <u>United States v. Ball</u>, 1999 U.S. App. LEXIS 25679, at *5 (10th Cir. 1999) (discussing the definition of firearms under 18 U.S.C. § 921(a)(3) and describing barrels and stocks

as "components" of a firearm); <u>Borman v. the United States</u>, 262 F. 26, 34 (2d Cir. 1999) (noting that the barrel and "butt or stock" are component parts of a firearm); <u>Chapa v. Garcia</u>, 848 S.W.2d 667, 675 (Texas 1992) ("NBAR components which are or have been under consideration include a different receiver, different stock, different magazine and feeding system, different fire control, different extractor, different scope mounting system, different bolts, different barrels, [and] different bolt latch design . . . ."); <u>State v. Guerrero</u>, 2011 Tenn. Crim. App. LEXIS 418, at *12 (Tenn. Crim. App. June 8, 2011) ("He tested several components of the rifle, including the grip, forearm, stock, bolt, magazine and strap for touch DNA . . . ."); <u>State v. Scott</u>, 2001 Ohio App. LEXIS 4541, at *18 (Ohio Ct. App. Sept. 28, 2001) (noting that a pistol could be broken down into its component parts "such as a barrel, shaft, stock, trigger, and springs").[5]

---

[5] Looking to the definition of "component" in the federal regulations also supports the conclusion that the bump-stock is a component part of a firearm.

> The bump stock would be considered a component part of a semi-automatic rifle pursuant to the International Traffic in Arms Regulations ("ITAR"), enacted pursuant to the Arms Export Control Act, 22 U.S.C. §§ 2751 et. seq., which regulate the export of firearms and other defense articles on the US Munitions List. Pursuant to 22 CFR § 120.45(b), a "component" is defined as an "item that is useful only when used in conjunction with an end-item." The bump stocks are only useful when used in conjunction with the semi-automatic rifles.

The bump stock would also be considered a component part for a firearm for purposes of the Firearms and Ammunition Excise Tax collected pursuant to 26 U.S.C. §§ 4181-82. The term "component parts," includes:

> items such as a frame or receiver, breech mechanism, trigger mechanism, barrel, **buttstock**, forestock, handguard, . . . for use with the firearm in the ordinary course of commercial trade. Component parts also include any part provided with the firearm that would affect the tax status of the firearm, **such as an attachable shoulder stock**.

22 CFR 22 53.61(5)(ii)(emphasis added).

Further, under 15 C.F.R. § 772.1 (definition of terms as used in the Export Administration Regulations), a rifle's stock would be considered a "component" since that term is defined as:
> Component. This is an item that is useful only when used in conjunction with an "end item." "Components" are also commonly referred to as assemblies. For purposes of this definition, an assembly and a "component" are the same. There

Finally, the purposes and content of the PLCAA also inform the conclusion that a stock is a component part of a rifle. Davis, 489 U.S. at 809 (noting that words of a statute are to be "read in their context and with a view to their place in the overall statutory scheme"). The PLCAA is intended to provide broad protections to the firearms industry and to prevent lawsuits arising from the criminal misuse of lawfully manufactured and sold products. See, e.g., Ileto v. Glock, Inc., 421 F. Supp. 2d 1274, 1285 (C.D. Cal. 2006). Concluding that Defendant's stock is a component part of a firearm is consistent with the intent and purpose of the PLCAA.

Based on the foregoing, which includes the fact that the ATF previously identified Slide Fire's bump-stock as a firearm part, the bump stock at issue is a component part of a rifle. Therefore, it is a qualified product within the meaning of the PLCAA.

   iii. <u>The PLCAA is Applicable and None of the Exceptions to the Act are Satisfied</u>

Plaintiffs' claims constitute a "qualified civil liability action" under the PLCAA because (1) the product at issue (Slide fire's aftermarket bump-stock) is a qualified product; (2) Slide Fire is a federally-licensed manufacturer of a qualified product; and (3) Plaintiffs' claims arise out of Paddock's criminal misuse of firearms, ammunition, and component parts for firearms and ammunition. See 15 U.S.C. §§ 70902, 7903(5)(A). Therefore, the only pertinent question is whether Plaintiffs' causes of action meet any of the identified exceptions to the Act. As will be

---

are two types of "components": "Major components" and "minor components." A "major component" includes any assembled element which forms a portion of an "end item" without which the "end item" is inoperable. For example, an automobile, "components" will include the engine, transmission, and battery. If you do not have all those items, the automobile will not function, or function as effectively. A "minor component" includes any assembled element of a "major component." "Components" consist of "parts." References in the [Commerce Controls List] to 'components' include both 'major components' and 'minor components.

Id. § 772.1.

briefly demonstrated, they do not.[6]

- *All Common Law Causes of Action That Do Not Meet Any Exception to the Act Must Be Dismissed*

Plaintiffs' Complaint contains causes of action for negligence (Count I), negligent infliction of emotional distress (Counts II and III), and public nuisance (Count VI). None of these causes of action are recognized exceptions to the Act. Therefore, they do not pass the PLCAA filter and should all be dismissed with prejudice. Estate of Charlot, 628 F. Supp. 2d at 182.

- *Plaintiffs' Negligent Per Se Claim is Not Legally Viable*

Although Plaintiffs' Complaint does not contain a standalone cause of action for negligence *per se*, within Count I (Plaintiffs' general negligence cause of action), Plaintiffs include one reference to "negligence *per se*." (See ECF No. 1-2, Compl., ¶ 84.) Although Defendant contends that the mere mention of the negligence *per se* doctrine is insufficient to state a viable cause of action, the established case law also demonstrates that Plaintiffs have not pleaded a viable claim under Nevada law. To state a claim for negligence *per se*, the plaintiff must plead facts demonstrating that (1) the defendant violated a duty imposed by a statute; (2) the plaintiff is a member of a class of persons intended to be protected by that statute or regulation; and (3) the harm is of the kind intended to be prevented by the statute. Henry A. v. Willden, 2013 U.S. Dist. LEXIS 26765, at *43-44 (D. Nev. Feb. 27, 2013); Atkinson v. MGM Grand Hotel, Inc., 98 P.3d 678, 680 (Nev. 2004). Importantly, the mere violation of any statute does not automatically constitute negligence *per se*. See Sagebrush Ltd. v. Carson City, 660 P.2d 1013, 1015 (Nev. 1983). In the absence of legislative intent to impose civil liability, violation of a statute does not constitute negligence *per se*. Ibid. Further, negligence *per se* is only available where the Nevada Legislature has adopted the statute. Willden, 2013 U.S. Dist. 26765 at *44. Finally, the plaintiff must show that any violation of a statute was the proximate cause of the injury. Paso Builders v. Hebard, 426 P.2d 731, 736 (Nev. 1967). It has been explained that "[t]hese limitations prevent the negligence

---

[6] There should be no dispute that Plaintiffs' causes of action cannot meet the first, third, fourth, and sixth exceptions to the PLCAA. See 15 U.S.C. §§ 7903(5)(A)(i), (iii), (iv), (vi).

*per se* doctrine from becoming a civil enforcement mechanism for every statutory violation." <u>Bank of Las Vegas v. Cole</u>, 2012 U.S. Dist. LEXIS 160371, at *8 (D. Nev. Nov. 7, 2012).

In this case, even giving Plaintiffs' Complaint the most liberal reading, there are no facts pleaded to meet any of the elements of a claim for negligence *per se*. Indeed, Plaintiffs do not even identify any statute that Slide Fire is claimed to have violated. This failure alone is sufficient to dismiss any claim for negligence *per se*. Moreover, by referring to the ATF letter from June 2010, which found that the design did not violate any federal law, Plaintiffs concede that no such laws were violated. Under the facts alleged, there is simply no basis for a negligence *per se* claim.

- *Plaintiffs' Product Liability Claims Are Not Legally Viable*

Although Plaintiffs bring two separate causes of action based upon a product liability theory (Counts IV and V), these claims do not meet the product liability exception to the Act. The PLCAA contains an exception for product liability claims, which states that:

> an action for death, or physical injuries or property damage resulting directly from a defect in design or manufacture of the product when used as intended or in a reasonably foreseeable manner" will not be preempted **"except that where the discharge of the product was caused by a volitional act that constituted a criminal offense, then such act shall be considered the sole proximate cause of any resulting death, personal injuries, or property damage.**

15 U.S.C. § 7903(5)(A)(v) (emphasis added).

First, Plaintiffs' claims do not meet this exception because they are bringing claims for emotional injuries and not for death or physical injuries. (ECF No. 1-2, Compl., ¶ 71.) Second, it is undisputed that the discharges of the rifles in question were caused by the volitional acts of Paddock constituting a criminal offense. (<u>Id.</u> ¶ 2.) Therefore, Paddock's intentional and criminal acts must "be considered the sole proximate cause of any resulting death, personal injuries, or property damage." 15 U.S.C. § 7903(5)(A)(v). Third, Plaintiffs failed to allege any specific "defect in design or manufacture" in the bump-stock. Although Plaintiffs state, in conclusory fashion, that the bump stuck was "defective" (ECF No. 1-2, Compl, ¶ 135), there are no facts pleaded to support such a claim. Such a conclusory legal allegation is insufficient to avoid dismissal. <u>Ashcroft</u>, 556 U.S. at 678. Accordingly, Plaintiffs failed to state a viable claim to meet

the product liability exception to the PLCAA, and Plaintiffs' entire lawsuit should be dismissed.

### b.  Plaintiffs' Causes of Action are Not Viable Under Nevada Common Law

Even if the PLCAA were not applicable, dismissal would still be required under the applicable common law.

### i.  Proximate Cause

Paddock's intentional and murderous rampage constitutes a superseding and intervening act that breaks the chain of causation under these circumstances.  Even if Plaintiffs had somehow adequately pled that Slide Fire's actions were negligent or that its product(s) were defective in design or manufacture, Nevada case law holds that Slide Fire still cannot be liable to Plaintiffs or the purported class they represent.

The Supreme Court of Nevada, in <u>Van Cleave v. Kietz-Mill Minit Mart</u>, 633 P.2d 1220 (Nev. 1981), the seminal case of causation in the negligence context, stated:

> Negligence is not actionable unless, without the intervention of an intervening cause, it proximately causes the harm for which complaint was made." <u>Thomas v. Bokelman</u>, 86 Nev. 10, 13, 462 P.2d 1020, 1022 (1970). For an act to be the proximate cause of an injury, "it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." <u>Crosman v. Southern Pacific Co.</u>, 42 Nev. 92, 108-109, 173 P. 223, 228 (1918), quoting <u>Milwaukee, etc. Railway v. Kellogg</u>, 94 U.S. 469, 475 (1876). Whenever a new cause intervenes which is not the consequence of the first wrongful cause, and which is not under the control of the first wrongdoer, and which he could not with reasonable diligence have foreseen, and except for which the final catastrophe could not have happened, then such a result must be held too remote to furnish the basis of an action." <u>Konig v. N.-C.-O. Ry</u>, 36 Nev. 181, 214-215, 135 P.1 141, 153 (1913).

Here, Paddock is the "wrongdoer," and therefore, any negligent actions by Slide Fire are "too remote" to furnish a basis of claim.

### ii.  Plaintiffs' Direct Negligent Infliction of Emotional Distress Claim (Count III) Should Be Dismissed

In Nevada, negligent infliction of emotional distress ("NIED") claims may only be brought by bystander plaintiffs.  "Nevada law does not provide a cause of action for plaintiffs to allege direct infliction of emotional distress from conduct that was merely negligent."  <u>Garcia v. Nev.</u>

Prop. 1, LLC, 2015 U.S. Dist. LEXIS 1606, at *6 (D. Nev. Jan. 6, 2015); Villagomes v. Lab. Corp. of Am., 783 F. Supp. 2d 1121, 1126 (D. Nev. 2011); Kennedy v. Carriage Cemetery Servs., 727 F. Supp. 2d 925, 935 (D. Nev. 2010).  Accordingly, Plaintiffs' cause of action for NIED as a direct victim (Count III) should be dismissed.

### iii.  Plaintiffs' Bystander NIED Claim (Count II) Should Be Dismissed

To assert a claim of NIED, a plaintiff must plead (1) plaintiff's location near the scene; (2) plaintiff suffering an emotional injury resulting from the "contemporaneous sensory observance of the accident"; and (3) the plaintiff was "closely related to the victim."  Grotts v. Zahner, 989 P.2d 415, 416 (Nev. 1999).  The term "closely related" includes only blood relationships or marriage. Id. at 416.  Plaintiffs' allegations do not meet these elements.  First, there is no allegation that any of the named Plaintiffs (Prescott, Freeman, or Upright) contemporaneously observed a victim being injured or that they were "closely related" to any victim.  Second, there is no allegation that any of the named plaintiffs suffered physical impact or serious emotional distress causing physical injury or illness.  Accordingly, Plaintiffs' NIED bystander claim fails as a matter of law.

### iv.  Plaintiffs' Negligence Claim (Count I) Should Be Dismissed

To state a claim for negligence, Plaintiff must plead (1) the existence of a duty of care; (2) breach of that duty; (3) legal causation; and (4) damages.  Sanchez v. Wal-Mart Stores, Inc., 221 P.3d 1276, 1280 (Nev. 2009).  Under the common law, there is no duty to control the dangerous conduct of another.  Mangeris v. Gordon, 580 P.2d 481, 483 (Nev. 1978).  An exception to this general rule arises when (1) a special relationship exists between the parties or between the defendant and the identifiable victim and (2) the harm created by the defendant's conduct is foreseeable.  Lee v. GNLV Corp., 22 P.3d 209, 212 (Nev. 2001).

Here, Plaintiffs' alleged breach of duty of care is based upon (1) Defendant's failure to adequately market and advertise the bump stock as a device to help individuals with limited mobility and (2) Defendant's marketing and advertising of the bump stock as a device to circumvent federal law in obtaining fully automatic weapons.  (ECF No. 1-2, Compl. ¶ 80.)

21

Preliminarily, there is no legal basis to establish that Defendant had a duty to market a bump stock solely as a device to help individuals with limited mobility.  Moreover, as the pleaded facts establish, Plaintiffs' injuries were caused by the intentional, criminal actions of Paddock, and Defendant had no duty to control Paddocks' intentional conduct.  Certainly, Plaintiffs do not allege a special relationship that would give rise to any such duty.  Furthermore, even if a duty of care was recognized, there is no evidence that Defendant breached any such duty.  Although Plaintiffs allege that Defendant created the product to "circumvent federal law," the ATF expressly found that Slide Fire's product did not circumvent the law.  Based on Plaintiffs' own pleadings, there is no basis for a breach of any duty.  Finally, similar claims for negligent marketing against manufacturers have been rejected as a matter of law.  See McCarthy v. Sturm, Ruger & Co., 916 F. Supp. 366, 369 (S.D.N.Y. 1996) (dismissing a negligent marketing claim against a manufacturer of ammunition where the plaintiffs alleged that the ammunition should only have been marketed to law enforcement agencies, which was the company's original plan), aff'd sub nom., McCarthy v. Olin Corp., 119 F.3d 148 (2d Cir. 1997).  Accordingly, Plaintiffs' general negligence claim fails.[7]

### v.  Plaintiffs' Public Nuisance Claim (Count VI) Should Be Dismissed

Nevada does not recognize a private right of action based upon a claim of public nuisance. See Diamond X Ranch LLC v. Atl. Richfield Co., 2017 U.S. Dist. LEXIS 160845, at *36 (D. Nev. Sept. 29, 2017) ("[I]n Nevada there is no private right of action for a public nuisance."); see also Coughlin v. Talihook Ass'n, Inc., 818 F. Supp. 1366, 1371-72 (D. Nev. 1993).  As such, Count VI should be dismissed.

---

[7] As pleaded, Plaintiffs' negligence claim appears to be most analogous to a negligent misrepresentation claim (that Defendant falsely represented that the product was intended for one use but then marketed for a different use).  However, Nevada has never recognized such a tort for a personal injury claim.  Baymiller v. Ranbaxy Pharms., Inc., 894 F. Supp. 2d 1302, 1310-11 (D. Nev. 2012).  Additionally, the facts pleaded would not support such a claim.  See G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc., 460 F. Supp. 2d 1246, 1262 (D. Nev. 2002).  Finally, Plaintiffs would not have standing to bring such a claim as they did not purchase the product and, therefore, would not have relied upon any alleged representation.

### vi. Plaintiffs' Product Liability Claims (Counts IV and V) Should Be Dismissed

To state a claim for strict product liability, a plaintiff must plead facts establishing that (1) the product has a defect which rendered it unreasonably dangerous, (2) the defect existed at the time the product left the manufacturer's control, and (3) the defect caused the plaintiff's injury. Fyssakis v. Knight Equip. Corp., 826 P.2d 570, 571 (Nev. 1992). In this case, Plaintiffs are asserting a "no defect" product liability claim. In this regard, Plaintiffs are alleging that the product itself is unreasonably dangerous because a criminal actor (such as Paddock) can intentionally misuse it to harm others. Frankly, there is no legal authority under the law to support such a claim. See McCarthy, 916 F. Supp. at 370-71 (rejecting a product liability claim against the manufacturer of ammunition that expanded upon impact and was capable of being used in large capacity because those were functional elements of a product"). As such, Plaintiffs have failed to plead facts to state a cognizable product liability claim against Defendant.

### vii. Public Policy Favors Dismissing Plaintiffs' Lawsuit

In bringing this lawsuit, Plaintiffs are effectively asking the Court to rule that it was inappropriate for Defendant to legally manufacture a non-defective product. In this way, Plaintiffs want the Court to usurp the role of the legislature or a government agency, which would have the authority to regulate the sale of a firearm component. In general, however, questions of public policy are for the Legislature to resolve, not the Courts. See, e.g., CitiMortgage, Inc. v. Country Gardens Owners' Ass'n, 2013 U.S. Dist. LEXIS 172320, at *50-51 (D. Nev. Dec. 5, 2013). As such, considerations of public policy also weigh in favor of dismissing Plaintiffs' Complaint.

///
///
///
///
///
///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.  CONCLUSION

For the above reasons, it is respectfully requested that this Court dismiss Plaintiffs'
Complaint against Slide Fire pursuant to Rule 12(b)(2) for lack of personal jurisdiction or,
alternatively, pursuant to Rule 12(b)(6) for failure to state a claim.

DATED this 23rd day of February, 2018.

**HOLLEY DRIGGS WALCH
FINE WRAY PURZEY & THOMPSON**


By:*/s/ F. Thomas Edwards*
    F. THOMAS EDWARDS, ESQ. (NBN 09549)
    JAMES D. BOYLE, ESQ. (NBN 08384)
    400 South Fourth Street, Suite 300
    Las Vegas, Nevada 89101
    Phone:  702/791-0308
    Fax:     702/791-1912

    **PISCIOTTI MALSCH PC**
    JEFFREY MALSCH, ESQ.
    (Pro Hac Vice Application Forthcoming)
    DANNY C. LALLIS, ESQ. (PHV Forthcoming)
    (Pro Hac Vice Application Forthcoming)
    30 Columbia Turnpike, Suite 205
    Florham Park, New Jersey 07932

    *Attorneys for Defendant Slide Fire Solutions, LP*

24

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that on the 23rd day of February, 2018, I caused the document entitled **DEFENDANT SLIDE FIRE SOLUTIONS, LP'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULES 12(B)(2) AND 12(B)(6)**, to be served as follows:

| Attorneys of Record | Parties Represented | Method of Service |
|---|---|---|
| Robert T. Eglet, Esq.<br>Robert M. Adams, Esq.<br>Aaron D. Ford, Esq.<br>Erica D. Entsminger, Esq.<br>EGLET PRINCE<br>400 South Seventh Street, Suite 400<br>Las Vegas, Nevada 89101 | Plaintiffs Devon Prescott, Brooke Freeman and Tasaneeporn Upright, and all those similarly situated | ☐ Personal Service<br>■ Email/E-File<br>☐ Fax Service<br>☐ Mail Service |
| Jonathan E. Lowy, Esq.<br>BRADY CENTER TO PREVENT GUN VIOLENCE<br>840 1st Street, NE #400<br>Washington, D.C. 20002 | Plaintiffs Devon Prescott, Brooke Freeman and Tasaneeporn Upright, and all those similarly situated | ☐ Personal Service<br>■ Email/E-File<br>☐ Fax Service<br>■ Mail Service |

*/s/ Norma S. Moseley*
An employee of Holley Driggs Walch
Fine Wray Puzey & Thompson