ROBERT T. EGLET, ESQ.
Nevada Bar No. 3402
ROBERT M. ADAMS, ESQ.
Nevada Bar No. 6551
RICHARD K. HY, ESQ.
Nevada Bar No. 12406
**EGLET PRINCE**
400 South 7th Street, 4th Floor
Las Vegas, Nevada 89101
Tel.:   702-450-5400
Fax:    702-450-5451
Email eservice@egletlaw.com
-and-
JONATHAN E. LOWY, ESQ.
*(Pro Hac Vice Forthcoming)*
District of Columbia Bar No. 418654
**BRADY CENTER TO PREVENT GUN VIOLENCE**
840 1ST Street, NE, #400
Washington, DC 20002
Telephone: 202-370-8104
Email: jlowy@bradymail.org
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DEVON PRESCOTT, individually and on behalf of all those similarly situated; BROOKE FREEMAN, individually and on behalf of all those similarly situated; TASANEEPORN UPRIGHT, individually and on behalf of all those similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>SLIDE FIRE SOLUTIONS, LP, a Foreign Corporation; DOE MANUFACTURERS 1 – 100, inclusive; and ROE RETAILERS 1- 100, inclusive,<br><br>        Defendants. | CASE NO.:  2:18-cv-00296-GMN-GWF<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT SLIDE FIRE SOLUTIONS, LP'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULES 12(b)(2) AND 12(b)(6)** |

EGLET PRINCE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    COME NOW Plaintiffs, DEVON PRESCOTT, BROOKE FREEMAN and

2    TASANEEPORN UPRIGHT ("Plaintiffs"), by and through counsel, and herein submit their

3    Opposition to Defendant Slide Fire Solutions, LP's Motion to Dismiss the Complaint Pursuant

4    to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) [ECF No. 8].

5    This Opposition is based upon pleadings and papers on file and the attached Points and

6    Authorities, and any oral argument that may be entertained at the hearing of this matter.

7    **I.**

8    **STATEMENT OF FACTS**

9    For over 80 years, the United States has recognized that firearms that can fire

10   automatically—without successive pulls of the trigger—should not be widely distributed,

11   because there is too great a risk they will be used for mass slaughter.  The National Firearms

12   Act of 1934, 26 U.S.C. § 5801, *et. seq.*, ("NFA"), has strictly regulated the manufacture and

13   sale of such weapons, so strictly that the law is often called "the machine gun ban."[1]

14   Defendant Slide Fire Solutions, LP ("Slide Fire") manufactures and sells a device to

15   circumvent, and violate, that longstanding law.  Slide Fire sells to the general public a "bump

16   stock device," an after-market accessory that enables anyone to convert a semiautomatic firearm

17   into, effectively, an automatic weapon.  A bump stock enables a gun to fire hundreds of rounds

18   of ammunition in seconds—by one report, 90 shots in 10 seconds.[2]  Such firepower is not

19   needed for hunting or home defense.  What it is useful for was evident on October 1, 2017,

20   when bump stocks enabled a killer to fire over 1,100 rounds in about 660 seconds, and turn the

21   Route 91 Harvest Music Festival into a war zone.  Fifty-eight people died, over 500 were

22   physically wounded, and thousands—Plaintiffs' proposed class—were emotionally injured and

23

24

25

26   [1] Courts have recognized the extreme danger posed by machineguns, justifying a ban on the sale of machineguns manufactured after 1986. *See, e.g.*, *Hollis v. Lynch*, 827 F.3d 436, 448 (5th Cir. 2016) (describing fully automatic

27   weapons as "primarily weapons of war [that] have no appropriate sporting use or use for personal protection" in decision upholding constitutionality of machinegun ban)  (citations and quotations marks omitted).

28   [2] Larry Buchanan, Jon Huang & Adam Pearce, *Nine Rounds a Second: How the Las Vegas Gunman Outfitted a Rifle to Fire Faster*, NY TIMES (Oct. 5, 2017), https://www.nytimes.com/interactive/2017/10/02/us/vegas-guns.html (by comparison, a fully automatic weapon allows shooter to fire about 98 shots in seven seconds).

1    traumatized. This deadliest mass shooting in U.S. history was made possible by Defendant's

2    bump stocks.[3]

3         Plaintiffs allege that it was negligent and unreasonably dangerous for Slide Fire to

4    market and sell to the public this device that enables anyone to fire weapons of war.  Even

5    worse, Slide Fire misled the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") to

6    obtain approval to sell the device, saying it was intended for people with limited mobility in

7    their hands.  Slide Fire's marketing materials suggest that this was a falsehood designed to

8    prevent ATF from prohibiting the sale of bump stocks; Slide Fire does not market to the

9    disabled, but to civilians—like the Las Vegas killer—who want automatic firepower.

10        In moving to dismiss, Slide Fire argues that (1) Nevada courts may not exercise personal

11   jurisdiction over it; (2) Congress has immunized it from civil liability, barring courts from

12   hearing common law claims brought by people foreseeably injured by its wrongful conduct; and

13   (3) Nevada law does not support Plaintiffs' common law claims.  Slide Fire is wrong.

## II.

## PERSONAL JURISDICTION

### A.   This Court Has Personal Jurisdiction Over Slide Fire.

17        On a motion to dismiss, a plaintiff must merely make a *prima facie* showing that the

18   Court has personal jurisdiction over the defendant.  *Harris Rutsky & Co. Ins. Servs. v. Bell &*

19   *Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).  Accepting Plaintiffs' allegations as true

20   and drawing all inferences in their favor, Plaintiffs' Complaint satisfies this requirement.

21   Plaintiffs have sufficiently alleged that Slide Fire has "minimum contacts" with this forum

22   "such that the maintenance of the suit does not offend traditional notions of fair play and

23   substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).[4]  Accordingly, the

24   Court must deny Slide Fire's Motion to Dismiss pursuant to Rule 12(b)(2).

---

[3] *See* Doug Criss*, The Las Vegas attack is the deadliest mass shooting in modern US history*, CNN (Oct. 2, 2017), https://www.cnn.com/2017/10/02/us/las-vegas-attack-deadliest-us-mass-shooting-trnd/index.html.

[4] This minimum contacts satisfies Nevada's long-arm statute, NEV. REV. STAT. § 14.065, which is coextensive with Constitutional due process.  *Exobox*, 2015 WL 82886, at *13, *17. Thus, personal jurisdiction over Slide Fire lies here.

**1.  This Court has Specific Jurisdiction over Slide Fire.**

Plaintiffs have pled sufficient allegations to establish a *prima facie* case that this Court has specific jurisdiction over Slide Fire.  District courts in the Ninth Circuit utilize a three-pronged test for specific jurisdiction: (1) the nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 416 (9th Cir. 1997).  If the plaintiff carries its burden to prove the first two elements, defendant has the burden to present a compelling case that jurisdiction would be unreasonable.  *Exobox Techs. Corp.v. Tsambis*, No. 2:14-cv-00501-RFB-VCF, 2015 WL 82886, at *4 (D. Nev. Jan. 6, 2015).  Plaintiffs meet the test.

**a.  Slide Fire purposefully availed itself of the benefits of Nevada law**

Plaintiff has made a *prima facie* showing that Slide Fire purposefully availed itself of the protections and benefits of Nevada by attending trade shows here in years leading up to the shooting, through its website and marketing, and its presence in Nevada retail establishments.

A defendant purposefully avails himself of the benefits and protections of a forum state by regularly attending trade shows there.  *Computerized Screening, Inc. v. Healthspot Inc.*, No. 2:14-cv-00573-RFB-NJK, 2015 WL 4562342 (D. Nev. July 28, 2015); *see also Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285, 1299 (Fed. Cir. 2009).  Here, Slide Fire reached out to Nevada, and purposefully availed itself of its laws, by regularly attending and participating in Nevada gun trade shows.  Defendant went to these shows to promote, market, and sell its bump fire products to vendors, buyers and resellers in Nevada.[5]  Also, *via* its website, Slide Fire markets, solicits, and/or otherwise advertises its products for sale to Nevada residents and others.  Compl. ¶¶ 43–44.  Notably, Defendant's website facilitated sales in Nevada by providing a "locate a dealer" function which enabled users to

---

[5] Slide Fire regularly traveled to Nevada and attended "SHOT Show," a gun trade show held in Las Vegas.  *See* SHOT Show Exhibitor List for 2016 and SHOT Show Exhibitor Lists for 2017, attached hereto as Exhibit "2" along with a verification of their authenticity, attached hereto as Exhibit "1"

locate retailers selling its products within a state, including Nevada.[6]  Compl. ¶¶ 44, 60.  *Picot v. Weston*, cited by Defendant, emphasizes that personal jurisdiction will attach when a defendant has "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state," which is precisely what Plaintiffs allege here. 780 F.3d 1206, 1212 (9th Cir. 2015) (internal citation omitted).  Through its online storefront for selling its products to Nevadans, its sale of bump stocks through Nevada retailers, its regular promotion of bump stocks at trade shows in Nevada, and the attendance of its officers at such trade shows, Slide Fire has purposefully availed itself of this forum.

Slide Fire contends that the "effects" test from *Calder v. Jones*, 465 U.S. 783 (1984) applies to this case—and that Plaintiffs do not satisfy that test—based on the false premise that Plaintiffs allege Defendants' only contact with Nevada is the "unilateral activity of a third party (Paddock)."[7]  Mot. at 9.  This is untrue.  Defendant's repeated participation in Nevada trade shows, its marketing and website directed at Nevadans, and its sales through Nevada retailers, satisfies the minimum contacts necessary to confer specific jurisdiction.  Moreover, the "effects" test is inapplicable here because Plaintiffs, unlike in *Calder*, are not asserting intentional tort claims, but negligence and strict liability.  Slide Fire cites no authority that applies the "effects" test to cases not involving intentional conduct.  Mot. at 8.

Accordingly, Plaintiffs have made a *prima facie* showing that Slide Fire purposefully availed itself of this forum.

### b.  Plaintiffs' Claims Arise Out of Defendant's Activities in Nevada.

Plaintiffs have also made a *prima facie* showing that their claim "arises out of or related to" defendant's activities in the forum state.  *Burger King Corp.*, 471 U.S. at 472.  Plaintiffs allege Slide Fire gained government approval to sell bump stocks without restriction by representing them as devices to assist persons "whose hands have limited mobility".  Compl. ¶¶ 12, 54, 78–89. These statements are inconsistent with Slide Fire's marketing, which emphasizes that this product was intended for people—who "love full auto"—to convert a legal firearm into

---

[6] Slide Fire disabled this function on its website after the shooting.
[7] *Calder*, 465 U.S. 783, 789 (holding mere injury to a forum resident is not a sufficient connection to the forum).

an illegal machinegun absent the prohibitive price tag and requisite background check. *Id.* at ¶¶ 54–55. Upon information and belief, Slide Fire made similar misrepresentations when attending and participating in trade shows in Nevada and otherwise promoting, marketing, and selling bump stocks in Nevada. Plaintiffs' claims—that Slide Fire's negligent marketing, sale, and distribution practices created the foreseeable risk that bump stocks would be used to commit acts of violence—directly relates to and arises out of Defendant's contacts with Nevada, as Slide Fire used these negligent practices in Nevada, which led to the use of the bump stock to commit an act of violence in Nevada by Paddock, a Nevada resident.

### c. Exercise of Personal Jurisdiction Over Slide Fire in Nevada Comports with Fair Play and Substantial Justice.

Slide Fire does not even contend that it has met its burden to show that it would be unjust or unreasonable to assert personal jurisdiction in Nevada. *See generally* Mot. at 7-9. That is because it is patently just for this Court to assert personal jurisdiction over Slide Fire due to its regular travel to, and business activities within, Nevada. Indeed, Slide Fire's mere attendance at Nevada trade shows demonstrates that hauling Defendant into court in this forum is fair, and not overly burdensome. *See supra*, at 5.[8]

### 2. This Court has General Jurisdiction over Slide Fire.

Even if this Court did not have specific jurisdiction over Slide Fire—which it does— Plaintiffs have pleaded sufficient allegations to establish a *prima facie* case for this Court to confer general jurisdiction in this case. Slide Fire engages in substantial or continuous and systematic business contacts that approximate physical presence in Nevada, such as marketing, soliciting, and/or otherwise advertising its products for sale in Nevada. Compl. ¶¶ 43–44, 60. Through its online advertisements and marketing, Slide Fire has generated millions of dollars in

---

[8] *See, e.g.*, *Synthes*, 563 F.3d at 1299 ("We note, however, that 'progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome.' . . . In addition, for at least the last five years, [the defendant's] representatives have traveled to the United States for, among other things, trade shows, which suggests that, as far as [the defendant] is concerned, travel itself is not unduly burdensome.") (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980)); *see also Patent Rights Prot. Grp., LLC v. Video Gaming Techs. Inc.*, 603 F.3d 1364, 1367 (Fed. Cir. 2010) (finding that exercising specific jurisdiction over defendants would not place a "particularly onerous burden on the defendants, given their admitted presence at numerous trade shows in the forum state).

6

revenue from its sales of bump stocks.  *Id.* at ¶ 50.  A portion of that financial support has come directly from Nevadans, including from Paddock, a resident of Nevada, who bought dozens of Defendant's bump stocks to carry out his assault.  *Id.* at ¶ 39, 62-63.

**B.   In the Alternative, This Court Should Grant Jurisdictional Discovery.**

In the unlikely event that the Court believes the present record is not sufficiently developed to determine whether Slide Fire is subject to personal jurisdiction, this Court should allow Plaintiffs limited jurisdictional discovery. *See Mullally v. Jones*, No. 2:05-cv-00154-BES-GWF, 2007 WL 67429, at *7 (D. Nev. Feb. 28, 2007) (citing *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1323 (Fed. Cir. 2005). The Ninth Circuit has consistently held that jurisdictional discovery is appropriate when additional discovery would help clarify the facts before the court.  *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd*, 328 F.3d 1122, 1135 (9th Cir. 2003).  Through discovery, Plaintiffs—and this Court—would definitively learn, among other things: the volume of Slide Fire's sales of bump stocks in Nevada; its sales and retail relationships with third parties selling its bump stocks in Nevada; its specific marketing strategies in Nevada; its agents' and officers' travel to Nevada; the specific locations where Paddock purchased bump stocks; any communications between Paddock and Slide Fire; and other information valuable to a personal jurisdiction analysis.

**III.**

**STANDARDS FOR A RULE 12(b)(6) MOTION TO DISMISS**

On a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013) (internal citations omitted).  To survive a motion to dismiss, a plaintiff must only allege facts that are "plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  "[A] complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plaintiffs easily meet this standard.

IV.

## SLIDE FIRE IS NOT ENTITLED TO IMMUNITY UNDER PLCAA

Defendant Slide Fire contends that it is insulated from liability under the Protection of Lawful Commerce in Arms Act ("PLCAA" or "the Act") because its bump stock devices are "component parts" of a firearm.  Mot. at 13–17.  Defendant is wrong.  Bump stock devices are accessories, not components, so they are not protected by PLCAA.  Even if bump stocks were components, Slide Fire is not entitled to PLCAA's protection because it violated the law.

As an initial matter, Slide Fire overstates PLCAA as a sweeping federal law broadly shielding firearms manufacturers from liability.[9] Mot. at 10-13.  However, Congress's intent was far narrower, and it certainly did not shield makers of products such as bump stocks—that circumvent or violate federal law and enable mass murders like the Las Vegas shooting.[10] Indeed, the Justice Department is promulgating regulations that ban bump stocks under longstanding legislation.[11] Interpreting PLCAA to immunize Slide Fire's conduct directly contravenes federal law and the government's intended actions.

Moreover, bump stock devices are not sheltered by PLCAA's limited reach, as bump stocks are "accessories" to firearms, not "component parts."  Compl. ¶¶ 4, 43.  And, even if they *were* component parts, PLCAA does not insulate a manufacturer from civil liability when it has violated federal laws and regulations applicable to the sale of firearms, as Plaintiffs allege here.

### A.   Bump Stock Devices Are Not "Component Parts of a Firearm"

Although PLCAA provides limited immunity for licensed firearms manufacturers and sellers from some liability for a third party's unlawful use of their products, the Act only applies

---

[9] If this court found that PLCAA barred Plaintiffs' claims, Plaintiffs would seek leave to file briefs arguing that PLCAA is unconstitutional, which it is, including on 10th Amendment and Due Process grounds, and to notify the Department of Justice of that contention.

[10] The bill's Senate Floor Leader made clear that "[PLCAA] *"does not protect firearms or ammunitions* manufacturers, sellers or trade associations from any lawsuits based on their own negligence or criminal conduct." 151 Cong. Rec. S9065 (July 27, 2005) (Sen. Craig).  Similarly, PLCAA's first Purpose is not to protect negligence that is a contributing cause to crimes, but "To prohibit causes of action [against the gun companies covered by the Act] for the harm ***solely caused*** by the criminal or unlawful misuse of firearm products … by others …" 15 U.S.C. § 7901(b)(1) (emphasis added).  *See also* 15 U.S.C. § 7901(a)(5) (findings state PLCAA prevents "[t]he possibility of imposing liability on an entire industry for harm that is solely caused by others.").

[11] *See Department of Justice Submits Notice of Proposed Regulation Banning bump stocks*, Department of Justice: Office of Public Affairs (Mar. 10, 2018), https://www.justice.gov/opa/pr/department-justice-submits-notice-proposed-regulation-banning-bump-stocks (announcing intent to prohibit manufacture or sale of bump stocks).

to "qualified products." 15 U.S.C. § 7903(4).  The statute defines a "qualified product[,]" in relevant part, to encompass firearms and their "components" *Id*.  Bump stock devices are neither, so Slide Fire is not protected by PLCAA.

### 1. Bump Stocks Are Not "Component Parts of a Firearm" within PLCAA's Plain Meaning

The Court need not look beyond PLCAA's plain language to determine that bump stock devices are not "component parts of a firearm" under the Act.  *Guido v. Mount Lemmon Fire Dist.*, 859 F.3d 1168, 1170 n.1 (9th Cir. 2017) (analysis of statute begins with its plain language). A "component" is an integral part of the whole; it is not an accessory or enhancement added after-the-fact. *See Oxford English Dictionary* (2018) ("component" is "[a] constituent element or part.").  A bump stock is not a component part necessary to make up a rifle as a "whole", but is an accessory added *after* a consumer purchases a fully functional rifle.

Plaintiffs allege that a bump stock device is a separate part that the Las Vegas killer used: his rifles "were equipped with a 'bump stock' – a device that *attaches to a semi-automatic rifle*, which allows the rifle to mimic a fully automatic weapon" (Compl. ¶ 39); a bump stock is an "aftermarket *accessory*" (Compl. ¶ 40); and "Slide Fire designs, manufactures, markets, and/or sells firearm *accessories*, including sliding rifle gunstocks, more commonly referred to as 'bump fire stocks'" (Compl. ¶ 43) (emphases added).  Plaintiffs' plausible (and correct) reading of PLCAA, and their allegations reflecting the same, are sufficient to defeat Slide Fire's motion to dismiss.  *See Haney v. United Airlines, Inc.*, Case No. 15-cv-00474-VC, 2016 WL 80554, at *4 (N.D. Cal. Jan. 7, 2016) (denying motion to dismiss when plaintiffs' allegations raised "plausible reading of the . . . statute" that "ha[d] some support in the case law").

### 2. Slide Fire's Own Marketing Shows that Bump Stock Devices are not "Component Parts of a Firearm"

Slide Fire's marketing materials, which are exhibits to its Motion, confirm that bump stock devices are not component parts of a firearm.  Its catalog states that an "existing [rifle]" becomes "enhanc[ed]" upon the addition of a bump stock device. Mot., Ex. B at 20–21.  The devices are "install[ed]" onto a completed rifle (*Id.* at 9); intended to "change your standard

1    [rifle]" and enact "a complete overhaul on [a] rifle" (*Id.* at 22); and "add fun to your shooting

2    sessions, and *can really take your rifle to the next level.*" *Id.* at 17 (emphasis added).

### 3.    Other Authorities Support That Bump Stocks Are Not Components

4    Case law interpreting "component parts" under PLCAA, although limited, demonstrates

5    that bump stock devices are not "component parts" because they are not necessary for the use of

6    an otherwise-functional firearm.  In *Sambrano v. Savage Arms, Inc.*, 338 P.3d 103 (N.M. App.

7    2014), the court found that a cable gun lock, sold separately from the rifle, was "an accessory

8    rather than a component of the rifle such that the lock does not fall within the definition of a

9    'qualified product'" under PLCAA. *Id.* at 105.  The court concluded that "[t]he lock is not a

10   qualified product under the PLCAA" and that "PLCAA does not preclude Plaintiffs' claims

11   against [] the lock distributor." *Id.* at 105–06.

12   Slide Fire is similar to *Sambrano*'s lock distributor; it manufactures a product that is

13   sold separately from a firearm and is not required for its use.  As the court in *Sambrano*

14   concluded, even if a *rifle* manufacturer has immunity under PLCAA, the party distributing a

15   rifle *accessory* (like a bump stock) does not.  *See also Auto-Ordnance Corp. v. United States*,

16   822 F.2d 1566, 1570–72 (Fed. Cir. 1987) (sights and compensators that a manufacturer made

17   and sold with semiautomatic carbines were "accessories," not "component parts" of a complete

18   firearm, because the carbines were complete and fully functional firearms without them).

19   Similarly, under federal excise tax regulations on manufacturers' sale of most firearms,

20   taxable "component parts," included in the price of the firearms, are items that "would

21   ordinarily be attached to a firearm during use *and*, *in the ordinary course of trade*, *are packaged*

22   *with the firearm at the time of sale by the manufacturer or importer.*" 27 C.F.R. §§ 53.61(b)(2)

23   (emphasis added).[12] Bump stocks are not firearms, and they are not included in the packaging of

24

25   _____

26   [12]  Slide Fire cites to implementing regulations for other statutes which are inapposite.  Mot. at 16 n. 5.  The
     Firearms and Ammunition Excise Tax defining "component parts" to include "buttstocks" and "attachable shoulder

27   stocks" is irrelevant. 27 C.F.R. § 53.61(5)(ii). Bump stocks are not "buttstocks" that are attached to the rifle at sale.
     And the regulation only provides that "attachable shoulder stocks" are component parts if they are "provided with

28   the firearm."  Bump stocks are sold separately from firearms. Slide Fire's reliance on the definition of
     "component" in regulations implementing the Arms Export Control Act is also inapposite.  *See* 15 C.F.R. § 772.1;
     22 C.F.R. § 120.45 (Mot. at 16 n. 5).  The definition of "component" in these regulations is tied to the definition of
     an "end-item[,]" a term not found in PLCAA.  Moreover, these regulations expressly distinguish between

1   an otherwise-completed rifle.  Under the regulations, nontaxable "accessories" include "*tools*"

2   and "*optional items* purchased by the customer at the time of retail sale . . ."  27 C.F.R. §

3   53.61(b)(5)(iv) (emphasis added).  In fact, Slide Fire offers for sale a "conversion kit" that

4   "contains all the parts and *tools* necessary to convert an AR-15 . . . to a six position receiver

5   extension compatible with our Slide Fire stocks."  Mot., Ex. B at 33 (emphasis added).  Tax

6   laws thus support the conclusion that bump stock devices are not a "component part of a

7   firearm," but are accessories to be added onto a functional rifle.

8   **B.   Bump Stock Devices Are Not Akin to Rifle Stocks**

9            Unable to show that bump stocks are "components" of a rifle within the meaning of

10   PLCAA, Slide Fire relies almost entirely on authorities stating that rifle stocks are "component

11   parts" of a rifle (Mot. at 14–17).  This is true, but irrelevant here.

12            The ATF Guidebook that Slide Fire cites demonstrates this point.  This manual depicts

13   diagrams of a manufactured rifle, including its stock.  Mot. at 15; Ex. F, at 16.  The illustration

14   does not depict a bump stock device; nor does it show that the addition of a bump stock device

15   to the rifle, which already appears fully functional, is required for its use.[13]  The cases Slide Fire

16   cites also do not support the proposition that a bump stock is a component part of a rifle; they

17   simply confirm that a rifle includes a "rifle stock" (not a bump stock device), or merely use the

18   word "stock" and "rifle" in close proximity. Mot. at 15–16.  These cases concern a different

19   federal statute, and do not establish that bump stocks are "component parts of a firearm."

20   **C.   PLCAA Predicate Exceptions Apply To This Action**

21            Even if this Court were to conclude that bump stock devices are "component parts of a

22   firearm" under PLCAA, Slide Fire nevertheless does not enjoy PLCAA immunity.  Plaintiffs'

23   action fits within the "predicate exception" to PLCAA that exempts it from otherwise "qualified

24   civil liability actions" under the Act.  *See* Compl. ¶¶ 15–16, 43, 78–89.

25

26

27

28

"components", on the one hand, and "accessories and attachments", on the other hand.  22 C.F.R. § 120.45(b) (components) and (c) (accessories and attachments); *see also* 15 C.F.R. § 772.1.
[13] ATF's 2010 letter, Mot., Ex. C, merely states that a bump stock is part of a firearm, not a "firearm" itself, which would be regulated under the Gun Control Act.  Nor does ATF characterize a bump stock as a component.

A manufacturer or seller of a qualified product is not entitled to immunity under PLCAA if it "knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii).  This is called the "predicate exception" because a plaintiff must present a cognizable claim as well as "allege a knowing violation of a 'predicate statute.'" *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1132 (9th Cir. 2009) (quoting *City of N.Y. v. Beretta U.S.A. Corp.*, 524 F.3d 384, 390 (2d Cir. 2008)).  The exception applies to all causes of action in the complaint "that allege knowing violations of a state or federal statute applicable to the sale or marketing of firearms."  *Id.* at 1136.  To meet the exception, the complaint need not allege violations of a specific statute.  Rather, the exception is satisfied upon a showing that the plaintiff "sufficiently alleges facts supporting a finding that defendants knowingly violated federal gun laws."  *Williams v. Beemiller, Inc.*, 100 A.D. 3d 143, 149 (N.Y. App. Div. 2012), *amended by* 103 A.D.3d 1191 (N.Y. App. Div. 2013).

The Complaint alleges at least two predicate violations: Slide Fire's intentional misrepresentations, or false entry, on its application for a federal firearms license, and its misrepresentations to ATF about the purpose of bump stocks. *See* Compl. ¶¶ 15–16, 43. Plaintiffs adequately pled that Defendant's actions were the proximate cause of Plaintiffs' injury. *See, e.g.*, Compl. ¶¶ 81, 99, 113, 127, 140.  Moreover, "[w]hether an act is the proximate cause of injury is generally a question of fact." *Ileto*, 349 F.3d 1191, 1206 (9th Cir. 2003).

### 1. Predicate Violation:  False Entry on ATF Form 7

The predicate exception allows claims where gun companies made false or misleading statements to ATF in an application for a Federal Firearms License. *See* 18 U.S.C. § 923(d)(1)(D) (barring approval of firearms license applications that willfully fail to disclose material information or make false statements); *Williams*, 100 A.D. 3d at 149 (predicate exception applied when alleged facts supported violation of 18 U.S.C. § 923).  *See also* 15 U.S.C. § 7903(5)(A)(iii)(I) (predicate exception includes false entries in required records).

Slide Fire must have filed an application with ATF for a Federal Firearms License, because it obtained a Type 7 Federal Firearms License that bears the signature of Slide Fire's founder, Jeremiah Cottle, on January 5, 2016.  *See* Mot., Ex. A.  On this application, known as

1   ATF Form 7,[14] applicants must "[d]escribe the specific activity applicant is engaged in or

2   intends to engage in, which requires a Federal Firearms License."  To obtain a Type 7 License,

3   Slide Fire thus had to certify that it was applying as a "Manufacturer of Firearms Other than

4   Destructive Devices." However, such a certification must have been false.

5          The definition of "firearms" on ATF Form 7 (found in 18 U.S.C. § 921(a)(3)) refers

6   solely to "firearms"; it *does not include* a "component part of a firearm", which is the

7   classification that Slide Fire claims its bump stock devices meet.  Mot. at 17.  Slide Fire's

8   representation that it manufactures firearms is thus a "false statement" of a "material fact"

9   because it formed the basis for ATF's issuance of a Federal Firearms License to Slide Fire as a

10  "Manufacturer Of Firearms Other Than Destructive Devices." Mot., Ex. A. Slide Fire's

11  intentional misrepresentation constitutes a violation of a predicate statute applicable to the sale

12  or manufacture of firearms, 18 U.S.C. § 923(d)(1)(D), which governs issuance of Federal

13  Firearms Licenses pursuant to ATF Applications.  See also 27 C.F.R. § 478.47.  Hence, Slide

14  Fire cannot enjoy PLCAA immunity even if bump stocks are considered a "component part of a

15  firearm,"—as this action falls within PLCAA's predicate exception.

16          **2.  Predicate Violation:  Misrepresentations in ATF Correspondence**

17          Plaintiffs allege that Slide Fire also made misrepresentations to ATF in violation of 18

18  U.S.C. § 1001(a)(2), which is a predicate statute under PLCAA, as it imposes a duty not to

19  make false statements or misrepresentations in communications to ATF.  Slide Fire's assertion

20  to ATF in a 2010 letter that bump stock devices were intended to assist "persons whose hands

21  have limited mobility" is false and misleading.  *See* Compl. ¶¶ 13–16.  The record reveals no

22  measures taken by Slide Fire to market bump stocks to persons with limited mobility, and

23  statements in its own catalog and advertisements belie any notion that bump stock devices are

24  intended for the use of persons with limited mobility.  *See, e.g.*, Compl. ¶ 14 ("Your rifle is

25  hungry, feed it"); Mot., Ex. B  at 17 ("Rapid fire capabilities can add fun to your shooting

26

27  _____

28  [14]  The Court may take judicial notice of the ATF Form 7 application, posted on ATF's website at
     https://www.atf.gov/firearms/docs/form/form-7-7-cr-application-federal-firearms-license-atf-form-
     531012531016/download.  *See* Fed. R. Evid. 201; *Rote v. Silicon Valley Bank, Inc.*, No. 3:16-cv-00471-SI, 2016
     WL 4565776, at *4 (D. Or. Sept. 1, 2016).

13

1    sessions, and can really take your rifle to the next level").  Plaintiffs have sufficiently alleged

2    multiple predicate violations under PLCAA, pursuant to 18 U.S.C. § 1001(a)(2).[15]

3                                              **V.**

4              **PLAINTIFFS ADEQUATELY ALLEGED COMMON LAW CLAIMS**

5    **A.    Plaintiffs Have Adequately Alleged a Claim for Negligence**

6              Defendant also erroneously claims that it cannot be liable under Nevada common law.

7    Under Nevada law, negligence requires a showing of "(1) the existence of a duty of care, (2)

8    breach of that duty, (3) legal causation, and (4) damages." *Sparks v. Alpha Tau Omega*

9    *Fraternity, Inc.*, 255 P.3d 287, 296 (Nev. 2011) (internal citations omitted).  Count I alleges all

10   elements:  Defendant owed a duty of care to Plaintiffs to reasonably market, distribute and sell

11   its bump stocks; Defendant breached that duty by failing properly to market and sell the bump

12   stock as a device to aid individuals with limited mobility, and instead promoting it as an

13   "inexpensive device to circumvent federal law in obtaining fully automatic weapons";

14   Defendant's conduct was a factual and legal cause of Plaintiffs' harm; and Plaintiffs have

15   sustained emotional and pecuniary damage as a result.  *See* Compl. at ¶¶ 79-89.

16             Slide Fire asserts that it has no duty to Plaintiffs and that there is no proximate cause

17   between its actions and any harm to Plaintiffs.  Slide Fire is wrong.

18             **1.   Defendant Owed A Duty of Care to Plaintiffs**

19             Slide Fire urges dismissal, asserting that it had "no duty to control Paddock's intentional

20   conduct" because it lacked a "special relationship" with him.  Mot. at 22.  Slide Fire

21   misunderstands Plaintiffs' claims.  It is not liable for failing to control Paddock; it is liable for

22   its *affirmative conduct* in negligently making and selling devices to enable essentially machine

23   gun fire, which caused the Plaintiffs' harm.  Compl. ¶ 79.  It is well-established that a duty of

24   care arises—and no "special relationship" is required—where, as here, a defendant's affirmative

25

26   _____

     [15] Additionally, the Justice Department has recognized that the manufacture and sale of bump stocks to the public
27   is illegal.  *See Department of Justice Submits Notice of Proposed Regulation Banning bump stocks*, Department of
     Justice: Office of Public Affairs (Mar. 10, 2018), https://www.justice.gov/opa/pr/department-justice-submits-
28   notice-proposed-regulation-banning-bump-stocks (submitting "notice of a proposed regulation to clarify that the
     definition of 'machinegun' in the National Firearms Act and Gun Control Act includes bump stock type devices,
     and that federal law accordingly prohibits the possession, sale, or manufacture of such devices").

                                               14

conduct in marketing and distributing its product creates a foreseeable risk of harm.  *See Ileto*, 329 F.3d at 1201 (defendant owed a duty of care to plaintiffs as a result of its negligent manufacture, distribution and sale of firearms).  As the Supreme Court of Ohio explained in *City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1144 (Ohio 2002):

> [T]he negligence issue before us is not whether appellees owe appellant a duty to control the conduct of third parties. Instead, the issue is whether appellees are themselves negligent by manufacturing, marketing, and distributing firearms in a way that creates an illegal firearms market that results in foreseeable injury. Consequently, the 'special relationship' rule is not determinative of the issue presented here. Instead, the allegations of the complaint are to be addressed without resort to that rule.

The District of Nevada recognized just this distinction in *Dobson v. Sprint Nextel Corp.*, where the defendants argued that no duty of care existed because there was no special relationship between plaintiffs and defendants.  Rejecting that argument, the court explained:

> Plaintiffs have not alleged that Defendants were negligent in *failing to protect them* from the actions of Defendants' customers and law enforcement, rather they have alleged that Defendants were *negligent in creating and providing* a faulty locator services that *caused the foreseeable consequence* . . . While Defendants may not have a special duty to ensure the safety of Plaintiffs arising out of a relationship between the parties, *Defendants do have a general duty to exercise reasonable care in their actions* and would be liable for any foreseeable harm to Plaintiffs caused by their negligence.

2014 WL 553314, at *7 (D. Nev. Feb. 10, 2014) (emphasis added). Plaintiffs allege *affirmative* conduct by Defendant that created a foreseeable risk of harm through its negligent marketing and sale of bump stocks; thus, no special relationship is needed to give rise to a duty of care.

Even if a special relationship were required, one existed since Defendant was in the best position to control the conduct that gave rise to the injury alleged.  *See Scialabba v. Brandise Const. Co.*, 921 P.2d 928, 930-31 (Nev. 1996); *In re September 11 Litigation*, 280 F. Supp. 2d 279, 294 (S.D.N.Y. 2003) (airlines owed duty to individuals on the ground because airlines "were in the best position to provide reasonable protection against hijackings and the dangers they presented . . . to ground victims").  Slide Fire was best-situated to control who had access to bump stock devices and could therefore "take reasonable precautions to protect the other [party] from assaults by third parties which, at least, could reasonably have been anticipated." *Scialabba*, 921 P.2d at 930 (internal citations omitted).  Had Slide Fire marketed and sold bump stock devices to individuals with limited mobility, as it led ATF to believe it would, instead of

15

1   targeting customers like Paddock, who wanted the mass-killing firepower of a fully automatic

2   weapon, the massacre in Las Vegas would never have occurred.

3          Defendant also asserts that it did not breach any duty to Plaintiffs because "the ATF

4   expressly found that Slide Fire's product did not circumvent the law." Mot. at 22.  That finding

5   contradicts the Department of Justice's current opinion that bump stocks are illegal under

6   longstanding law.[16]  Even if the old ATF finding were correct, it would not absolve Defendant

7   of its duty to reasonably market its product.  Sellers of legal products can be liable for harm

8   caused by their negligence in marketing and distributing.  *See, e.g.*, *Ileto*, 349 F.3d at 1204-09.[17]

9              **2.  Defendant's Conduct Proximately Caused Injury to Plaintiffs**

10         Plaintiffs have also adequately pled causation.   While Paddock's actions were

11   intentional, criminal acts, they were a foreseeable result of Defendant's negligence.   "[A]n

12   unlawful act will not supersede causation if it was foreseeable."  *Symeonidis v. AMC, LLC*,

13   2017 WL 6513640, at *2 (Nev. Ct. App. Dec. 11, 2017) (citation omitted); Restatement

14   (Second) of Torts § 448 (third party's criminal conduct is not a superseding cause if "the actor

15   at the time of his negligent conduct realized or should have realized the likelihood that such a

16   situation might be created, and that a third person might avail himself of the opportunity to

17   commit such a tort or crime").   Indeed, courts routinely find that a firearm manufacturer or

18   seller may be liable in negligence for enabling criminal acts of third parties.  *See, e.g.*, *Ileto*, 349

19   F.3d at 1209 (overturning dismissal of plaintiffs' claims that a criminal shooting was the

20   foreseeable result of the defendants' negligent distribution practices); *James v. Arms Tech., Inc.*,

21   820 A.2d 27, 44 (N.J. Super. Ct. App. Div. 2003); *Williams*, 103 A.D.3d at 1192.[18]

22

23   [16] *See supra* at 16, n.17.

24   [17] Defendant also claims *McCarthy v. Sturm, Ruger & Co.*, 916 F. Supp. 366 (S.D.N.Y. 1996) supports dismissal of
     the negligent marketing claim. *McCarthy*, however, dismissed the claims that defendant was negligent in marketing

25   its ammunition to the public rather than just to law enforcement because plaintiffs did not allege that defendant's
     advertisements were "false or misleading." *Id.* at 369.  Here, Plaintiffs' allegations are *not* limited to Slide Fire's

26   misrepresentations, and the misrepresentations that Slide Fire's did make were not directed at the public, but at
     ATF, to gain approval to sell the devices.  Compl. at ¶¶ 12-15; 53-54; 57.  Slide Fire did not market its bump stock

27   to disabled shooters, but negligently marketed the bump stock as a "military-grade accessory for civilians",
     attracting purchasers like Paddock.  Compl. at ¶ 57.

28   [18] *See also Price v. Blaine Kern Artista, Inc.*, 893 P.2d 367, 369-70 (Nev. 1995) (plaintiff, who was pushed by club
     patron while wearing defendant's George Bush mask, raised issue of fact as to whether the club patron's conduct
     was a foreseeable result of defendant mask manufacturer's negligence; club patron's push did not break the chain

1    The very reason that federal law greatly restricts automatic firepower is because of the

2    foreseeable risk that it will be used as it was in Las Vegas – for mass slaughter.  It was

3    foreseeable that the Defendant's broad marketing and distribution of bump stocks as a hassle-

4    free way to fire effectively automatic weapons, without regulation, might, without other

5    precautions, result in that device being used to cause harm of the sort suffered by Plaintiffs.

6    **B.  Plaintiffs Have Adequately Alleged A Claim for Negligence Per Se**

7    Plaintiffs have alleged a viable negligence per se claim.  Compl. ¶ 84.  "A statutory

8    violation is negligence per se if the injured party belongs to the class of persons whom the

9    statute was intended to protect, and the injury suffered is of the type the statute was intended to

10   prevent."  *Atkinson v. MGM Grand Hotel, Inc.*, 98 P.3d 678, 680 (Nev. 2004).  Determining

11   liability under negligence per se "is in general a question of fact for a jury."  *Anderson v.*

12   *Baltrusaitis*, 944 P.2d 797, 799 (Nev. 1997) (internal citation omitted).

13   Defendant's bump stock device violates NEV. REV. STAT. § 104.2314, which requires

14   products sold in the state of Nevada to be "merchantable," or "fit for the ordinary purposes for

15   which such goods are used." *Id.* §104.2314(2)(c).  Slide Fire's bump stock does not meet this

16   definition.  Defendant claimed that the bump stock's "ordinary purpose" was to aid individuals

17   with limited hand mobility, but it is not fit for that purpose.  Rather, the "ordinary purposes" for

18   which bump stocks are *actually* used are for able-bodied persons—like the killer—cheaply and

19   easily to evade federal laws that regulate automatic weapons.  Compl. ¶¶ 12, 55, 80.  It is too

20   dangerous and destructive for an ordinary person to operate.  *See* Compl. ¶¶ 122-146.

21   Plaintiffs meet the remaining requirements of a negligence per se claim.  They are in the

22   class of persons intended to be protected by NEV. REV. STAT. § 104.2314, since their injury

23   resulted from Defendant's marketing and distribution of the bump stock, which was not fit for

24   the ordinary purposes for which it was used.  Moreover, Plaintiffs suffered the type of harm that

25   NEV. REV. STAT. § 104.2314 aims to prevent, that is, harm to consumers and the public caused

26   by defective or dangerous products.  Finally, Defendant's violation of the statute proximately

27

28

---

of causation, because defendant manufacturer should have foreseen the possibility of "some sort of violent reaction, such as pushing, by intoxicated or politically volatile persons, ignited by sight" of George Bush mask).

1   caused Plaintiffs harm, because Defendant did not confine its marketing of bump stocks to the

2   disabled, but targeted buyers like Paddock, who used them to cause Plaintiffs' injuries.

3   **C.  Plaintiffs Adequately Allege Claims for Negligent Infliction of Emotional Distress**

4           Plaintiffs have adequately pled direct and bystander claims for negligent infliction of

5   emotional distress ("NIED").  Slide Fire's arguments (Mot. at 20-21) are unpersuasive.

6           In Nevada, a bystander can recover for NIED by showing "that he or she (1) was located

7   near the scene; (2) was emotionally injured by the contemporaneous sensory observance of the

8   accident; and (3) was closely related to the victim." *Grotts v. Zahner*, 989 P.2d 415, 416 (Nev.

9   1999).  While Defendant claims that only bystanders may bring direct NIED claims, several

10  cases—including from the Nevada Supreme Court and this District—have held to the contrary.

11  *See, e.g., Shoen v. Amerco, Inc.*, 896 P.2d 469, 477 (Nev. 1995) ("[i]f a bystander can recover

12  for the negligent infliction of emotional distress, it is only logical that the direct victim be

13  permitted the same recovery."); *Peterson v. Miranda*, 991 F. Supp. 2d 1109, 1118 (D. Nev.

14  2014) (denying defendants' motion for summary judgment on NIED claim, for "in Nevada, a

15  direct victim of a defendant's negligent acts can recover for negligent infliction of emotional

16  distress"); *Eleanora J. Dietlein Tr. v. Am. Home Mortg. Inv. Corp.*, No. 3:11–CV–0719–LRH–

17  VPC, 2012 WL 1602404, at *3 (D. Nev. May 4, 2012) (holding "in Nevada, a direct victim of a

18  defendant's negligent acts can recover for negligent infliction of emotional distress").[19]

19          Slide Fire inaccurately claims that Plaintiffs fail to allege that they were "closely related

20  to any victim".  Mot. at 21.  In fact, Plaintiffs allege they are family members of victims or

21  victims themselves, and were at the concert when the shooting took place.  *See* Compl. ¶¶ 93-95

22  ("*each* Plaintiff and all of those similarly situated witnessed the carnage and death [and injuries]

23  of loved ones, family members . . .") (emphasis added); Compl. ¶¶ 109-111.

24          Additionally, while Slide Fire claims that Plaintiffs did not allege a "physical impact or

25  serious emotional distress causing physical injury or illness" (Mot. at 21), Plaintiffs easily

26  satisfy the emotional injury requirement, given the historic violence of the shooting.  Nevada

27

28

---

[19] Moreover, even if no direct NIED claim were cognizable under Nevada law, Plaintiffs could recover for emotional distress under their well-pled negligence claim (*see* Compl., Count I).

18

1    courts have upheld bystander NIED claims resulting from far less calamitous events.  *See*

2    *Ervine v. Desert View Regional Med. Ctr. Holdings, LLC*, Case No. 2:10–CV–1494 JCM

3    (GWF), 2016 WL 5419417, at *1, 8 (D. Nev. Sept. 27, 2016) (denying summary judgment on

4    NIED claim when defendant allegedly refused to provide plaintiff's deaf wife with a sign-

5    language interpreter while she was in the defendant's medical center); *Downs v. River City*

6    *Grp., LLC*, No. 3:11–cv–0885–LRH–WGC, 2012 WL 1684598, at *3 (D. Nev. May 11, 2012)

7    (denying motion to dismiss NIED emotional injury when defendant bank conducted foreclosure

8    although plaintiff was not in default).

9         Moreover, Plaintiffs allege that they "suffered a shock resulting from the sensory and

10   observance of the carnage" (Compl. ¶¶ 94-95), which Nevada courts have expressly held

11   supports an NIED claim. *See, e.g.*, *Eleanora J. Dietlein Trust v. Am. Home Mortg. Inv. Corp.*,

12   No. 3:11–CV–0719–LRH–VPC, 2012 WL 1602404, at *3 (D. Nev. May 4, 2012) (plaintiffs

13   may recover for NIED where they witnessed defendant wrongfully foreclosing on their home,

14   and "suffer[ed] a shock"); *Crippens v. Sav on Drug Stores*, 961 P.2d 761, 761-63 (Nev. 1998)

15   (plaintiff adequately pled that she "suffer[ed] a shock" from emotional impact in a bystander

16   NIED claim where plaintiff administered to her mother medication improperly dispensed by

17   defendant, and observed her mother become permanently disabled as a result).

18        Finally, Plaintiffs have alleged the need for medical mental health monitoring (Compl,.

19   Counts 1-5), which, under Nevada law, does not require a "present" allegation of physical

20   injury.  *See Sadler v. PacifiCare*, 340 P.3d 1264, 1270–72 (Nev. 2014).  As in *Sadler*, Plaintiffs

21   have an interest in avoiding expensive psychological and physical examinations, which they

22   will need to monitor emotional *and* physical symptoms resulting from Defendant's negligent

23   conduct.  The purpose of requiring medical monitoring in *Sadler* was the same as here:  to catch

24   the onset of illness as early as possible so that they do not lose "valuable treatment time."  *Id.* at

25   1271.  Regardless of the standard applied, Plaintiffs have adequately alleged NIED claims.

26   **D.   The Complaint Properly States a Claim for Public Nuisance**

27        In contending that public nuisance claims are not cognizable in Nevada, Slide Fire

28   incorrectly represents the law.  Mot. at 22.  In Nevada, a private individual *does* have a claim

     for public nuisance if he or she establishes some special injury or damage different than that

sustained by the general public. *Blanding v. Las Vegas*, 1929 Nev. LEXIS 41, at *27-29 (Nev. Sept. 25, 1929); *see also Fogg v. Nev.-Cal.-Or. Rwy.*, 20 Nev. 429, 437–38 (Nev. 1890) (same). *Cf. Williams*, 103 A.D.3d at 1192 (gunshot victim suffered special injury beyond that experienced by community at large, stating public nuisance under New York law).

Plaintiffs' allegations clearly meet this standard. Indeed, it is hard to imagine injuries more extraordinary than those alleged by Plaintiffs. *See, e.g.*, Compl. ¶¶ 94-95 (claiming that each Plaintiff witnessed carnage, death and injuries of "loved ones, family members and friends" and "suffered a shock resulting from the sensory and observance of the carnage"). As a result of Defendant's manufacture and sale of bump stocks, Plaintiffs have suffered and continue to suffer emotional distress and psychological trauma from being fired upon and/or witnessing first-hand the carnage and injuries to family members, friends, and fellow concert goers -- injuries above and beyond those suffered by the community at large. Moreover, maintaining Plaintiffs' claims would be consistent with rulings in multiple other jurisdictions, which have denied motions to dismiss public nuisance claims against gun dealers and manufacturers. *See, e.g.*, *White v. Smith & Wesson*, 97 F. Supp. 2d 816, 823 (N.D. Ohio 2000) (denying motion to dismiss a public nuisance claim); *James*, 820 A.2d at 50–53 (same); *City of Cincinnati*, 768 N.E.2d at 1141–45 (same); *Johnson v. Bulls Eye Shooter Supply*, 2003 WL 21639244, at *4 (Wa. Super. Ct. June 27, 2003) (same).

**E.  The Complaint Properly States a Claim for Products Liability**

Slide Fire inaccurately claims that Plaintiffs have not stated a claim for strict products liability. As required, Plaintiffs have alleged sufficient facts to show: (1) the defendant placed upon the market a defective product; (2) the injuries were caused by the defect in the product; and (3) such defect existed when the product left the hands of the defendant. *Allison v. Merck & Co.*, 110 Nev. 762, 767-68, 878 P.2d 948, 952 (1994).

Here, Slide Fire is strictly liable to plaintiff for placing bump stocks into the market, which were then used (without modification) to enable extreme rapid fire and the largest mass shooting in U.S. history. Plaintiffs' injuries caused by Defendant's bump stocks were foreseeable.

1    Slide Fire incorrectly suggests that Plaintiffs are making a "no defect" claim.  Mot. at

2  23.  However, Nevada courts have held that products are defective which are dangerous because

3  they fail to perform in the manner reasonably to be expected in light of their nature and intended

4  function.  *Allison*, 110 Nev. at 767-68, 878 P.2d at 952; *see also*, *Duzer v. Shoshone Coca Cola*

5  *Bottling Co.*, 103 Nev. 383, 741 P.2d 811 (1987) (holding an unreasonably dangerous product is

6  defective).

7    Slide Fire relies on a New York case which is inapplicable.  First, that court determined

8  defendant's product was legal and designed to cause harm, unlike here.  *McCarthy*, 916 F.

9  Supp. 366, 371.  Second, Nevada has not adopted the risk/utility analysis, which was central to

10  the holding in that case.  *Id.*, *but c.f. Ford Motor Co. v. Trejo*, 402 P.3d 649 (Nev. 2017)

11  (upholding consumer expectations test in products cases).  Plaintiffs have adequately pled a

12  strict products liability claim.

13                                                    **VI.**

14                                          **CONCLUSION**

15

16       Defendant Slide Fire's Motion to Dismiss should be denied.

17                                          DATED this 30th day of March, 2018

18                                          */s/Robert T. Eglet, Esq.*

19                                          ROBERT T. EGLET, ESQ.
                                            Nevada Bar No. 3402

20                                          ROBERT M. ADAMS, ESQ.
                                            Nevada Bar No. 6551

21                                          **EGLET PRINCE**

22                                          400 South 7th Street, 4th Floor
                                            Las Vegas, Nevada 89101

23                                          -and-

24                                          JONATHAN E. LOWY, ESQ.
                                            *(Pro Hac Vice Forthcoming)*

25                                          District of Columbia Bar No. 418654

26                                          **BRADY CENTER TO PREVENT GUN**
                                            **VIOLENCE**

27                                          840 1ST Street, NE, #400
                                            Washington, DC 20002

28                                          Telephone: 202-370-8104
                                            Email: jlowy@bradymail.org
                                            *Attorneys for Plaintiffs*

EGLET PRINCE

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on 30<u>th</u> day of March, 2018, I served the above **PLAINTIFFS' OPPOSITION TO DEFENDANT SLIDE FIRE SOLUTIONS, LP'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULES 12(B)(2) AND 12(B)(6)** through the CM/ECF system of the United States District Court for the District of Nevada (or, if necessary, by U.S. Mail, first class, postage pre-paid), upon the following:

JAMES D. BOYLE, ESQ.
F. THOMAS EDWARDS, ESQ.
**HOLLEY DRIGGS WALCH FINE WRAY PUZEY & THOMPSON**
400 South Fourth Street, Suite 300
Las Vegas, Nevada 89101
-and-
JEFFREY MALSCH, ESQ.
*(Pro Hac Vice)*
DANNY C. LALLIS, ESQ.
*(Pro Hac Vice Forthcoming)*
**PISCIOTTI MALSCH, PC**
30 Columbia Turnpike, Suite 205
Florham Park, New Jersey 07932
*Attorneys for Defendant Slide Fire Solutions, LP*

_____
*/s/Crystal Garcia*
An Employee of Eglet Prince

EGLET PRINCE

22