JAMES D. BOYLE, ESQ.
Nevada Bar No. 08384
Email: jboyle@nevadafirm.com
F. THOMAS EDWARDS, ESQ.
Nevada Bar No. 09549
Email: tedwards@nevadafirm.com
HOLLEY DRIGGS WALCH
FINE WRAY PUZEY & THOMPSON
400 South Fourth Street, Suite 300
Las Vegas, Nevada 89101
Phone: 702/791-0308
Fax:    702/791-1912

JEFFREY MALSCH, ESQ.
(Pro Hac Vice Application Forthcoming)
Email: jmalsch@pmlegalfirm.com
DANNY C. LALLIS, ESQ.
(Pro Hac Vice Application Forthcoming)
Email: dlallis@pmlegalfirm.com
PISCIOTTI MALSCH PC
30 Columbia Turnpike, Suite 205
Florham Park, New Jersey 07932
Phone: (973) 245-8100

*Attorneys for Defendant Slide Fire Solutions, LP*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DEVON PRESCOTT, individually and on behalf of all those similarly situated; BROOKE FREEMAN, individually and on behalf of all those similarly situated; TASANEEPORN UPRIGHT, individually and on behalf of all those similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>SLIDE FIRE SOLUTIONS, LP, a Foreign Corporation; DOE MANUFACTURERS 1 – 100, inclusive; and ROE RETAILERS 1 – 100, inclusive,<br><br>　　　　　　　Defendants. | CASE NO.: 2:18-cv-00296-GMN-GWF<br><br>**DEFENDANT SLIDE FIRE SOLUTIONS, LP'S REPLY IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULES 12(B)(2) AND 12(B)(6)**<br><br>**ORAL ARGUMENT REQUESTED**<br>**Pursuant to Local Rule 78-1.** |

12459-01.001/2034007.docx

Defendant Slide Fire Solutions, LP ("Slide Fire") files this Reply in response to Plaintiffs' Opposition (ECF No. 17) and in further support of its Motion to Dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 8).

## MEMORANDUM OF POINTS AND AUTHORITIES
### I. PRELIMINARY STATEMENT

Importantly, in opposing the motion to dismiss, Plaintiffs acknowledge the following facts: (1) at all times relevant to this case, Slide Fire's bump-stock was legally manufactured and legally sold throughout the United States; (2) the bump-stock was not defective in design or manufacture; and (3) the bump-stock was intentionally and criminally misused by Stephen Paddock on the date of the shooting. Despite acknowledging these facts, Plaintiffs are pursuing a six-count lawsuit by arguing that Slide Fire failed to prevent persons from criminally misusing its product. In other words, Plaintiffs are seeking to hold the manufacturer of a component part of a firearm liable for the intentional and unlawful conduct of a third party. As Defendant noted in its moving papers, this is precisely the type of lawsuit that the Protection of Lawful Commerce in Arms Act was designed to foreclose. Accordingly, this lawsuit should be dismissed with prejudice.

### II. RESPONSE TO PLAINTIFFS' "STATEMENT OF FACTS"

Plaintiffs commence their opposition with a "Statement of Facts" section that references the National Firearms Act of 1934, 26 U.S.C. § 5801, *et seq.* ("NFA"), and the role of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). Plaintiffs' discussion of these topics is, however, purposefully incomplete, which requires a brief clarification. "[T]he NFA defines the specific types of firearms subject to the provisions of the Act. These definitions describe the function, design, configuration, and/or dimensions that weapons must have to be NFA firearms." (See Ex. A, ATF National Firearms Act Handbook, § 2.1.)[1] Thus, based on the physical characteristics of the product, a firearm either is or is not regulated by the NFA. If the product is regulated by the NFA, then any user must obtain the proper paperwork before purchasing it (a

---

[1] The ATF National Firearms Act Handbook is available at https://www.atf.gov/firearms/national-firearms-act-handbook. Defendant is only attaching the referenced pages, but Defendant requests that the Court take judicial notice of the ATF's website and the handbook. See Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998-99 (9th Cir. 2010).

1

special license, a tax stamp, *etc.*). The NFA also prohibits devices that can "convert" a non-NFA firearm into a restricted firearm (*i.e.*, a machinegun):

> Included within the definition of machinegun is any part designed and intended solely and exclusively . . . for use in converting a weapon into a machinegun. . . . The "any part designed and intended solely and exclusively" language refers to a part that was produced for no other reason than to convert a weapon into a machinegun.

(Id. § 2.1.6.)

The Firearms and Ammunition Technology Division ("FATD") is the ATF's technical authority relating to firearms and their classifications under the federal laws, including the NFA. (See Firearms and Ammunition Technology, available at https://www.atf.gov/firearms/firearms-and-ammunition-technology (last visited Apr. 14, 2018).) Manufacturers can submit a product to the FATD for purposes of obtaining a technical evaluation and a classification under the applicable laws. (Ibid.) In this case, Slide Fire did just that. Prior to selling its bump-fire stocks, the stock was submitted to the ATF to confirm that it was not an NFA-regulated item. After evaluating the product, the ATF confirmed that the "bump-stock" is "a firearm part and is not regulated as a firearm under the Gun Control Act or the National Firearms Act." (ECF No. 8-4). Therefore, the NFA has no bearing on this matter because Slide Fire did not manufacture a machine gun or a device that could "convert" a semi-automatic firearm into an automatic firearm.[2]

In their opposition, Plaintiffs also repeatedly mention that the ATF's correspondence to Slide Fire noted that the bump-fire stock could be utilized for persons with disabilities. However, this description of the product had no bearing on the ATF's assessment, which was confined to evaluating the product under existing federal law. As noted, this determination was based solely on the functionality and configuration of the product. In other words, the ATF did not evaluate the product based upon its intended use or marketability; the ATF solely assessed whether it was a regulated item based on its design characteristics. Contrary to Plaintiffs' insinuations otherwise, the ATF's letter to Slide Fire simply confirmed that: (1) a person could purchase this component

---

[2] Despite the rhetoric contained within the opposition, while the product at issue allows the trigger to be pulled faster than most persons can accomplish using just their finger, a firearm with a Slide Fire stock still discharges one round per trigger-pull.

2

without completing a Form 4473 and undergoing a background check and (2) the bump-stock is not considered a "machine gun" or other destructive device requiring a special license and tax stamp.[3]

### III.   ARGUMENT

Plaintiffs fail to point to pleaded facts or legal authority to avoid dismissal. In fact, the arguments raised in opposition confirm that this lawsuit should be dismissed.

**A.   PLAINTIFFS FAILED TO PLEAD SUFFICIENT FACTS TO ESTABLISH PERSONAL JURISDICTION OVER SLIDE FIRE.**

The sole allegation in the Complaint to support personal jurisdiction is that "each and every Defendant has done, and continues to do, business in the State of Nevada, and committed a tort in the State of Nevada." (ECF No. 1-2, Compl., ¶¶ 33-35.) In an attempt to bolster this allegation in their opposition, Plaintiffs submitted two website printouts indicating that Slide Fire attended a firearms industry trade show in Las Vegas for four days in 2016 and 2017. (ECF No. 17-2.) Plaintiffs contend that these generic allegations and two printouts are sufficient to confer both general and specific jurisdiction over Slide Fire. This is legally incorrect.

**1.   General Jurisdiction.**

Quite surprisingly, Plaintiffs argue that this Court has general jurisdiction over Slide Fire. In maintaining this argument, Plaintiffs ignore well-settled, and recent, Supreme Court precedent because general jurisdiction is almost exclusively found in a corporation's place of incorporation and principal place of business. Daimler AG v. Bauman, 134 S. Ct. 746, 761 (2014). Here, it is undisputed that Slide Fire is a Texas limited partnership formed in Texas and each and every partner is a citizen of Texas. (See ECF No. 1, Removal, ¶ 8.) Therefore, Texas is where Slide Fire is located and where it maintains its principal place of business. Plaintiffs' Complaint contains no facts to support a conclusion that Slide Fire is "at home" in Nevada. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011); see also Bristol-Myers Squibb Co. v.

---

[3] Additionally, Slide Fire denies Plaintiffs' contention that it informed ATF that the bump-stock was solely intended for persons with disabilities. (ECF No. 1-2, ¶¶ 13, 53-54.) The bump-stock was submitted as an alternative to the standard rifle stock, and Mr. Cottle's correspondence indicates that the bump stock was a safer way to bump-fire and allowed the user to properly control the rifle while shooting. The correspondence only noted that the stock would have an "added benefit" of allowing someone with limited mobility in their fingers to use their off-hand to assist them in firing a rifle.

Superior Court, 137 S. Ct. 1773, 1778 (2017) (finding that Bristol-Myers was not subject to general jurisdiction despite having 5 research and laboratory facilities, 160 facility workers, 250 sales representatives, and a small state-government advocacy office in California). Accordingly, there are no allegations or evidence to support a claim for general personal jurisdiction in this case.

### 2. Specific Jurisdiction.

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). To carry this burden, Plaintiffs argue that: (1) there are sufficient factual allegations in the Complaint to establish specific personal jurisdiction; and (2) the fact that Slide Fire maintains a website is a basis to find specific personal jurisdiction. Neither argument is persuasive.

Initially, a court may exercise specific jurisdiction over a non-resident defendant when the plaintiff's cause of action arises out of, or is related to, a defendant's conduct with the forum state. Walden v. Fiore, 134 S. Ct. 1115, 1122-23 (2014). For specific jurisdiction to attach, a defendant's actions within the forum must "give rise to the liabilities sued on." Daimler, 134 S. Ct. at 754. Here, no factual allegations are pled supporting the assertion that Plaintiffs' claims arise out of Slide Fire's connections with Nevada. In opposing this conclusion, Plaintiffs appear to be confusing the concepts of general and specific jurisdiction as Plaintiffs attempt to use Slide Fire's attendance at a trade show to demonstrate minimum contacts with Nevada. For the attendance at two trade shows to be relevant under the specific jurisdiction analysis, Slide Fire's attendance must be connected to the underlying controversy. Bristol-Myers 137 S. Ct. at 1781. However, Plaintiffs do not allege that Mr. Paddock attended this trade show, or that any of Slide Fire's products allegedly used during the incident were sold at this show. Indeed, Plaintiffs do not make any such allegations because they know that no consumer sales are conducted at the SHOT Show and only industry members are permitted access to the event. (See http://shotshow.org/policies/.) Absent any allegations connecting Slide Fire's attendance at an industry event in Nevada to the claims asserted in this case, Plaintiffs cannot establish specific personal jurisdiction.

Plaintiffs also argue that Slide Fire's website establishes specific jurisdiction. However,

4

"creating a [web]site, like placing a product into the stream of commerce, may be felt nationwide- or even worldwide-but, without more, it is not an act purposefully directed toward the forum state." Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418 (9th Cir. 1997). Thus, a website alone cannot establish jurisdiction without "'something more' to indicate that [Slide Fire] purposefully (albeit electronically) directed [its] activity in a substantial way to the forum state." Id. To the extent Plaintiffs argue that the "dealer locator" on Slide Fire's website is "something more" to establish purposeful direction, they are incorrect. A feature on a website that allows a consumer to find a local retail outlet does not suffice to establish "purposeful direction" by Slide Fire toward Nevada. The test in a case such as the one before this Court is clear:

> Purposeful direction is evaluated using the three-part test taken from the Supreme Court's decision in Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). Under the Calder test, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."

Guava Family, Inc. v. Guava Kids, LLC, 2013 U.S. Dist. LEXIS 58182, at *14-16 (S.D. Cal. Apr. 23, 2013) (internal citations omitted). Here, based on Plaintiffs' allegations, Slide Fire has (1) committed no intentional act, (2) directed to the State of Nevada, (3) that in any way caused harm to Plaintiffs within Nevada. As such, this Court lacks specific personal jurisdiction over Slide Fire.[4]

### B. PLAINTIFFS' LAWSUIT IS PRECLUDED BY THE PLCAA.

Plaintiffs concede that Slide Fire is a licensed "manufacturer" and that the case falls within the definition of a "Qualified Civil Liability Action" under the Protection of Lawful Commerce in Arms Act ("PLCAA"), which is a federal preemption statute that prohibits lawsuits brought by any person against the manufacturer or seller of a firearm, ammunition, or a component part of a firearm or ammunition for damages caused by the criminal misuse of the product. See 15 U.S.C.

---

[4] Plaintiffs' tepid request for jurisdictional discovery should also be denied. When a claim of personal jurisdiction appears to be "attenuated and based on bare allegations" or when the discovery request is based on "little more than a hunch that it might yield jurisdictionally relevant facts," jurisdictional discovery is not appropriate. Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008); Pebble Beach Co. v. Caddy, 453 F.3d 115, 1160 (9th Cir. 2006). Here, the Complaint contains bare factual allegations that, even if true, would not establish personal jurisdiction. See Gunn v. Wild, 2017 U.S. Dist. LEXIS 218587, at *5-6 (D. Nev. Dec. 28, 2017). In their opposition, Plaintiffs generally argue that jurisdictional discovery "would help clarify facts before the court," (ECF No. 17 at p. 7), but a conclusory claim that "jurisdictional discovery would clarify" facts has been found to be insufficient to warrant such discovery. Southport Lane Equity II, LLC v. Downey, 177 F. Supp. 3d 1286, 1298 (D. Nev. March 30, 2016). Therefore, Plaintiffs' alternative request for jurisdictional discovery should be denied.

§ 7903. Thus, the questions for this Court in deciding this aspect of the pending motion are narrow. Initially, the Court must determine whether the product in question is a "component part of a firearm." Id. § 7903(4). If the Court finds, as it should, that a rifle's stock is a component part, then the Court must next determine whether Plaintiffs have adequately pled an exception to the PLCAA to allow the case to move beyond the pleadings stage.

### 1. The Slide Fire Bump-Stock is a Component Part of a Firearm.

Everyone has heard the saying, "Lock, Stock and Barrel." This is a figure of speech meaning "all," "total," or "everything," with its derivation being the components of a gun: the lock (now referred to as the receiver), the stock, and the barrel. Without any one of these three parts, there is no operable rifle. There is no question that the stock is a "component part of a firearm" within the meaning of the PLCAA. Id. § 7903(4). In fact, Plaintiffs acknowledge that a stock is a component part of a firearm and concede that if Defendant's stock had come with the subject rifle from the manufacturer, then it would be considered a "component part" as defined by the PLCAA. However, Plaintiffs argue that since the stock at issue was allegedly acquired as an aftermarket component part, it is an "accessory" and not a "component part." Plaintiffs do not cite to any authority to support this interpretation, which is because it is nonsensical. Indeed, consider Plaintiffs' argument in an analogous situation: if a person were to replace their low-profile tires on an automobile with snow tires, Plaintiffs would argue that the snow tires are not a component part of the vehicle, but simply an accessory because they are not the original tires.

It should be noted that Plaintiffs' argument may be based on a misunderstanding or misconception of how the bump-stock operates. It is not an add-on accessory and it does not attach or affix to an existing stock. Rather, the Slide Fire stock replaces the existing stock. (See Ex. C, Slide Fire Installation Instructions; Ex. D, Photograph.) It is no different than replacing a rifle's original wood stock with an aftermarket synthetic stock or replacing a rifle's original barrel with an aftermarket barrel; both the original and aftermarket stocks and barrels are "component parts." In other words, contrary to Plaintiffs' assertions in opposition, it is not akin to "adding" an

accessory, such as a suppressor or a sight. (See ECF No. 17, Plt. Opp. at p. 10.)[5]

Finally, Plaintiffs' position (defining an aftermarket stock as an accessory but an original stock as a component part) is not supported by the text of the PLCAA and would not further the legislative intent in enacting the PLCAA. The PLCAA speaks only of "component parts" and does not, in any way, limit the definition to only original parts. Additionally, in passing the PLCAA, Congress made a number of findings, including that: **the businesses involved in the firearms industries should not be liable for harm caused by the misuse of their products when they function as designed** and actions against members of the firearms industry based on the unlawful use of firearms is an abuse of the legal system and an unreasonable burden on interstate and foreign commerce (15 U.S.C. § 7901(a)(3), (5), (6), (b)(4). Following Plaintiffs' rationale, the PLCAA would not apply to manufacturers of aftermarket component parts of firearms (stocks and barrels), which would clearly run counter to both the text and purposes of the Act. It is certainly telling that even in making this argument, Plaintiffs fail to offer any authority or even a plausible reason for creating a distinction between original and aftermarket component parts.[6]

Ultimately, Plaintiffs are attempting to hold a manufacturer of stocks – a component part of a rifle – liable for the criminal misuse of the product by a third party. The PLCAA was enacted to prevent this precise type of lawsuit, and the Act's purposes would not be furthered by following Plaintiffs' legally unsupported argument. Therefore, the PLCAA is indisputably applicable to this case, and Plaintiffs' lawsuit can only proceed if one of the exceptions to the Act is met.

///

///

---

[5] Plaintiffs' reliance on Sambrano v. Savage Arms, Inc., 338 P.3d 103 (N.M. App. 2014), is particularly misplaced because that court found that the distributor of an allegedly defective cable lock could not rely upon the PLCAA. A cable lock is a totally separate device that can be used to secure a firearm that is being stored to prevent it from being used by unauthorized persons, such as children. It consists of a cable that is placed through the action of the firearm to prevent it from functioning and then locked with a padlock, which is utilized to prevent access to the firearm. Thus, a cable lock is a wholly separate product that does not replace an existing part of a firearm.

[6] Moreover, the illogicality of Plaintiffs' argument is evidenced by the fact that Slide Fire manufactures and sells completed rifles with bump stocks. (See Dkt. No. 8-3, Catalog at p. 28-29 (noting that "our new rifle will be ready to enjoy right out of the box."); see also Ex. B, Website Printout.) According to Plaintiffs' own argument, the bump-stock attached to this new rifle would be a component part. Thus, Plaintiffs' position is that if Slide Fire sells a rifle with the bump-stock already installed, it is a component, but if the bump-stock is sold separately and installed by a third party, then it is an accessory. There is simply no legal or logical justification for this position.

7

### 2. All Causes of Action That Do Not Meet an Exception to the Act Must Be Immediately Dismissed.

In opposition, Plaintiffs argue that even if the PLCAA is applicable, the predicate exception to the Act applies and prevents dismissal. (ECF No. 17 at p. 12.) Plaintiffs do not argue that any other exception to the Act is satisfied.[7] The predicate exception requires that a cause of action be based upon a defendant "knowingly violat[ing] a State or Federal statute applicable to the sale or marketing of the product and the violation was a proximate cause of the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii). As evidenced by the allegations in the Complaint, Plaintiffs do not allege that Defendant violated *any* statutes, let alone one applicable to the sale or marketing of the product, and there is no allegation that any violation was a proximate cause of the criminal shooting by Paddock. Absent these allegations, Plaintiffs' causes of action must be dismissed. Estate of Charlot v. Bushmaster Firearms, Inc., 628 F. Supp. 2d 174, 182 (D.D.C. 2009).[8]

### 3. The Predicate Exception Does Not Apply.

In arguing that the predicate exception is applicable, Plaintiffs contend that "[1] the Complaint alleges at least two predicate violations: Slide Fire's intentional misrepresentations, or false entry, on its application for a federal firearms license, and [2] its misrepresentations to ATF about the purpose of bump stocks." (ECF No. 17 at p. 12.) Neither argument is valid.

Initially, Plaintiffs claim to have pled that Slide Fire made false entries on its application for a federal firearms license ("FFL"). There is no such allegation in the Complaint, which should

---

[7] The PLCAA also contains an exception for product liability causes of action. See 15 U.S.C. § 7903(5)(A)(v). Although Plaintiffs' Complaint contained causes of action based on product liability, in moving to dismiss, Defendant argued that these causes of action did not meet the product liability exception to the Act because (1) the claims are not for death or physical injuries and (2) the discharge of the rifles in question were caused by the volitional acts of Paddock constituting a criminal offense. (ECF No. 8 at p. 19-20.) Plaintiffs have not challenged or opposed this argument. Therefore, the product liability exception to the Act is not applicable.

[8] Acknowledging that they failed to plead any violations of a statute, Plaintiffs cite to Williams v Beemiller, Inc., 952 N.Y.S.2d 333 (N.Y. App. Div. 4th Dep't 2012) and contend that "the complaint need not allege violations of a specific statute" to meet the predicate exception. (ECF No. 17 at p. 12.) The decision in Williams is simply not applicable here. First, Williams involved allegations of an illegal sale by a retailer of a firearm to persons involved in trafficking. Second, the complaint alleged that the defendants violated federal statutes and also identified New York statutes alleged to have been violated. Third, and perhaps most importantly, the holding was based upon a procedural issue related solely to New York practice. It was noted that under New York pleading standards, the remedy for a defective pleading is to serve a demand for a bill of particulars, which is a procedural device to permit one party to ask the other for more particularized details about a claim or defense. See C.P.L.R. § 3043(a). The Williams court found that the plaintiff should identify the statutes violated in the bill of particulars. Thus, the Williams decision is not applicable to either Nevada substantive law or federal procedural law.

end the inquiry. Even if such an allegation were pleaded, however, it is pure speculation that Slide Fire made any misrepresentations on its FFL application. Plaintiffs argue that Slide Fire "must have" made misrepresentations on its license application because an FFL is not required for Slide Fire to sell stocks. However, Slide Fire also manufactures and sells firearms. (See Dkt. No. 8-3, Catalog at p. 28-29; Ex. B, Website Printout.) Aside from ignoring this fact, it is perfectly acceptable and common for businesses within the firearms industry that do not manufacture or sell "firearms" to hold an FFL. For example, manufacturers of stocks, barrels, or even holsters need to obtain firearms for use in designing and testing their products, and possession of an FFL is the only practical way to acquire firearms. Moreover, for purposes of the PLCAA, even if Plaintiffs' accusation were true, there is no causal connection between any false entry on the application and the incident in question. Whether Slide Fire possessed a Type 01 or 07 FFL is immaterial to the allegations in this Complaint, which means the predicate exception is inapplicable. 15 U.S.C. § 7903(5)(A)(iii) (a violation of a statute must be a proximate cause of the claims).

Additionally, while Plaintiffs allege that Slide Fire made misrepresentations to the ATF regarding how the product would be marketed to the general public, any such representation would have been superfluous because, as already discussed above, the ATF reviewed the product for purposes of assessing whether it was a regulated item under the federal laws. The marketing of the product was not considered by the ATF. Indeed, even in opposition, Plaintiffs do not cite to any statute that Slide Fire allegedly violated with regard to its submission to the ATF, or to any statute that limits the sale of a bump-stock to persons with disabilities. Without such a statute to rely upon, Plaintiffs cannot claim that Defendant violated the law by selling or marketing this product to the general public. Indeed, the ATF letter from June 2010, which is incorporated into Plaintiff's Complaint, establishes that the manufacturing and selling of bump-stocks was legal.[9]

In this case, even giving Plaintiffs' Complaint the most liberal reading, there are no facts pled to articulate a statutory violation causally related to this incident. As such, Plaintiffs cannot

---

[9] Plaintiffs' reference to the Department of Justice's Proposed Regulation (dated March 10, 2018) to "clarify" the NFA/GCA to define "machine gun" to include "bump stock type devices" is not relevant. Preliminarily, this is only a notice of a proposed regulation. Moreover, it is undisputed that, at all times relevant to this lawsuit, the manufacturing and selling of bump stocks was legal.

9

meet the predicate exception to the PLCAA, and their lawsuit should be entirely dismissed.

## C. EVEN IF THE PLCAA WERE INAPPLICABLE, PLAINTIFFS' CLAIMS STILL FAIL UNDER THE COMMON LAW.

### 1. The Sole Proximate Cause of the Alleged Injuries Was the Intentional and Criminal Actions of Paddock.

Paddock's intentional and murderous rampage constitutes a superseding and intervening act that breaks the chain of causation under these circumstances. See Van Cleave v. Kietz-Mill Minit Mart, 633 P.2d 1220 (Nev. 1981). In opposition, Plaintiffs concede that Defendant manufactured a lawful product and that the intentional conduct of Paddock caused the injuries in question. Thus, Paddock's criminal acts should be considered the sole proximate cause of the injuries. Moreover, Plaintiffs' position on "foreseeability" (*i.e.*, that criminal misuse of the product was foreseeable) would effectively make a manufacturer of any product (firearm, automobile, baseball bat, knife, *etc.*) an insurer responsible for the criminal misuse of its products. The concept of "foreseeability" should not be extended in a manner that creates such limitless liability.

### 2. Plaintiffs Have Not Pleaded a Claim for Negligence.

A manufacturer cannot be negligent when it legally manufactures a non-defective product; and, furthermore, it has no duty to control the criminal conduct of persons outside its control (Paddock). In opposition, Plaintiffs generally argue that Slide Fire "was in the best position to control the conduct [of Paddock] that gave rise to the injury alleged." (ECF No. 17 at p. 15.) The cases upon which Plaintiffs rely to support this argument, however, are factually distinguishable. In Scialabba v. Brandise Construction Co., 921 P.2d 928 (Nev. 1996), after an assault on a tenant occurred in an apartment complex that was still under construction, the court found that the construction company had a duty to ensure that the doors were properly locked. 921 P.2d at 931. In Dobson v. Spring Nextel Corp., 2014 U.S. Dist. LEXIS 16353, it was alleged that a cell phone company's GPS tracking device malfunctioned, which resulted in numerous individuals and police officers being directed to the plaintiff's residence by mistake. Id. at *2-3. In In re September 11 Litigation, 280 F. Supp. 2d 279 (S.D.N.Y. 2003), airlines were found to have owed a duty to properly inspect and screen passengers boarding flights. 280 F. Supp. 2d at 294. In that same case, however, the Southern District of New York distinguished other factual situations and

specifically noted that *"gun manufacturers d[o] not owe a duty to victims of gun violence for negligent marketing and distribution of firearms."* Id. (emphasis added). As such, these cases are not on point and there is no basis for a negligence claim under the facts pleaded here.

### 3. Plaintiffs Cannot Rely on Section 104.2314 of Nevada's Revised Statutes to State a Claim for Negligence *Per Se*.

Section 104.2314 of Nevada's Revised Statutes codifies the implied warranty of merchantability. Aside from the fact that Plaintiff's Complaint contains no mention of this statute, or of the implied warranty of merchantability, a negligence *per se* claim cannot be based on this statute. First, a claim for breach of warranty is a stand-alone claim and if Plaintiffs wanted to bring such a claim, they should have. Second, there are no factual allegations that the product at issue was not "fit for the ordinary purposes for which such goods are used." N.R.S. § 104.2314. Third, Plaintiffs cannot otherwise meet the elements for such a negligence *per se* claim (violation of a duty imposed by statute, the plaintiff was a member of the class of persons intended to be protected by the statute, and the harm is of the kind intended to be prevented by the statute). Henry A. v. Willden, 2013 U.S. Dist. LEXIS 26765, at *43-44 (D. Nev. Feb. 27, 2013).

### 4. The Negligent Infliction of Emotional Distress Claims are Not Legally Viable.

The District of Nevada has expressly held that "Nevada law does not provide a cause of action for plaintiffs to allege direct infliction of emotional distress from conduct that was merely negligent." Garcia v. Nev. Prop. 1, LLC, 2015 U.S. Dist. LEXIS 1606, at *6 (D. Nev. Jan. 6, 2015). As for bystander negligent infliction of emotional distress claims, Plaintiffs failed to plead that any of the *named* plaintiffs contemporaneously observed a victim being injured and that they were "closely related" to any such victim, which are required elements to state such a claim. Grotts v. Zahner, 989 P.2d 415, 416 (Nev. 1999). Therefore, all negligent infliction of emotional distress claims should be dismissed.

### 5. Plaintiffs Cannot Maintain a No-Defect Product Liability Claim.

Plaintiffs generally claim that the bump-stock is "defective" and argue that Nevada permits product liability lawsuits when products fail to perform as intended or otherwise malfunction. (ECF No. 17 at p. 21.) However, there is no allegation that the product was defective in design or

11

manufacture, and Plaintiffs allege that the product functioned as intended. Thus, there is no basis for a product liability claim under the law.

### 6. Plaintiffs' Public Nuisance Claim is Not Supportable.

Relying on a six-month-old case from the District of Nevada, which held that "in Nevada there is no private right of action for a public nuisance," Defendant argued that Plaintiffs' public nuisance cause of action should be dismissed. (See ECF No. 8 at p. 22 (citing Diamond X Ranch LLC v. Atl. Richfield Co., 2017 U.S. Dist. LEXIS 160845 (D. Nev. Sept. 29, 2017).) In opposition, Plaintiffs ignore this legal authority and, instead, cite to two Nevada cases, one from 1890 and the other 1929. Defendant respectfully contends that Plaintiffs' public nuisance claim should be dismissed in accordance with the relevant (and recent) legal authority.

## IV.   CONCLUSION

For the above reasons, as well as the arguments in the original motion, Defendant respectfully requests that Plaintiffs' Complaint be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction and/or pursuant to Rule 12(b)(6) for failure to state a claim.

Dated: April 20, 2018

**HOLLEY DRIGGS WALCH**
**FINE WRAY PURZEY & THOMPSON**


By: */s/ F. Thomas Edwards*
F. THOMAS EDWARDS, ESQ. (NBN 09549)
Email:  tedwards@nevadafirm.com
JAMES D. BOYLE, ESQ. (NBN 08384)
Email:  jboyle@nevadafirm.com
400 South Fourth Street, Suite 300
Las Vegas, Nevada 89101
Phone:  702/791-0308
Fax:    702/791-1912

**PISCIOTTI MALSCH PC**
JEFFREY MALSCH, ESQ. (Pro Hac Vice)
Email:  jmalsch@pmlegalfirm.com
DANNY C. LALLIS, ESQ. (Pro Hac Vice)
Email:  dlallis@pmlegalfirm.com
30 Columbia Turnpike, Suite 205
Florham Park, New Jersey 07932
Phone:  973/245-8100
Fax:    973/245-8101
***Attorneys for Defendant Slide Fire Solutions, LP***

12

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that on the 20th day of April, 2018, I caused the document entitled **DEFENDANT SLIDE FIRE SOLUTIONS, LP'S REPLY IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULES 12(B)(2) AND 12(B)(6)**, to be served as follows:

| Attorneys of Record | Parties Represented | Method of Service |
|---|---|---|
| Robert T. Eglet, Esq.<br>Robert M. Adams, Esq.<br>Aaron D. Ford, Esq.<br>Erica D. Entsminger, Esq.<br>EGLET PRINCE<br>400 South Seventh Street, Suite 400<br>Las Vegas, Nevada 89101 | Plaintiffs Devon Prescott, Brooke Freeman and Tasaneeporn Upright, and all those similarly situated | ☐ Personal Service<br>■ Email/E-File<br>☐ Fax Service<br>☐ Mail Service |
| Jonathan E. Lowy, Esq.<br>BRADY CENTER TO PREVENT GUN VIOLENCE<br>840 1st Street, NE #400<br>Washington, D.C. 20002 | Plaintiffs Devon Prescott, Brooke Freeman and Tasaneeporn Upright, and all those similarly situated | ☐ Personal Service<br>■ Email/E-File<br>☐ Fax Service<br>☐ Mail Service |

/s/ Norma S. Moseley
An employee of Holley Driggs Walch
Fine Wray Puzey & Thompson

13

12459-01.001/2034007.docx]