# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

DEVON PRESCOTT, individually and on
behalf of all those similarly situated, *et al.*,

Plaintiffs,

vs.

SLIDE FIRE SOLUTIONS, LP,

Defendant.

Case No.: 2:18-cv-00296-GMN-GWF

**ORDER**

Pending before the Court is the Motion to Dismiss, (ECF No. 8), filed by Defendant Slide Fire Solutions, LP ("Slide Fire"). Plaintiffs Devon Prescott, Brooke Freeman, and Tasaneeporn Upright (collectively "Plaintiffs") filed a Response, (ECF No. 17), and Slide Fire filed a Reply, (ECF No. 22). For the reasons discussed herein, Slide Fire's Motion to Dismiss is **GRANTED**.

## I. BACKGROUND

This case arises from the tragic mass shooting that occurred at the Route 91 Harvest Music Festival (the "Festival") on October 1, 2017, in Las Vegas, Nevada. Plaintiffs were attendees of the Festival on that evening when Stephen Paddock ("Paddock") opened fire on the concert goers from the thirty-second floor of his hotel room at the Mandalay Bay. (Compl. ¶¶ 12, 38, ECF No. 1-2). In approximately eleven minutes, Paddock killed fifty-nine Festival attendees and injured hundreds more. (*Id.* ¶ 40). Paddock's rifles were equipped with sliding rifle stocks, commonly known as "bump stocks," which permit "certain semi-automatic weapons to fire at a rate comparable or equivalent to a fully automatic weapon." (*Id.* ¶¶ 40, 51).

Slide Fire is the designer, manufacturer, marketer, and seller of bump stocks, and holds itself out as the "sole patent holder of bump fire technology." (*Id.* ¶¶ 43, 46). According to the Complaint, "Slide Fire's bump stocks are purportedly designed for the disabled and intended to assist persons whose hands have limited mobility using firearms. However, statements made by Slide Fire inventor, Jeremiah Cottle, and [Slide Fire's] marketing," suggest that bump stocks are intended for consumers who seek a firearm that mimics a fully automatic weapon. (*Id.* ¶¶ 53, 54–58).

Plaintiffs filed their class action Complaint on October 6, 2017, bringing the following causes of action against Slide Fire: (1) negligence; (2) negligent infliction of emotional distress under a theory of bystander liability; (3) negligent infliction of emotional distress under a theory of direct liability; (4) negligent products liability; (5) strict products liability; and (6) public nuisance. (*Id.* ¶¶ 78–159). On February 23, 2018, Slide Fire filed the instant Motion to Dismiss pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Mot. to Dismiss ("MTD") 2:1–3, ECF No. 8).

## II.  **LEGAL STANDARD**

### A.  **Rule 12(b)(2)**

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Once a defendant raises the defense, the burden then falls on the plaintiff to prove sufficient facts to establish that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). A plaintiff can carry this burden only by presenting sufficient evidence to establish that (1) personal jurisdiction is proper under the laws of the state where it is asserted; and (2) the exercise of jurisdiction does not violate the defendant's right to due process secured by the United States Constitution. *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995); *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404–05 (9th Cir. 1994).

When no federal statute governs personal jurisdiction, the district court applies the law of the forum state. *See Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Nevada has authorized its courts to exercise jurisdiction over persons "on any basis not inconsistent with . . . the Constitution of the United States." Nev. Rev. Stat. § 14.065. Thus, the Due Process Clause of the Fourteenth Amendment is the relevant constraint on Nevada's authority to bind a nonresident defendant to a judgment of its courts. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). The Due Process Clause requires that the nonresident must have "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make "a *prima facie* showing of jurisdictional facts." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (quoting *Doe v. Unocal*, 248 F.3d 915, 922 (9th Cir. 2001)). When analyzing such a motion to dismiss, "the court resolves all disputed facts in favor of the plaintiff." *Id.*

## B. Rule 12(b)(6)

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  "However, material which is properly submitted as part of the complaint may be considered." *Id.*  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III.   DISCUSSION

Slide Fire moves to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2), asserting "there is no basis for general or specific personal jurisdiction because Slide Fire cannot be considered 'at home' in Nevada and Plaintiffs' purported causes of action do not arise from Slide Fire's connections to the forum." (MTD 3:16–18, ECF No. 8).

Slide Fire further seeks dismissal under Rule 12(b)(6) on the grounds that the Protection of Lawful Commerce in Arms Act ("PLCAA") precludes manufacturers of component parts of firearms from liability based upon intentional criminal actions of third parties. (*Id.* 3:18–24). Further, even if the PLCAA were inapplicable, Slide Fire avers that Plaintiffs' causes of action fail under Nevada common law. (*Id.* 3:24–25).

### A. Personal Jurisdiction

Personal jurisdiction is limited under the Constitution to defendants that have "certain minimum contacts with [a state] such that the maintenance of a suit does not offend 'traditional notions of fair play and substantial justice.'" *Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1485 (9th Cir. 1993) (quoting *Int'l Shoe Co.*, 326 U.S. at 316). Moreover, the contacts must arise out of relationships that the "defendant himself" created with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

A court determines sufficient minimum contacts either through specific jurisdiction, where the defendant's specific interaction with the forum relating to the cause of action gives rise to the contacts, or through general jurisdiction, where the contacts with the forum are systematic and continuous, warranting the exercise of personal jurisdiction. *See, e.g.*, *Int'l Shoe Co.*, 326 U.S. at 316. If such contacts are established, a court must still determine that exercising personal jurisdiction would not offend the "traditional notions of fair play and substantial justice." *Id.*

### 1. General Jurisdiction

General jurisdiction allows "a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (quoting *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 801 (9th Cir. 2004)). To establish general personal jurisdiction, the plaintiff must demonstrate the defendant has sufficient contacts to "constitute the kind of continuous and systematic

general business contacts that 'approximate physical presence.'" *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1124 (9th Cir. 2002). "The paradigmatic locations where general jurisdiction is appropriate over a corporation are its place of incorporation and its principal place of business." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). "Only in an 'exceptional case' will general jurisdiction be available anywhere else." *Id.* (quoting *Martinez*, 764 F.3d at 1070).

Here, Slide Fire is a limited partnership with its principal place of business in Texas, and each partner of Slide Fire is a Texas citizen. (*See* Compl. ¶ 25); (Pet. for Removal ¶ 8, ECF No. 1). Plaintiffs' argument is premised upon Slide Fire's "marketing, soliciting, and/or otherwise advertising its products for sale in Nevada," as well as Slide Fire's online activity, from which it has "generated millions of dollars in revenue from its sales of bump stocks," with Nevadans, and Paddock in particular, contributing a "portion of that financial support." (*Id.* 6:20–7:3). These asserted contacts, however, are insufficient to establish that Slide Fire is essentially at home in Nevada. It is axiomatic that a business' advertising and sales directed towards consumers in a given forum cannot alone support general jurisdiction. *See, e.g.*, *Martinez,* 764 F.3d at 1070 (rejecting the argument that general jurisdiction is proper "whenever a corporation 'engages in a substantial, continuous, and systematic course of business' in a state") (quoting *Daimler AG*, 571 U.S. at 137–38). Moreover, "operation of an interactive website—even a 'highly interactive' website—does not confer general jurisdiction." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1226 (9th Cir. 2011) (internal citation omitted). The Court, accordingly, finds these alleged contacts do not support general jurisdiction over Slide Fire.

### 2. Specific Jurisdiction

Specific personal jurisdiction is established if a plaintiff can show: (1) the defendant has performed some act or transaction within the forum or purposefully availed himself of the

privileges of conducting activities within the forum; (2) the plaintiff's claim arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction over the defendant is reasonable. *Schwarzenegger*, 374 F.3d at 801–02. "The plaintiff bears the burden of satisfying the first two prongs of the test," and then, if the plaintiff successfully does so, the burden "shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* at 802 (quoting *Burger King Corp.*, 471 U.S. at 476–78).

### a. *Purposeful Availment*

In the Ninth Circuit, the test used to establish the first prong of the specific jurisdiction analysis depends on the nature of the underlying claim. *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007). In general, a "purposeful availment analysis is most often used in suits sounding in contract" and a "purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger,* 374 F.3d at 802. However, where the underlying claims involve products liability or negligence rather than intentional torts, the purposeful availment analysis controls. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011); *Holland Am. Line Inc.*, 485 F.3d at 460. Here, because Plaintiffs bring products liability and negligence claims, the purposeful availment analysis applies.

To establish purposeful availment, a plaintiff must allege conduct "indicat[ing] an intent or purpose to serve the market in the forum State." *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 112 (1987). "The placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state." *Holland Am. Line Inc.*, 485 F.3d at 459 (citing *Asahi Metal Indus. Co., Ltd*, 480 U.S. at 112). "Even a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state." *Id.*

Plaintiffs argue that Slide Fire's purposeful availment is evidenced by "its online storefront for selling its products to Nevadans, its sale of bump stocks through Nevada retailers, its regular promotion at trade shows in Nevada, and the attendance of its officers at such trade shows." (Resp. 5:5–8, ECF No. 17); (*see also* Compl. ¶ 35, 44, 60). The Court addresses these arguments in turn.

With respect to an entity's online presence, the Ninth Circuit has adopted a "sliding scale analysis that looks to how interactive an Internet website is for purposes of determining its jurisdictional effect." *Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008). Applying this approach, courts in this Circuit "recognize[] a distinction between passive websites, which simply display information, and interactive websites, which allow customers to exchange information with a business." *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997). Where a defendant's website is either passive or falls somewhere in the middle of the sliding scale, Courts require "something more" to establish specific jurisdiction. *Desert Rock Entm't II LLC v. D. Hotel & Suites, Inc.*, No. 2:15-cv-01417-MMD-VCF, 2016 WL 1732724, at *3 (D. Nev. May 2, 2016) (quoting *Cybersell*, 130 F.3d at 418).

Plaintiffs' allegations concerning the nature of Slide Fire's website suggests that it falls somewhere in the middle of the sliding scale, albeit towards the interactive side. Plaintiffs allege Slide Fire's website sells, markets, solicits, or otherwise advertises its products for sale to Nevada residents, and contains a "locate a dealer" function which enables Nevadans to identify local retailers who sell Slide Fire's products. (*Id.* 4:24–5:1); (*see also* Compl. 43, 44, 60). These assertions indicate that Slide Fire's website is commercial in nature but perhaps falls short of "'continuously and deliberately exploit[ing]' the Nevada market." *Desert Rock Entm't II LLC*, 2016 WL 1732724, at *3 (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011)). The Court need not determine whether this, standing alone,

is sufficient because Slide Fire's other asserted contacts with Nevada—in conjunction with its website—establish purposeful availment.

Plaintiffs also point to Slide Fire's attendance and participation at two firearm trade shows in Las Vegas where it promoted, marketed, and sold "its bump fire products to vendors, buyers and resellers in Nevada." (Resp. 4:20–23); (*see also* SHOT Show Planner, Ex. 2 to Resp., ECF Nos. 17-2). "The Ninth Circuit has held, 'that a non-resident defendant's act of soliciting business in the forum state will generally be considered purposeful availment if that solicitation results in contract negotiations or the transaction of business.'" *SDS Korea Co., Ltd. v. SDS USA, Inc.*, 732 F. Supp. 1062, 1080 (S.D. Cal. 2010) (quoting *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir. 1990)). Furthermore, "[n]umerous courts have found defendants to have purposefully availed themselves by attending trade shows within a forum state." *Robert Bosch LLC v. ADM 21 Co., Ltd.*, No. 2:10-cv-01930-RLH-LRL, 2011 WL 2619335, at *4 (D. Nev. July 1, 2011); *see, e.g.*, *Elan Microelectronics Corp. v. Pixcir Microelectronics Co. Ltd.*, No. 2:10-cv-00014-GMN-PAL, 2012 WL 523695, at *6 (D. Nev. Feb. 16, 2012); *89908, Inc. v. E-Z Load Gate, Inc.*, No. 2:08-cv-1515-LDG-PAL, 2009 WL 10693543, at *2 (D. Nev. June 9, 2009); *see also Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1297–98 (Fed. Cir. 2009).

Slide Fire does not dispute that it attended and promoted its product line at these trade shows but rather argues under the second prong of specific jurisdiction, discussed *infra*, that Plaintiffs' causes of action are unrelated to these contacts because "no consumer sales are conducted at [the trade shows] and only industry members are permitted to access the event." (Reply 4:21–27). Even if, however, consumers are not permitted access, Slide Fire's participation as an exhibitor indicates an intent to transact business in Nevada, even if the scope of those transactions are limited to commercial buyers or sellers. In this regard, the Court finds it significant that Slide Fire does not rebut, deny, or otherwise qualify the extent to which it

conducts commercial activity at the trade shows. (*See* MTD 8:14–9:15); (Reply 4:6–5:16); (*see also* Compl. ¶¶ 33, 44). *Cf. Southport Lane Equity II, LLC v. Downey*, 177 F. Supp. 3d 1286, 1296–1300 (D. Nev. 2016) (holding no personal jurisdiction exists where the defendant submitted a declaration establishing, *inter alia*, that he attended a Las Vegas trade show "as a visitor and not an exhibitor.").

Additionally, Plaintiffs' Complaint alleges that Slide Fire's bump stocks are available for purchase at retailers in Nevada. (Compl. ¶ 44). It is well established that "the distribution in the forum state of goods originating elsewhere," constitutes evidence that a "defendant purposefully directed his conduct toward a forum state." *Schwarzenegger*, 374 F.3d at 803. *See, e.g., Gonzalez v. Palo Alto Labs, Inc.*, No. C 10-2456 MEJ, 2010 WL 3930440, at *5 (N.D. Cal. Oct. 6, 2010) ("[A]s it appears that Defendant has marketed and continues to market the Paravol product through numerous retail outlets in California . . . it has delivered its products into the stream of commerce with the expectation that they will be purchased by consumers in [the forum].""). As Slide Fire does not refute this allegation, the Court will deem this as true and as providing additional support for the analysis discussed *supra*. *See Schwarzenegger*, 374 F.3d at 800 ("Although the plaintiff cannot simply rest on the bare allegations of its complaint . . . uncontroverted allegations in the complaint must be taken as true.") (internal citation and quotation marks omitted).

These asserted contacts, taken together, are sufficient for the Court to reasonably infer that Slide Fire's contacts with Nevada constitute purposeful availment.[1] *See Fiore v. Walden*, 688 F.3d 558, 575 (9th Cir. 2012) ("We will draw reasonable inferences from the complaint in favor of the plaintiff where personal jurisdiction is at stake, and will assume credibility."), *rev'd*

---

[1] Should Slide Fire seek to demonstrate the limited nature of its contacts with Nevada, Slide Fire may raise the issue in future proceedings providing the defense is preserved. *See S.E.C v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007) ("[W]here a party has filed a timely and unambiguous objection to the court's jurisdiction, we have concluded that the party has not consented to jurisdiction. . . . even if the party has preserved its own options by simultaneously asserting whatever claims or defenses it has against the plaintiff.").

*on other grounds*, *Walden v. Fiore*, 571 U.S. 277 (2014).  The Court thus turns to whether Slide Fire's contacts with Nevada are related to Plaintiffs' causes of action.

### b.  *Relatedness of Contacts with the Forum*

Plaintiffs argue that their claims directly relate to Slide Fire's contacts with Nevada because Slide Fire, through its website, marketing, and attendance at trade shows in Nevada, relied upon misrepresentations in promoting its bump stocks. (*See* Resp. 5:21–6:8).  The Ninth Circuit has adopted a "but for" test for determining whether a plaintiff's cause of action arises out of a defendant's forum-related activities. *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013).  "[A] lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action." *Id.*

Plaintiffs allege that "Slide Fire gained government approval to sell bump stocks without restriction by representing them as devices to assist persons 'whose hands have limited mobility.'" (*Id.* 5:22–24) (citing Compl. ¶¶ 12, 58, 78–89).  Plaintiffs continue that these representations are inconsistent with their marketing "which emphasizes that this product was intended for people—who 'love full auto'—to convert a legal firearm into an illegal machinegun absent the prohibitive price tag and requisite background check." (*Id.* 5:25–6:1) (citing Compl. ¶¶ 54–55).  According to Plaintiffs, "Slide Fire made similar misrepresentations when attending and participating in trade shows in Nevada and otherwise promoting, marketing, and selling bump stocks in Nevada." (*Id.* 6:2–8); (Compl. ¶¶ 53–58).

Slide Fire argues that its attendance at the trade shows cannot establish relatedness because there is no allegation that "Mr. Paddock attended this trade show, or that any of Slide Fire's products allegedly used during the incident were sold at the show." (Reply 4:21–23).  Therefore, according to Slide Fire, Plaintiffs cannot establish that its claims arise out of Slide Fire's contacts with Nevada. (*Id.* 4:25–27).  The Court disagrees.

Plaintiffs' allegations in support of its six causes of action are not as narrow as Slide Fire suggests. The first three claims incorporate allegations that Slide fire failed to adequately and properly market, sell, advertise, and promote the bump stock as a device to help individuals with limited mobility and negligently marketed, promoted, and sold the bumps stocks as an inexpensive device to circumvent federal law. (*See* Compl. ¶¶ 80, 92, 108). The fourth cause of action contains allegations that Slide Fire failed to exercise the proper standard of care in its manufacture, design, sales, and distribution to ensure it was safe for its intended and reasonably foreseeable use. (*Id.* ¶ 123, 124). The fifth cause of action provides that Slide Fire "knew and/or should have know[n] that by marketing, promoting, distributing, selling and/or advertising its defense product as one to circumvent federal law, it was foreseeable . . . that [] individuals use such a device not for its intended purpose." (*Id.* ¶ 139). The sixth cause of action states that Slide Fire's negligent, reckless, or intentional manufacture, sale, or marketing ensured "a steady flow of dangerous products in large quantities to persons with criminal purposes. (*Id.* ¶ 149).

In summary, at the root of each cause of action is the manner in which Slide Fire manufactured, promoted, distributed, or advertised its bump stocks, and the way in which the same created a foreseeable risk of the October 1 shooting. Because Plaintiffs assert that Slide Fire marketed, promoted, distributed, or sold bump stocks at the trade shows in Las Vegas, through its online sales, and marketing directed at Nevadans, it follows that Slide Fire's contacts with Nevada are causally related to Plaintiffs' claims. The Complaint further ties Slide Fire's promotional activities to Paddock with the allegation that "Slide Fire designed, manufactured, marketed, distributed, and/or sold one or more of the bump stocks used by Paddock during the subject incident," and that Slide Fire holds itself out as the "sole patent holder of bump fire technology." (*Id.* ¶¶ 41, 46). Drawing all reasonable inferences in favor of

Plaintiffs, the Court finds that Slide Fire's connections to Nevada are causally related to Plaintiffs' causes of action.

### c. *Reasonableness*

As Plaintiffs have sufficiently established the first two prongs of the specific jurisdiction analysis, the burden now "shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 800 (quoting *Burger King Corp.*, 471 U.S. at 477–78). Ninth Circuit courts generally consider the following seven factors in assessing the reasonableness of the exercise of jurisdiction:

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

*In re W. States Wholesale Nat. Gas Litig.*, 715 F.3d at 745.

Slide Fire, however, fails to advance any argument on this prong of the personal jurisdiction analysis. (*See* MTD 8:14–9:15); (Reply 4:6–5:16). Even if Slide Fire were to dispute this point, the Court would nonetheless find that jurisdiction is reasonable given Plaintiffs' and Nevada's robust interests in adjudicating the instant case in this forum. Moreover, Plaintiffs' uncontroverted allegation that Slide Fire recently attended trade shows in Las Vegas indicates that "travel itself is not unduly burdensome." *See Synthes*, 563 F.3d at 1299. Therefore, the Court concludes that its exercise of jurisdiction over Slide Fire is reasonable.

In light of the foregoing, the Court finds that it has personal jurisdiction over Slide Fire. Accordingly, Slide Fire's Motion to Dismiss, to the extent it is premised upon personal

jurisdiction, is denied.  Next, the Court turns to Slide Fire's argument that the Protection of Lawful Commerce in Arms Act ("PLCAA") requires dismissal of Plaintiffs' Complaint.

## B.  Protection of Lawful Commerce in Arms Act

Congress enacted the PLCAA upon finding that manufacturers and sellers of firearms "are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products . . .  that function as designed and intended." *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1135 (9th Cir. 2009) (quoting 15 U.S.C. § 7901(a)(5)).  To this end, the PLCAA provides that federal courts must "immediately dismiss[]" a "qualified civil liability action." 15 U.S.C. § 7902(b).  A qualified civil liability action encompasses, *inter alia*, civil actions "brought by any person against a manufacturer or seller of a qualified product . . . for damages . . . or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party, but shall not include [specified enumerated exceptions.]" *Id.* § 7903(5)(A).

Here, the instant dispute centers upon whether Slide Fire's bump stock falls within the definition of a "qualified product" under the PLCAA.  Because the PLCAA evinces Congress' intent to "preempt common-law claims, such as general tort theories of liability," a finding that a bump stock is a qualified product would compel dismissal of the instant suit unless an exception to the PLCAA applies. *Illeto*, 565 F.3d at 1135.

### 1.  Whether Bump Stocks are Qualified Products under the PLCAA

The PLCAA defines a qualified product as "a firearm . . . or a component part of a firearm or ammunition . . . ." 15 U.S.C. §7903(4).  The question before the Court is whether the bump stock is a component part of a firearm, and thus a qualified product under the PLCAA. Alternatively, if a bump stock is a mere firearm accessory, the PLCAA does not apply and Slide Fire is not shielded from liability.

Because the PLCAA does not define "component part," the Court must employ the traditional rules of statutory interpretation. *United States v. Laursen*, 847 F.3d 1026, 1032 (9th Cir. 2017). "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 175–76 (2009). In the absence of any statutory definition, a court's interpretation "commenc[es] with the plain and common meaning of the word derived from dictionary definitions." *Laursen*, 847 F.3d at 1032; *United States v. Lettiere*, 640 F.3d 1271, 1274 (9th Cir. 2011) ("Only in the absence of a statutory definition does this court normally look to the ordinary meaning or dictionary definitions of a term.").

Here, the word "component" is defined as a "constituent part," and "constituent" means "an essential part," or "serving to form, compose, or make up a unit or whole." Merriam-Webster's Collegiate Dictionary 255, 267 (11th ed. 2003). "Part" means "one of the often indefinite or unequal subdivisions into which something is or is regarded as divided and which together constitute the whole," or "an essential portion or integral element." *Id.* at 902–03. An "accessory," in contrast, is "a thing of secondary or subordinate importance," or "an object or device that is not essential in itself but adding to the beauty, convenience, or effectiveness of something else." *Id.* at 7.

Slide Fire argues that bump stocks are component parts of firearms because they are a type of rifle stock and rifle stocks are necessary for a rifle to be fired from the shoulder. (MTD 15:10–15). In support, Slide Fire cites to a Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Guidebook ("ATF Guidebook")[2] which identifies a stock as a component part of a rifle; a June 10, 2010 letter from the ATF to Slide Fire classifying the bump stock as a

---

[2] The Court takes judicial notice of the ATF Guidebook as it is a publicly available governmental document. *See Arizona Libertarian Party v. Reagan*, 798 F.3d 723, 727 n.3 (9th Cir. 2015); *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033–34 (C.D. Cal. 2015).

firearm part (the "ATF Letter"); and case law in which courts label stocks as component parts of firearms. (*Id.* 14:20–16:10). Plaintiffs counter that bump stocks are accessories rather than component parts because they are added after a consumer purchases a fully functional rifle, require post-purchase installation, and are advertised as a way to "enhance" or "overhaul" a rifle in Slide Fire's promotional catalog ("Slide Fire Catalog").[3] (*See* Resp. 9:13–10:2). Plaintiffs also cite to cases in which courts have held that devices such as cable locks, sights, and compensators are accessories rather than component parts of firearms, as well as federal tax regulations that Plaintiffs suggest define "accessories" to encompass bump stocks. (*Id.* 10:3–11:7). For the reasons discussed below, the Court finds that bump stocks are component parts of firearms and are, accordingly, qualified products under the PLCAA.

A bump stock consists of a block that replaces a rifle's pistol grip and a hollow shoulder stock that is attached to the rear of an AR-15-type rifle. (*See* ATF Letter, Ex. C to MTD, ECF No. 8-4). The hollow shoulder stock replaces a rifle's existing stock and enhances its capabilities by incorporating a "sliding-stock type buffer-tube assembly." (*Id.*); (*see also* Slide Fire Catalog at 21–29, 32–37, Ex. B to MTD, ECF No. 8-3). Bump stocks require installation and come with a set of assembly instructions. (*See* ATF Letter, Ex. C to MTD). "In order to use the installed device, the shooter must apply constant forward pressure with the non-shooting hand and constant rearward pressure with the shooting hand." (*See id.*). This pressure, paired with a rifle's recoil, permits the trigger to rapidly reset as the bump stock slides back and

---

[3] The Court considers the ATF Letter and Slide Fire Catalog, (Exs. B, C to MTD, ECF Nos. 8-3, 8-4), pursuant to the doctrine of incorporation by reference. Under this doctrine, a court may take account of documents on which the "'complaint necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citation omitted).

Here, Plaintiffs' Complaint explicitly refers to the contents of these documents, Slide Fire has attached them as Exhibits to their Motion, Plaintiffs' claims for relief explicitly hinge on their contents, and no party disputes their authenticity. (*See* Compl. ¶¶ 12–14 n.1–3, 17 n.4, 52 n.7); (Slide Fire Catalog, Ex. B to MTD, ECF No. 8-3); (ATF Letter, Ex. C to MTD, ECF No. 8-4).

forth. (*Id.*); (Slide Fire Catalog at 4–5, Ex. B to MTD). This mechanism allows a user to discharge ammunition rounds in rapid succession, or "bump fire." (*See* ATF Letter); (*see also* MTD 2:22–24) ("'[B]ump-firing' requires the trigger finger to remain steady while the combination of the rifle's recoil and pulling of the rifle forward causes the trigger to be pressed.").

Preliminarily, the Court finds, and the parties do not dispute, that a "stock" is a component part of a rifle. (MTD 14:20–16:10); (Resp. 11:9–11). A stock is an integral component of a rifle as it permits the firearm to be fired from the shoulder. (*See* ATF Guidebook at 16, Ex. F to MTD, ECF No. 8-7) (illustrating the "primary characteristics exhibited in the rifle category" including a stock, trigger, barrel, and bore); *see also* Merriam-Webster Collegiate Dictionary 1072, 1227 (11th ed. 2003) (defining "rifle" and "stock" to mean "a shoulder weapon with a rifled bore," and "the wooden part by which a shoulder arm is held during firing," respectively). A bump stock is a modified type of rifle stock that replaces the existing stock. (*See* ATF Letter, Ex. C to MTD); (Slide Fire Catalog at 20–29, Ex. B to MTD). Thus, it follows that upon installation, the bump stock is a rifle's operative stock and, therefore, becomes an integral part of a rifle.

That bump stocks enhance a rifle's operation and are installed after purchase by an end user do not negate the fact that bump stocks are substituted in for the original stock rendering them essential units. On this point, Slide Fire persuasively analogizes bump stocks to snow tires on an automobile: "[I]f a person were to replace their low-profile tires on an automobile with snow tires, Plaintiffs would argue that the snow tires are not a component part of the vehicle, but simply an accessory because they are not the original tires." (Reply 6:16–19). Just as tires are component parts of automobiles that can be replaced after market with enhanced tires, a rifle's stock can be replaced after market with a different, modified stock in place of the

original.[4]  In short, after-market installation, as well as after-market enhancement, do not

necessarily convert a component into an accessory.  For this reason, the Court finds that Slide

Fire's marketing materials, depicting bump stocks as ways to overhaul or enhance an existing

rifle, is of limited probative value to the instant inquiry. (*See* Resp. 9:22–10:2); (Slide Fire

Catalog, Ex. B to MTD).

Plaintiffs additionally argue that case law interpreting the PLCAA supports its

contention that bump stocks are firearm accessories. (Resp. 10:4–18).  In *Sambrano v. Savage

Arms, Inc.*, the New Mexico Court of Appeals held that a "cable gun lock," an attachable cord

enabling consumers to secure firearms, is an accessory. 338 P.3d 103, 105 (N.M. App. 2014).

In *Auto-Ordnance Corp. v. United States*, the court found that "sights and compensators" are

accessories because "the carbine will fire without the sights or compensator." 822 F.2d 1566,

1570–72 (Fed. Cir. 1987).  Unlike cable gun locks, sights, and compensators—without which a

rifle is fully functionally—a rifle cannot operate as a rifle without a stock.  As noted *supra*, the

Court finds significant the fact that bump stocks replace existing stocks rendering them

component parts, even if they are after-market enhancements.  These cases, accordingly, are

distinguishable on this basis.

Plaintiffs' reliance on federal tax law is likewise unavailing. (Resp. 10:19–11:7).

Plaintiffs point to excise tax regulations on firearm manufacturers which define component

parts to include items that "would ordinarily be attached to a firearm during use and, in the

---

[4] At least one other court has rejected the argument that bump stocks are accessories by using a similar analogy:

> A car has an engine. . . . An engine cannot work without spark plugs.  Spark plugs are vitally necessary for the process of combustion.  It is beyond argument that spark plugs are a component of an engine.  Under [the defendant's] logic, however, spark plugs are mere accessories.  A person can go to a local auto store and buy replacement spark plugs.  In fact, a person can buy spark plugs that create more horse power in an engine.  These spark plugs can then be installed by the end user of the car. . . . Regardless of who installs spark plugs, they are components of an engine.  Similarly, a bump-stock, regardless of who installs it, is a component of a rifle.

*See Ohioans for Concealed Carry v. City of Columbus*, Franklin C.P. No. 18CV–005216, at *10 (July 12, 2018).

ordinary course of trade, are packaged with the firearm at the time of sale by the manufacturer or importer." (*Id.* 10:19–23) (citing 27 C.F.R. § 53.61(b)(2)).  The regulations further provide that nontaxable "accessories" include "tools" and "optional items purchased by the customer at the time of retail sale." 27 C.F.R § 53.61(b)(5)(iv).  Based on this authority, Plaintiffs contend that because bump stocks are not included at the time of sale and require a conversion kit for installation, they would be regulated as accessories. (Resp. 10:23–11:7).  However, the same regulation also states that "[c]omponent parts also include any part provided with the firearm that would affect the tax status of the firearm, *such as an attachable shoulder stock*." *See* 27 C.F.R. § 53.61(b)(5)(ii) (emphasis added).  Indeed, because the Court finds that a bump stock constitutes a type of replacement shoulder stock, this regulation is not inconsistent with the Court's holding that bump stocks are component parts of a firearm.  This is the case whether or not the replacement stock constitutes an after-market enhancement or modification.

Based on the foregoing, the Court concludes that bump stocks are component parts of a rifle and, therefore, constitute qualified products under the PLCAA.  In light of this finding, the PLCAA mandates that the Court dismiss the action if none of the statute's specified exceptions apply. *Ileto v. Glock*, 565 F.3d 1126, 1132 (9th Cir. 2009).

## 2.  The PLCAA's Predicate Exception

Plaintiffs assert that the PLCAA's third exception, § 7903(5)(A)(iii), applies to the instant suit.  Under that exception, the PLCAA does not preempt

> an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought . . . .

15 U.S.C. § 7903(5)(A)(iii).

This exception applies to, *inter alia*, "any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required

to be kept under Federal or State law with respect to the qualified product . . . ." *Id.* § 7903(5)(A)(iii)(I). As the PLCAA does not confer a private right of action, *see id.* § 7903(5)(C), this "exception has come to be known as the 'predicate exception,' because a plaintiff . . . must allege a knowing violation of a 'predicate statute.'" *Ileto*, 565 F.3d at 1132. The Ninth Circuit has interpreted the predicate exception to apply solely to "statutes that regulate manufacturing, importing, selling, marketing, and using firearms or that regulate the firearms industry." *Id.* at 1136.

Here, Plaintiffs argue in favor of two predicate statutory violations: (1) Slide Fire's alleged false entry on its application for a federal firearms license ("FFL"); and (2) Slide Fire's misrepresentations to the ATF about bump stocks being intended for persons with limited mobility. (Resp. 12:12–14) (citing Compl. ¶¶ 15–16, 53). Preliminarily, the Court agrees with Slide Fire that because its asserted false entry on its FFL is not alleged in the Complaint, the Court is without authority to consider it.[5]

With respect to the second alleged predicate violation, Plaintiffs aver that Slide Fire informed the ATF that the bump stock was intended to assist "persons whose hands have limited mobility," in order to legally sell the product under federal law. (*See* Compl. ¶ 13). The statute Plaintiffs rely upon is 18 U.S.C. § 1001(a)(2), which "prohibits giving false information in any matter within the jurisdiction of a department or agency of the United States." *United States v. Camper*, 384 F.3d 1073, 1075 (9th Cir. 2004); *see also* 18 U.S.C. § 924 (providing penalties for knowingly making "any false statement or representation with respect to the information required by [Chapter 44 of Title 18]."). The ATF Letter that Plaintiffs cite concerns whether the bump stock shall be regulated as a firearm or a firearm part. (*See* ATF Letter, Ex. C to MTD). The letter describes how a bump stock functions and ends

---

[5] As discussed *infra*, Plaintiffs may include this allegation in an amended complaint to establish that an exception to the PLCAA applies to the instant case.

with the ATF's finding that "the 'bump-stock' is a firearm part and is not regulated as a firearm under [the] Gun Control Act or the National Firearms Act." (*Id.*). While the letter alludes to Slide Fire's alleged misrepresentation, it is not clear that this influenced the ATF's conclusion. On this point, Plaintiffs have not come forward with any authority suggesting that a device's utility to those with disabilities impacts whether that device constitutes a firearm or firearm part. Significantly, if a device's marketability to those with disabilities was not a factor in the ATF's finding, then it follows that Plaintiffs cannot show that Slide Fire's misrepresentation proximately caused the injuries that are the subject of this case. *See* 15 U.S.C. § 7903(5)(A)(iii) (requiring a defendant's alleged predicate violation be a "proximate cause of the harm for which relief is sought"). Therefore, at this juncture, the Court is not satisfied that Slide Fire's alleged misrepresentation to the ATF gives rise to a predicate statutory violation under the PLCAA.

Accordingly, Plaintiffs have failed to demonstrate that the PLCAA does not shield Slide Fire from liability. Moreover, Plaintiffs have not pointed to a statutory violation that would permit the Court to find that an exception to the PLCAA applies. The Court, therefore, grants Slide Fire's Motion to Dismiss without prejudice.

## IV.  LEAVE TO AMEND

Rule 15(a)(2) of the Federal Rules of Civil Procedure permits courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has "repeatedly held that 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

The Court finds that Plaintiffs may be able to plead additional facts to establish that an exception to the PLCAA applies to the instant case. Therefore, the Court grants Plaintiffs leave

to file an amended complaint. *See Corporan v. Wal-Mart Stores East, LP*, No. 16-2305-JWL, 2016 WL 3881341, at *3 (D. Kan. July 18, 2016) (permitting the plaintiff to file an amended complaint to adequately allege an exception to the PLCAA).  The second amended complaint, if Plaintiffs choose to file one, must be filed within twenty-one (21) days of this Order.

## V.      CONCLUSION

**IT IS HEREBY ORDERED** that Slide Fire's Motion to Dismiss, (ECF No. 8), is **GRANTED**.  Plaintiffs' Complaint is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that Plaintiffs shall, if they elect to do so, file a second amended complaint within twenty-one (21) days of this Order.

**DATED** this __17__ day of September, 2018.

_____
Gloria M. Navarro, Chief Judge
UNITED STATES DISTRICT COURT