**ROBERT T. EGLET, ESQ.**
Nevada Bar No. 3402
**ROBERT M. ADAMS, ESQ.**
Nevada Bar No. 6551
**RICHARD K. HY, ESQ.**
Nevada Bar No. 12406
**EGLET PRINCE**
400 South Seventh Street, Suite 400
Las Vegas, Nevada 89101
Telephone: (702) 450-5400
Facsimile: (702) 450-5451
Email: eservice@egletlaw.com
-and-
**JONATHAN E. LOWY, ESQ.**
*(Admitted Pro Hac Vice)*
District of Columbia Bar No. 418654
**BRADY CENTER TO PREVENT GUN VIOLENCE**
840 1st Street, NE, #400
Washington, DC 20002
Telephone: 202-370-8104
Email: jlowy@bradymail.org
*Attorneys for Plaintiffs*

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| DEVAN PRESCOTT, individually and on behalf of all those similarly situated; BROOKE FREEMAN, individually and on behalf of all those similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>SLIDE FIRE SOLUTIONS, LP, a Foreign Corporation; DOE MANUFACTURERS 1 though 100, inclusive; ROE RETAILERS 1 though 100, inclusive.<br><br>    Defendants. | Case No.: 2:18-cv-00296-GMN-GWF<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT SLIDE FIRE SOLUTIONS, LP'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)** |

1    Plaintiffs submit this Opposition to the Motion to Dismiss their First Amended

2 Complaint filed by Defendant Slide Fire Solutions, LP ("Slide Fire" or "Defendant").

3
**I.    INTRODUCTION**
4

5    Slide Fire manufactured and sold the bump stock device to enable people to convert a

6 semi-automatic firearm into a fully automatic "machine gun" that they could not legally obtain.[1]

7 Stephen Paddock used bump stocks to commit the deadliest mass shooting in modern U.S.

8 history, in which Plaintiffs – and the class of thousands they represent -- suffered emotional

9
distress at the Route 91 Harvest Music Festival on October 1, 2017.
10
    Plaintiffs respectfully disagree with this Court's Order dismissing Plaintiffs' initial
11
12 Complaint as barred by the Protection of Lawful Commerce in Arms Act ("PLCAA"). Plaintiffs

13 incorporate the arguments made in their initial Opposition (ECF No. 17) and preserve their right

14 to appeal that decision. As the Court granted leave to amend, Plaintiffs filed an Amended
15
Complaint on October 8, 2018, which Slide Fire moved to dismiss on November 2, 2018.
16
17    The Court should deny Slide Fire's renewed Motion. For one, Slide Fire ignores

18 Plaintiffs' new allegation—which the Court expressly invited—that Slide Fire knowingly made a

19 false entry on its application for a Federal Firearms License ("FFL"). This claim alone, if taken

20 as true (as this Court must on a motion to dismiss), satisfies the predicate exception to PLCAA,
21
allowing Plaintiffs' entire case to proceed. PLCAA is also inapplicable because Defendant
22
23 negligently entrusted the bump stock device, Defendant's acts constituted negligence per se, and

24 principles of federalism preclude reading PLCAA to bar Plaintiffs' claims. If PLCAA does bar

25

26 _____

27 [1] The federal government has clarified "that all bump-stock-type devices are 'machineguns'
28 under the [Gun Control Act and National Firearms Act] because they convert a semiautomatic
firearm into a firearm that shoots automatically more than one shot, without manual reloading,
by a single function of the trigger." Bump-Stock-Type Devices, 83 Fed. Reg. 13442,
13443 (proposed Mar. 29, 2018) (to be codified at 27 C.F.R. pts. 447, 478, 479).

courts from applying Nevada civil justice law, PLCAA violates the Tenth Amendment, and the Due Process and equal protection clauses of the Fifth Amendment.

## II.   PLAINTIFFS HAVE ADEQUATELY PLED PREDICATE VIOLATIONS

On a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013) (internal citations omitted).  To survive a motion to dismiss, Plaintiffs must only allege facts that are "plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  Plaintiffs' allegations easily meet this standard.

### A.  SLIDE FIRE MADE A FALSE ENTRY ON ITS FFL APPLICATION

Plaintiffs pled that Slide Fire misrepresented itself as a "manufacturer" of firearms when it applied to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") for an FFL. This allegation alone is sufficient to find PLCAA inapplicable and deny Slide Fire's Motion.

Under its "predicate exception," PLCAA provides no basis to dismiss any claim in an otherwise preempted action "in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought."   15 U.S.C. § 7903(5)(A)(iii)(I). *See, e.g., Williams v. Beemiller, Inc.*, 100 A.D.3d 143, 151 (N.Y. App. Div. 2012) ("this action [including negligence claim(s)] falls within the PLCAA's predicate exception and therefore is not precluded by the Act"); *Fox v. L&J Supply* (Pa. Ct. Cm. Pleas. Nov. 26, 2018) at 1 n.1 ("This Court concludes that the 'predicate exception' provided by 15 U.S.C. § 7903(5)[(A)](iii) applies to this case, thereby removing the entire action out from under the statutory immunity provided in the [PLCAA]") (attached as Exhibit I).  Noting that Plaintiffs argued in their initial Opposition that Slide Fire committed a predicate violation by making an "alleged false entry on its application for [an FFL]," but had not expressly pled this allegation,

3

the Court invited Plaintiffs to amend their complaint.  ECF No. 28 at 20 & n.5.  The Amended

Complaint now specifically alleges that Slide Fire made a materially false statement to the ATF

in its application for an FFL, in violation of 18 U.S.C. § 923(d)(1)(D).  *See* Am. Compl. at ¶¶ 93-

103.

Plaintiffs now assert that Slide Fire knowingly misrepresented itself to the ATF as a

"manufacturer" of firearms to obtain a Type 7 FFL.  Am. Compl. at ¶ 94.  The FFL application

("ATF Form 7") required Slide Fire to "describe the specific activity [that the] applicant is

engaged in or intends to engage in, which requires a Federal Firearms License," and to certify, in

writing, that it was applying as a "Manufacturer of Firearms Other than Destructive Devices."

*Id.* at ¶ 95-96.  Slide Fire's certification is false.  "Firearm," as used on the form, only includes:

"(A) any weapon (including a starter gun) which will or is designed to or may readily be

converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any

such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device."  18

U.S.C. § 921(a)(3).  Bump stocks are not "firearms" under that definition.

Slide Fire actually sells firearms manufactured by other companies, which have Slide

Fire's bump stocks attached to them.  *See* Am. Compl. ¶ 100.  Defendant's Reply supporting its

initial motion to dismiss supports Plaintiffs' claims.  ECF No. 22 at 10.  While asserting that it

manufactures and sells firearms, Slide Fire included an exhibit listing "firearms" that shows that

*third parties* (not Slide Fire) manufacture these "firearms," and Slide Fire merely added bump

stocks to these firearms.  ECF No. 23-2 (showing "bump fire rifles" manufactured by Colt's

Manufacturing LLC and Eagle Arms for sale on Slide Fire's website); *see* Am. Compl. at ¶ 100.

These allegations are sufficient to satisfy the predicate exception to PLCAA because

Slide Fire knowingly made misrepresentations to ATF in its FFL application, which proximately

caused Plaintiffs' harm.  *See* 15 U.S.C. § 7903(5)(A)(iii)(I).  Slide Fire's business model

depends both on its ability to sell firearms (which requires an FFL), and firearms "accessories" like its bump stock devices. Am. Compl. ¶ 101. Slide Fire concedes that its procurement of an FFL was the "only practical way" that it could "acquire firearms." (ECF No. 22 at 10). *See also* 27 C.F.R. § 478.44(a)(1). Without its false representations, Slide Fire could not have operated as a profitable business, so Paddock would not have purchased a bump stock from Slide Fire. This satisfies the proximate cause component of PLCAA's predicate exception.

While Slide Fire declared that it is "acceptable and common for businesses within the firearms industry that do not manufacture or sell 'firearms' to hold an FFL," (ECF No. 22 at 10), that is irrelevant, even if true. Slide Fire, and not these unnamed companies, chose to procure a Type 7 FFL, which required certification that it was applying as a "Manufacturer of Firearms Other than Destructive Devices." All that is before this Court is Slide Fire's misrepresentation to ATF that it manufactured "firearms," when Slide Fire actually sold firearms manufactured by other companies. At the pleading stage, these allegations are more than sufficient to satisfy the predicate exception to PLCAA and to defeat the Motion.

## B. SLIDE FIRE MADE MISREPRESENTATIONS TO ATF

Plaintiffs have pled a second predicate exception based on Slide Fire's misrepresentations to ATF. While the Court initially rejected this claim, facts revealed since the Amended Complaint was filed lend this allegation strong support. For one, Slide Fire has produced the letter that it sent to the ATF, in which Slide Fire claimed the bump stock had the "*added benefit*" of facilitating shooting by those with disabilities, ECF No. 34-1 at 2—an assertion that, upon information and belief, is false and misleading in violation of 18 U.S.C. § 1001(a)(2), as no evidence indicates this assertion is truthful. *See* Am. Compl. ¶ 91. In its June 7, 2010 response, the ATF focused on Slide Fire's specific "added benefit" language, stating that it understood the bump stock was "*intended*" to assist those with limited hand mobility. (ECF

No. 8-4 at 2).   Although the Court initially observed that "it is not clear that this [letter] influenced the ATF's conclusion", ECF No. 28 at 21, that influence is now evident.   ATF understood Slide Fire to mean that the use of bump stocks by persons with disabilities was the intended *purpose* of the device and thus, on this basis, approved the device for sale without the strict regulations of federal gun laws.   Slide Fire then posted the ATF letter on its website, touting its bump stocks as "legal" for all purposes according to ATF (Am. Compl. ¶ 92).

Upon information and belief, Slide Fire's statement that the bump stock devices it sold were "legal" and had ATF's imprimatur (e.g., ECF No. 8-3 at 5, stating that its bump stocks are "BATFE APPROVED"), was important to its business and to attracting customers, including Paddock.   Plaintiffs have now alleged that Paddock sought out and used only legally-purchased firearms in carrying out the shooting.   Am. Compl. at ¶ 92.   *See also* Las Vegas Metropolitan Police Department Criminal Investigative Report of the 1 October Mass Casualty Shooting, issued *after* Amended Complaint was filed, excerpts attached as Exhibit 2.[2]   *See id.* at 126 (stating that all weapons found in Paddock's hotel room after the shooting were legally obtained).   Slide Fire's misrepresentation to ATF thus proximately caused Paddock to purchase bump stocks from it, and to use them in the mass shooting.   Even without additional discovery,[3] Plaintiffs have sufficiently alleged that Slide Fire's false representations caused it to obtain ATF approval and helped induce Paddock to buy the bump stock.

///

---

[2] Accessible at https://www.reviewjournal.com/crime/homicides/read-the-final-report-from-las-vegas-police-on-the-oct-1-shooting/.  This Court may take judicial notice of the report, as it was released by the Las Vegas Police Department, a governmental entity.  *See Rote v. Silicon Valley Bank, Inc.*, No. 3:16-CV-00471-SI, 2016 WL 4565776, at *4 (D. Or. Sept. 1, 2016) ("Documents of which courts have taken judicial notice include filings by government agencies.").

[3] Discovery could obtain, *inter alia*, law enforcement's forensic analysis of Paddock's electronic devices, which might reveal where he purchased his arsenal.  *See* Las Vegas Report at 110.

**EGLET PRINCE**

## C. <u>PLAINTIFFS HAVE ADEQUATELY PLED FALSE ADVERTISING AND DECEPTIVE TRADE PRACTICES CLAIMS</u>

Plaintiffs have pled viable Lanham Act and Deceptive Trade Practices Claims under Section 43(a) of the Lanham Act (15 U.S.C. §1051, *et. seq.*) and N.R.S. §598.0915 (the "Nevada Deceptive Trade Practices Act," or the "NDTPA"). Plaintiffs allege that Defendant violated these statutes by misleading the public to believe that its bump stock devices could be used safely and lawfully. Am. Compl. at ¶¶ 250-266. A plaintiff bringing a claim for false advertising under the Lanham Act must show that it falls within the "zone of interests" of the statute and was proximately injured by the defendant's violation. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131-32 (2014). This requires an allegation that the plaintiff suffered "an injury to a commercial interest in reputation or sales." *Id.* at 132. Similarly, to bring a claim for deceptive trade practices under Nevada law, a plaintiff must only allege that "(1) an act of consumer fraud by the defendant (2) caused (3) damage to the plaintiff." *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009); N.R.S. §598.0915.

Plaintiffs allege these elements. They seek recovery for commercial injury to their businesses, which they were unable to carry on after the trauma they experienced. Am. Compl. at ¶ 255. Defendant's false representations led to bump stocks' widespread availability, including to mass killers like Paddock. These allegations also satisfy the elements for a deceptive trade practices claim, as Defendant knowingly created the false and misleading impression that its bump stocks could be used in a safe and lawful manner, which led to their widespread purchase and availability and Paddock's use. *See* N.R.S. §598.0915; Am. Compl. at ¶¶ 15-19.

If this Court applies a heightened pleading standard under Federal Rule of Civil Procedure 9(b), Plaintiffs have adequately pled facts to meet 9(b)'s requirements. Plaintiffs allege that: Slide Fire made misrepresentations to ATF, which the agency interpreted to mean that the bump stock was designed to aid individuals with limited hand mobility; this misrepresentation was material to ATF's decision not to prohibit the manufacture and sale of the device; Slide Fire used the legend "ATF Approved" and posted the ATF letter on its website to gain credibility and mislead the public about the safety and lawfulness of its device; Paddock was thereby able to obtain bump stock devices and use them to carry out mass murder; Plaintiffs'

trauma was caused by this mass murder; and Plaintiffs' trauma has prevented them from being able to carry on their commercial businesses. Am. Compl. at ¶¶ 15-29, 250-266. These allegations satisfy "the who, what, when, where, and how of the misconduct charged." *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 679 (9th Cir. 2018).

Plaintiffs have alleged proximate cause. Without Defendant's misrepresentations about the intended uses, safety and lawfulness of bump stocks, Paddock would not have been able to fire at the rate of a machinegun to carry out his mass shooting and cause the Plaintiffs' trauma, and their inability to carry on with their commercial businesses. Paddock was not a superseding cause, as it was foreseeable that someone would criminally misuse a weapon with a bump stock device. *See Symonidis v. AMC, LLC*, 2017 WL 6513640, at *2 (Nev. Ct. App. Dec. 11, 2017).

Defendant also argues that these claims must be dismissed because they are "generic statutes applicable to any product or service," and, under *District of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163 (D.C. 2008), they are "insufficient to avoid dismissal." (ECF No. 34 at 19). But *Beretta* merely held that plaintiffs did not allege a predicate violation because defendants did not "violate" the applicable statute. *Beretta*, 940 A.2d at 170-71. In fact, the Ninth Circuit considered and failed to adopt Defendant's argument in *Ileto v. Glock*, 565 F.3d 1126, 1134, 1137-38 (9th Cir. 2009) (considering same argument and reasoning that the PLCAA's predicate statute examples "suggest that Defendants' asserted narrow meaning is incorrect, because some of the examples do not pertain exclusively to the firearms industry"). The Lanham Act and NDTPA plainly regulate the firearms industry by prohibiting false advertising and deceptive trade practices in connection with the sale and marketing of goods, including firearms and firearm accessories. Indeed, courts regularly apply these statutes to the firearms industry. *See, e.g., Hornady Mfg. Co., Inc. v. Doubletap, Inc.*, 746 F.3d 995 (10th Cir. 2014).

Defendant asserts that Plaintiffs do not have standing to bring their NDTPA claim, but, as noted, Plaintiffs have adequately alleged all elements: a commercial injury caused by Defendant's violation of N.R.S. § 598.0195. *See Picus*, 256 F.R.D. at 658; *see also* Am. Compl. at ¶¶ 259-266. Plaintiffs also have standing to bring their Lanham Act claims, because, contrary

8

to Defendant's assertion, a plaintiff need not be a competitor to bring a Lanham Act claim. The plaintiff must only show that its claim is within the "zone of interests" by alleging an "injury to a commercial interest in reputation or sales," which Plaintiffs have done here. *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131-32 (2018).

## III.   PLAINTIFFS HAVE SUFFICIENTLY PLED NEGLIGENT ENTRUSTMENT

Plaintiffs have added a well-pled claim for negligent entrustment. Am. Compl. ¶¶ 186–199. They allege that: (i) a bump stock serves no lawful purpose in the public's hands; (ii) it was obvious that any purchaser of a bump stock would likely use it in crime; and (iii) Defendants knowingly supplied or negligently entrusted this dangerous instrument to purchasers such as Paddock, thereby creating an unreasonable risk of harm to the public. *Id.* at ¶¶ 187–190. Plaintiffs claim that, as a direct and proximate cause of Paddock's use of the bump stock, they suffered emotional distress and other damages. *Id.* ¶¶ at 192-93.

Even if the predicate exception did not apply—and it does—this claim would independently satisfy PLCAA's negligent entrustment exception. *See* 15 U.S.C. § 7903(5)(A)(ii). Moreover, because the predicate exception applies, Plaintiffs need not satisfy PLCAA's negligent entrustment exception and must only establish that they have sufficiently pled a negligent entrustment claim under state law. *See, e.g., Englund v. World Pawn Exch.*, 2017 Ore. Cir. LEXIS 3, at *18 (Ore. Cir. Ct. June 30, 2017) ("Because the predicate exception applies, the Court must determine solely whether plaintiff has sufficiently alleged ultimate facts to support a negligent entrustment claim under Oregon law.").

Nevada law imposes liability if the defendant knew or should have known about the entrustee's propensity to use the product in a manner involving risk of injury. "The key elements [of negligent entrustment] are whether an entrustment actually occurred, and whether the entrustment was negligent." *Zugel v. Miller*, 688 P.2d 310, 313 (Nev. 1984).[4] While Nevada

---

[4] Slide Fire incorrectly states that *Wiggins v. Hughes Tool Co.* and *Mills v. Continental Parking Corp.* establish the elements of negligent entrustment claims under Nevada law. *See* ECF No. 34 at 14. Also, both cases are distinguishable because they found that no negligent entrustment liability because a bailor-bailee relationship existed. *See Wiggins*, 484 P.2d 566, 568-69 (Nev.

1  courts have not addressed negligent entrustment of firearms, other jurisdictions have recognized

2  that a defendant may be liable for negligent entrustment in supplying a deadly weapon that could

3  be used in a foreseeably dangerous way that would cause injury or death. *See, e.g. Splawnik v.*

4  *Di Caprio*, 146 A.D.2d 333, 335 (3d Dep't 1989); *Delana v. CED Sales, Inc.*, 486 S.W.3d 316,

5  325 (Mo. 2016). Plaintiffs have pled that Slide Fire knew or should have known that the sale of

6  bump stocks would create risk of injury. *See, e.g.*, Am. Compl. ¶¶ 6, 20, 22–25; *see also id.* at ¶

7  191. A bump stock is an inherently dangerous instrument which serves limited—if any—lawful,

8  legitimate interests in the hands of a member of the general public. Accordingly, selling a bump

9  stock without any reasonable inquiry or guidelines is negligence, as the buyer of such an

10  instrument telegraphs a likely propensity to use it to harm third parties. *Id.* at 189.

11  Slide Fire contends that PLCAA covers only direct entrustments from a supplier of arms

12  to the ultimate wrongdoer. But a plain reading of the statute does not support this. Nothing in

13  PLCAA's definition of "negligent entrustment" (15 U.S.C. § 7903(5)(B)) specifies that the

14  "supplying" need be direct. While Slide Fire relies primarily on *Soto v. Bushmaster Firearms*

15  *Intl, LLC*, No. FBTCV156048103S, 2016 WL 8115354 (Conn. Super. Ct. Oct. 14, 2016), *Soto* is

16  an unpublished opinion, in a remote jurisdiction, to which this Court is not bound and which is

17  presently on appeal to the Connecticut Supreme Court. *See* Conn. Docket No. SC 19832 (argued

18  Nov. 14, 2017). No court of which Plaintiffs are aware has ever endorsed the narrow view of

19  PLCAA's negligent entrustment exception set forth in *Soto*.

20  Other courts have adopted a broad reading of negligent entrustment, usually predicated

21  on Section 390 of the Restatement (Second) of Torts, which encompasses *indirect* entrustment.

22  Restatement (Second) of Torts § 390 (1965) (emphasis added) ("One who supplies directly *or*

23  *through a third person . . .*"). Courts have held, for example, that firearms sellers can be liable

24  for negligently entrusting guns to "straw purchasers." *See, e.g.*, *Shirley v. Glass*, 308 P.3d 1, 9

25  (Ks. 2013) (allowing a negligent entrustment claim against a dealer for a straw purchased gun

26  used to kill, court noted "that the law requires one to be as cautious as reasonably possible when

27

28

---

1971); *Mills*, 475 P.2d 673, 674 (Nev. 1970). Paddock acquired the bump stocks through sales, which support negligent entrustment liability. *See, e.g.*, *Delana*, 486 S.W.3d at 325.

10

1   dealing with an object that has obviously lethal capabilities.”); *Englund*, 2017 Ore. Cir. LEXIS

2   3, at *17–20.  Plaintiffs’ negligent entrustment count should not be dismissed.

3   ## IV.   PLAINTIFFS HAVE ADEQUATELY PLED NEGLIGENCE *PER SE*

4       Plaintiffs have pled a viable negligence *per se* claim – another PLCAA exception, *see* 15

5   U.S.C. §7903(5)(A)(ii) -- based on Defendant’s violation of N.R.S. §104.2314 (warranty of

6   merchantability) and N.R.S. §598.0915 (deceptive trade practices).   “A statutory violation is

7   negligence per se if the injured party belongs to the class of persons whom the statute was

8   intended to protect, and the injury suffered is of the type that the statute was intended to

9   prevent.” *Atkinson v. MGM Grand Hotel, Inc.*, 98 P.3d 678, 680 (Nev. 2004).  Further, “liability

10  under a negligence per se theory is in general a question of fact for the jury.” *Anderson v.*

11  *Baltrusaitis*, 944 P.2d 797, 799 (Nev. 1997) (citation omitted).

12      Defendant argues that Plaintiffs’ negligence per se claim is improper because N.R.S.

13  §104.2314 and N.R.S. §598.0915 provide stand-alone claims, and Plaintiffs are therefore

14  “improperly attempting to shoehorn these standalone claims into a ‘negligence per se’ cause of

15  action in order to circumvent the PLCAA.”  (ECF No. 34 at 16).  Not only are such negligence

16  per se claims viable, but Defendant itself argues that negligence per se claims *should* be based on

17  statutes that impose civil liability, because such statutes evince legislative intent to provide legal

18  relief. (ECF No. 34 at 15-16); *see also Herrera v. Toyota Motor Sales, U.S.A.*, 2010 WL

19  3385336, at *2 (D. Nev. Aug. 23, 2010) (upholding negligence per se claim based on violation

20  of Nevada Deceptive Trade Practices Act, N.R.S. §598.0903).

21      Defendant’s sale of the bump stock device violates N.R.S. §104.2314, which requires

22  products sold in the state of Nevada to be “merchantable,” or “fit for the ordinary purposes for

23  which such goods are used.” *Id.* 104.2314(2)(c).  Slide Fire’s bump stock does not meet this

24  definition, because it has no utility other than to convert an otherwise legal firearm into a deadly

11

weapon capable of firing at rates that approximate fully automatic machineguns.  No product can be "fit" for the purpose of facilitating mass killing and enabling the evasion of federal restrictions on automatic weapons, and Plaintiffs have pled as much. Am. Compl. at ¶¶ 135-136. Hence, Defendant misses the point in arguing that bump stocks operate as intended because they "increas[e] the rate of fire beyond what would be typical using one's finger to pull the trigger." (ECF No. 34 at 17).  Bump stocks are unfit because they increase the rate of fire to such an extent that they approximate the firing capabilities of illegal, fully automatic machineguns, which are "primarily weapons of war [that] have no appropriate sporting use or use for personal protection." *Hollis v. Lynch*, 827 F.3d 436, 448 (5th Cir. 2016).

Plaintiffs' claim based on N.R.S. §102.2314 meets the elements of negligence per se. Plaintiffs (1) belong to the class of persons whom the statute was intended to protect, because the statute intends to shield the public from the sale of products that are unsafe and unfit for their intended use; (2) suffered the type of harm that N.R.S. §102.2314 aims to prevent, that is, harm to consumers and the public caused by defective or dangerous products; and (3) Defendant's violation proximately caused Plaintiffs' harm.  Am. Compl. at ¶¶ 136-140.

Defendant argues that Plaintiffs are not in the class of persons that N.R.S. §102.2314 is designed to protect because they did not purchase the bump stock themselves.  Nevada, however, does not require that a person purchase the product at issue from the defendant to make out an implied warranty of merchantability claim.  *See Forest v. E.I. DuPont de Nemours and Co.*, 791 F. Supp. 1460, 1470 (D. Nev. 1992).  Moreover, the statute provides that warranty claims are not limited to "sales contracts or to the direct parties to such a contract." *See* N.R.S. §104.2313, cmt. 3. The statute specifies that the "provisions of section 2318 on third party beneficiaries expressly recognize this case law development within one particular area.  Beyond that, the matter is left to the case law *with the intention that the policies of this Act may offer useful guidance in dealing*

*with further cases as they arise.*" *Id.* (emphasis added).  Courts have interpreted this language as "le[aving] the door open to courts to extend the protection of warranty to greater numbers of plaintiffs." *Ciampichini v. Ring Bros., Inc.*, 40 A.D.2d 289, 292 (N.Y. Ct. App. 1973) (upholding implied warranty claim brought by bystanders injured by the defendant's product); *see also Salvador v. Atlantic Steel Boiler Co.*, 319 A.2d 903, 904 (Pa. 1974).

Here, public policy considerations weigh in favor of allowing warranty of merchantability claims for bystanders, because such extension would promote the public interest in protection of human life by holding manufacturers to account for harm caused by dangerous products. *See Salvador*, 319 A.2d at 908 n.15.  ("[T]he public interest in the protection of human life justifies the imposition upon consumer products suppliers of full responsibility for harm resulting from use of the products."). Moreover, such a policy recognizes that manufacturers who falsely represent that their products are safe and lawful should be held to account for those misrepresentations.  *See id.*  The Justice Department and an increasing number of states have banned or are moving to ban bump stocks in recognition of the fact that, contrary to Defendant's representations, they are inherently unsafe and pose an unacceptable threat to the public.[5]

Similarly, Plaintiffs have properly pled negligence *per se* based on Defendants' violation of N.R.S. §598.0915.  Defendants created a false and misleading impression that the bump stock could be used safely and lawfully when, in fact, the bump stock was not safe, lawful or fit for use by the general public.  Plaintiffs are within the class of persons the statute intended to protect, because they have been harmed by the sale and purchase of dangerous products which Defendants misled the public to believe to be safe and lawful.  Plaintiffs suffered the type of

---

[5] *See supra* note 1. *See also* "Washington becomes latest state to ban bump stocks," *CBS News* Mar. 6, 2018), https://www.cbsnews.com/news/washington-bump-stock-ban-gov-jay-inslee-signs-legislation-2018-03-06/ (noting "more than 20 states to introduce legislation seeking to ban the devices after the Oct. 1 shooting in Nevada***"); Am. Compl. ¶¶ 7-8.

harm N.R.S. §598.0915 aims to prevent, as these representations enabled a mass murderer to arm himself with a dangerous product, which caused economic injury to Plaintiffs.

## V.   UNDER SUPREME COURT PRECEDENT, PLCAA SHOULD NOT BAR PLAINTIFFS' CLAIMS

### A. PRINCIPLES OF FEDERALISM REQUIRE A NARROW READING OF IMMUNITY UNDER PLCAA

The Supreme Court has held that federal laws that intrude on state sovereignty or upset the balance of powers between state and federal governments must be construed to be protective of state authority.  Therefore, PLCAA should be read to avoid depriving Nevada of its authority to have courts apply Nevada common law to residents/guests injured by a tortfeasor's negligence and/or sale of an unreasonably dangerous product.  In direct contrast to Defendant's suggestions that PLCAA's *exceptions* must be limited, PLCAA's immunity must be cabined and its potentially applicable exceptions must be read broadly.

In *Gregory v. Ashcroft*, 501 U.S. 452 (1991), the Supreme Court explained that courts construing a federal law that preempts state law must apply the "plain statement rule," under which "it is incumbent upon the [] courts to be certain of Congress' intent before finding that federal law overrides [the usual constitutional balance of federal and state powers]." *Id.* at 464 ; *see also United States v. Bass*, 404 U.S. 336, 349 (1971).  The Nevada Supreme Court has, similarly, recognized that "[i]n the enactment of a statute, the legislature will be presumed not to intend to overturn long-established principles of law and the statute will be so construed unless an intention to do so plainly appears by express declaration or necessary implication." *Hardy Cos. v. SNMARK, LLC*, 126 Nev. 528, 537 (2010).

In the *absence* of the required "plain statement" that Congress intends to deprive states of authority, courts must narrowly construe language in the relevant federal law so as to minimize the scope of federal preemption and the resultant intrusion on state sovereignty.

*Gregory* makes clear that courts must go out of their way to protect state sovereignty when construing federal statutes in the absence of a "plain statement" in favor of broad preemption.

In *Gregory*, a provision of the Missouri Constitution requiring judges to retire at age 70 appeared to violate the federal Age Discrimination in Employment Act of 1967 ("ADEA"). 501 U.S. at 455-56. To prevent intrusion on Missouri's sovereign authority, the Court rejected a statutory construction that was more consistent with the plain text, and read the ADEA to exempt judges under an exception for "'appointee[s] on the policymaking level.'" *Id.* at 465. The Court recognized that its interpretation was "an odd way for Congress to exclude judges," "particularly in the context of the other exceptions that surround [the exclusion applicable to judges])." *Id.* at 467. Yet, the Court would not construe the federal law as displacing Missouri law unless it was "absolutely certain" about Congress' intent. *Id.* at 464. The Court was "not looking for a plain statement that judges are excluded" from the coverage of the federal statute, but, rather, it "[would] not read the ADEA to cover state judges unless Congress has made it clear that judges are *included*" in its coverage. *Id.* at 467 (emphasis in original).

In *Bond v. United States,* 134 S. Ct. 2077 (2014), the defendant, Bond, used a chemical, largely banned under federal law, to poison a woman. The Supreme Court considered whether the federal statute that appeared to criminalize chemical weapons use, without exceptions for local crimes, should apply. Justice Scalia stated that "it is clear beyond doubt that [the act] cover[ed] what Bond did . . ." *Id.* at 2094 (Scalia J., concurrence). But because a plain reading of the statute would lead to the federal government "'dramatically intrud[ing] upon traditional state criminal jurisdiction . . .'", the Court read ambiguity into otherwise unambiguous language, finding that "ambiguity derives from the improbably broad reach of the key statutory definition . . .". *Id.* at 2088 (quoting *Bass*, 404 U.S. at 350). The Court held that the law could not constitutionally be applied to Bond because "[t]he Government's reading of [the federal statute]

would 'alter sensitive federal-state relationships,' convert an astonishing amount of 'traditionally local criminal conduct' into a 'matter for federal enforcement,' and involve a 'substantial extension of federal police resources.'" *Id.* at 2091-92 (quoting earlier decision in *Bond*).

Applying *Bond* and *Gregory*, the question here is not whether PLCAA clearly *excludes* claims like Plaintiffs' from the definition of prohibited "qualified civil liability action[s]." *See* 501 U.S. at 467. Instead, the question is whether Congress has made it clear that such claims are *included* in the definition of "qualified civil liability action[s]" and that courts are deprived of authority to apply Nevada law in such cases. *See id.* PLCAA comes nowhere close to making the required "plain statement" in favor of broad preemption that would support Defendant's interpretation of PLCAA providing them with immunity in this case. And under *Bond,* courts must limit overbroad language in federal statutes—even if unambiguous, and *certainly* where ambiguous—so as to minimize intrusions on core areas of state sovereignty.

Congress did not come close to making a clear statement that it was barring state negligence law from applying to negligent actors like Slide Fire. PLCAA bars plaintiffs from bringing a "qualified civil liability action," which is defined as an action against gun sellers "resulting from the criminal or unlawful misuse" of guns by a third party. "Resulting from" is not defined, but is informed by PLCAA's Purposes, which state, *inter alia*, its intent "[t]o prohibit causes of action . . . for the harm *solely* caused by the criminal or unlawful misuse," and "[t]o protect and preserve the separation of powers doctrine and important principles of federalism [and] comity . . . ." 15 U.S.C. §7901(b)(1) (emphasis added); (b)(6). This language evidences an intent to not preclude state law claims where harm was not "solely caused by" third party criminal misuse, but is *also* "resulting from" the wrongful acts of a manufacture or retailer. *See Conroy v. Aniskoff*, 507 U.S. 511, 515–16 (1993) (statute must be read as a whole).

16

The "solely caused by" limitation was of particular importance to Congress.   After PLCAA failed to pass in an earlier session, Congress amended the bill to add "solely" to its first stated purpose—one of the only changes made.   *Compare* S. 1805, 108th Cong. §2(b)(1) and H.R. 1036 108th Cong. §2(b)(1) ("To prohibit causes of action . . . for harm caused by the criminal or unlawful misuse") *with* 15 U.S.C. §7901(b)(1) ("To prohibit causes of action . . . for harm solely caused by the criminal or unlawful misuse").   "In construing a statute we are obliged to give effect, if possible, to every word Congress used," *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979), especially when the word is of special import to Congress.

Statements made by PLCAA's chief sponsor, Senator Craig (R-ID), emphasized that PLCAA was intended to preserve gun companies' liability for harm that they caused.   *See* 151 Cong. Rec. S9395 (July 29, 2005) ("This bill will not prevent a single victim from obtaining relief for wrongs done to them by anyone in the gun industry."); 151 Cong. Rec. S9099 (July 27, 2005) ("As we have stressed repeatedly, this legislation will not bar the courthouse doors to victims who have been harmed by the negligence or misdeeds of anyone in the gun industry . . . . If manufacturers or dealers break the law or commit negligence, they are still liable.").

Defendants argue that the Ninth Circuit concluded in *Ileto*, 565 F.3d 1126, that "Congress chose to preempt all general tort theories of liability."   ECF No. 34 at 11.   However, *Ileto* did not consider these federalism principles; indeed, *Ileto* predated *Bond*.   In light of the Supreme Court's federalism rulings, at minimum PLCAA's "solely caused" language rebuts any claim that Congress clearly stated in PLCAA that it intended to deprive state civil justice in cases such as this, where Slide Fire's negligence and unlawful conduct was another cause of Plaintiffs' harm.   Thus, PLCAA must be construed to not bar the application of Nevada common law here.

///

**B.** **CONSTITUTIONAL AVOIDANCE SUPPORTS NARROWLY CONSTRUING THE SCOPE OF PLCAA IMMUNITY**

"[W]hen deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice.  If one of them would raise a multitude of constitutional problems, the other should prevail--whether or not those constitutional problems pertain to the particular litigant before the Court." *Clark v. Martinez*, 543 U.S. 371, 380-381 (2005).  This Court should adopt Plaintiffs' construction of PLCAA, which would minimize its constitutional problems.  While the Ninth Circuit refused to apply this principle in *Ileto*, the Court did not consider PLCAA's Tenth Amendment issues, Congress specifically identified *Ileto* as a case it wished to bar, 565 F.3d at 1137, and Judge Berzon appropriately found constitutional avoidance applicable.  565 F.3d at 1153 (Berzon, J., dissenting and concurring).

**VI.** **IF PLCAA BARS PLAINTIFFS' CLAIMS, IT IS UNCONSTITUTIONAL**

**A.** **PLCAA VIOLATES THE TENTH AMENDMENT**

Assuming arguendo that PLCAA prohibits application of Nevada law and precludes Nevada from granting civil justice to those harmed by Defendant's wrongdoing, PLCAA is unconstitutional.  Congress has never before attempted such an invasion of state sovereignty and the Supreme Court has never approved of such and extraordinary exercise of federal authority.  Congress has no authority to so drastically intrude on state sovereignty and governance.

PLCAA intrudes on Nevada's authority in fundamental and unprecedented ways by prohibiting courts from hearing civil justice claims against the gun industry that arise from violations of judicially-created common law but permitting those same actions if codified as a statute by the legislature. *See* 15 U.S.C. § 7903(5)(A)(iii).  For example, according to Defendant, PLCAA bars Nevada from according civil justice to Plaintiffs if their claims are based on judge-made common law.  But in the "predicate exception," Congress allows Nevada to grant civil justice for *the exact same causes of action* as if the Nevada legislature codified them – for

18

example, by banning bump stocks.  Hence, in PLCAA the federal government dictates to Nevada how to allocate lawmaking power between its judicial and legislative branches to establish liability standards applicable to the gun industry.[6]  Such interference in how the states govern themselves is flatly impermissible in our federalist system of "dual sovereigns" (*Gregory v. Ashcroft*, 501 U.S. 452 , 457, (1991)) and violates the Tenth Amendment.  U.S. Const. Amen. X.

The Supreme Court has repeatedly recognized that allocation of powers between the branches of state government is a core prerogative of the states as sovereign entities.  *See Minn. v. Clover Leaf Creamery Co.*, 449 U.S. 456, 461 (1981); *Highland Farms Dairy, Inc. v. Agnew*, 300 U.S. 608, 612 (1937); *Sweezy v. New Hampshire*, 354 U.S. 234, 256 (1957) (Frankfurter, J. concurring); *FERC v Mississippi*, 456 U.S. 742, 761 (1982). Additionally "the State's interest in fashioning its own rules of tort law is paramount to any discernible federal interest, except perhaps an interest in protecting the individual citizen from state action that is wholly arbitrary or irrational." *Martinez v. California*, 444 U.S. 277, 282 (1980).  Even if there are constitutional methods by which Congress could limit gun industry tort liability, it cannot attempt to do so by impermissible means.  Indeed, "[t]he Constitution has never been understood to confer upon Congress the ability to require the States to govern according to Congress' instructions." *New York v. United States*, 505 U.S. 144, 162, 188 (1992).  PLCAA is not permissible preemption because it does not regulate the conduct of private actors—it simply directs states which branch of government to use to establish tort liability standards. *See Murphy v. NCAA*, 138 S.Ct. 1461, 1480 (2018) ("every form of [permissible] preemption is based on a federal law that regulates the conduct of private actors, not the States.").

---

[6] Congress made its animus toward the judicial branch clear in PLCAA. *See* 15 U.S.C. § 7901(a)(7) (suggesting need to prevent "a maverick judicial officer or petit jury").

1   The Appellate Division of New York applied these same principles to hold that a

2   similarly constructed federal statute would violate the Tenth Amendment if read to dictate which

3   branch of government a state should use to regulate bar licenses. In *Matter of Application of*

4   *Cesar Adrian Vargas for Admission to the Bar of the State of New York* ("*Vargas*"), 131 A.D.3d

5

6   4 (N.Y. App. Div., 2nd Dep't, 2015), the federal law at issue, like PLCAA, could have supported

7   a reading that Congress required a legislative enactment to opt-out from the law's restrictions.

8   The Court held that would "unconstitutionally infringe[] on the sovereign authority of the State

9   to divide power among its three coequal branches of government" in violation of the Tenth

10

11   Amendment. *Id.* at 6, 23-24.   It recognized that,

12          the processes by which a state chooses to exercise, by one of its
        coequal branches of government, the authority granted by the
13          federal legislation is not a legitimate concern of the federal
        government. . . . The ability, indeed the right, of the states to
14          structure their governmental decision-making processes as they see
        fit is essential to the sovereignty protected by the Tenth
15          Amendment.

16

17   *Id.* at 24-26.  PLCAA suffers the same constitutional flaw—invading one or more core areas of

18   state sovereignty and undermining the principles of federalism enshrined in the Tenth

19   Amendment---if read to bar Plaintiffs' claims, including their simple negligence claim, in the

20   absence of a Nevada statute codifying judicially-created negligence and products liability

21

22   standards as applied to the gun industry.[7]

23   **B. PLCAA VIOLATES THE DUE PROCESS CLAUSE OF THE FIFTH
    AMENDMENT**

24

25

26

27

28

---

[7] While *Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009) upheld PLCAA's constitutionality, it did not consider arguments that PLCAA violated the Tenth Amendment.

PLCAA purports to do something no federal law has never done -- and which the Supreme Court has never approved -- deprive a class of negligence victims of all rights to seek redress without affording them an alternative remedy. As Judge Berzon noted in *Ileto*:

> We have never upheld against substantive due process attack a federal statute with precisely the PLCAA's constellation of characteristics: (1) It completely extinguishes an individual litigant's ability to litigate a cause of action, rather than limiting the amount of recovery or the procedure for bringing suit, and it leaves no alternative channel by which the individual may address his injury; and (2) the individual's cause of action is for an injury that would be cognizable under state common law, and it was filed and pending at the time of the federal statute's enactment. To hold such a statute constitutional on rational basis review, despite the absence of any provision for alternative forms of redress, is to step onto new and uncertain constitutional territory.

565 F.3d at 1149 – 50 (Berzon, J., dissenting) (footnote omitted). If allowed, Congress could simply command dismissal of state-law claims against wrongdoers. Once states received their directive from the federal government, states would be powerless to provide civil justice to those victimized by Congress's favored industries. The Constitution does not allow such deprivation of civil justice rights. PLCAA violates the Due Process clause of the Fifth Amendment.

The Supreme Court has long recognized that "[w]here there is a legal right, there is also a legal remedy by suit or action at law." *Marbury v. Madison*, 5 U.S. 137, 163 (*quoting* Sir William Blackstone, Commentaries 23 (1869)); *see also Truax v. Corrigan*, 257 U.S. 312, 330 (1921) ("a statute whereby serious losses inflicted by such unlawful means are in effect made remediless [would] disregard fundamental rights of liberty and property and [] deprive the person suffering the loss of due process of law."); *Fein v. Permanente Med. Group*, 474 U.S. 892, 894-95 (1985) (White, J., dissenting from dismissal of cert.) ("Whether due process requires a legislatively enacted compensation scheme to be a quid pro quo for the common-law or state-law remedy it replaces, and if so, how adequate it must be, . . . appears to be an issue unresolved by this Court"); *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 93 (1980) (Marshall, J., concurring) ("Quite serious constitutional questions might be raised if a legislature attempted to

abolish certain categories of common-law rights in some general way").  When Congress has preempted tort liability, it has always provided an alternate remedy.[8] The Supreme Court has approved liability-limiting legislation only after carefully analyzing the substitute remedies provided by Congress. *See Duke Power Co. v. Carolina Envtl. Study Grp.*, 438 U.S. 59, 63-64 (1978) ("[t]his panoply of remedies and guarantees is at the least a reasonably just substitute for the common-law rights replaced by [the Act].").

PLCAA provides no "reasonably just substitute."  One court found PLCAA violative of Due Process for that reason.  *City of Gary v. Smith & Wesson Corp.*, No. 45D05-005-CT-00243 (Ind. Super. Ct. Oct. 23, 2006) (attached as Exhibit III), *affirmed on other grounds by Smith & Wesson Corp. v. City of Gary*, 875 N.E 2d 422 (Ind. Ct. App. 2007).  Another court stated that if PLCAA barred the case, that result would be unconstitutional for not providing a sufficient alternative remedy. *Lopez v. Badger Guns, Inc.*, No. 10-cv-18530, Tr. of Hearing on Mot. for SJ, 24:19-25:3 (Wis. Cir. Ct. Mar. 24, 2014) (attached as Exhibit IV).  That reasoning is far more persuasive than *Ileto*, which incorrectly gave short shrift to these arguments by limiting due process claims to final judgments, 565 F.3d at 1141.  *Ileto* would allow Congress to dictate to purportedly co-equal courts what state law claims must be dismissed, allowing courts to become mere into henchmen for Congress's favored industries without any Constitutional safeguard.

## C. **PLCAA VIOLATES EQUAL PROTECTION**

PLCAA also violates the equal protection component of the Fifth Amendment to the Constitution because it irrationally discriminates among classes of victims of gun industry negligence.  There is no rational basis to allow civil justice for gun violence victims in states which have codified judicially-developed causes of action, while barring identical claims in

---

[8] *See* Patricia Foster, *Good Guns (and Good Business Practices) Provide All the Protection They Need: Why Legislation to Immunize the Gun Industry from Civil Liability is Unconstitutional*, 72 U. Cin. L. Rev. 1739 at 1750-56 (Summer 2004).

states which rely on common law. *McBride v. General Motors Corp.*, 737 F. Supp. 1563 (M.D. Ga. 1990), held a Georgia tort reform statute was unconstitutional on equal protection grounds under the Georgia and U.S. Constitution because it discriminated between claimants in products liability and non-products liability cases without a rational basis. PLCAA similarly entails discrimination that cannot rationally serve the purported legislative purpose. PLCAA *allows* limitless liability against the gun industry in states that codify relevant causes of action.[9] *Ileto* failed to consider this irrational basis of PLCAA. 565 F.3d at 1142.

## VII.  **PLAINTIFFS HAVE ADEQUATELY ALLEGED COMMON LAW CLAIMS**

In its renewed Motion to Dismiss, Slide Fire asserts that Plaintiffs have failed to allege any viable claims under Nevada common law. *See* ECF No. 34 at 22-25. Plaintiffs direct the Court to their previous opposition brief (ECF No. 17 at 14-21) which describes in detail how Plaintiffs have alleged cognizable claims under Nevada common law.

///

///

///

///

///

///

///

///

///

---

[9] The handful of courts that have upheld PLCAA's constitutionality rely on distinguishable facts and incorrect reasoning. Only *Delana*, 486 S.W.3d 316, considered *Gregory* or *Bond*, and that and several others allowed some of plaintiffs' claims, so the constitutional deprivations were far less severe. *See, e.g.*, *Kim v. Coxe*, 295 P.3d 380 (Ak. 2013).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VIII.  <u>CONCLUSION</u>

The Court should deny Defendant Slide Fire's renewed Motion to Dismiss.

DATED this __7__ day of December, 2018

ROBERT T. EGLET, ESQ.
Nevada Bar No. 3402
ROBERT M. ADAMS, ESQ.
Nevada Bar No. 6551
RICHARD K. HY, ESQ.
Nevada Bar No. 12406
**EGLET PRINCE**
400 South 7th Street, 4th Floor
Las Vegas, Nevada 89101
-and-
JONATHAN E. LOWY, ESQ.
District of Columbia Bar No. 418654
**BRADY CENTER TO PREVENT GUN VIOLENCE**
840 1ST Street, NE, #400
Washington, DC 20002
Email: jlowy@bradymail.org
*Attorneys for Plaintiff*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

Pursuant to F.R.C.P. 5(b), I hereby certify that I am an employee of EGLET PRINCE, and on the 7th day of December, 2018, I did cause a true and correct copy of the foregoing document **PLAINTIFFS' OPPOSITION TO  DEFENDANT SLIDE FIRE SOLUTIONS, LP'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)** to be filed and served electronically via the Court's CM/ECF system.

An employee of EGLET PRINCE