# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

DEVAN PRESCOTT, individually and on
behalf of all those similarly situated, *et al.*,

        Plaintiffs,

    vs.

SLIDE FIRE SOLUTIONS, LP,

        Defendant.

Case No.: 2:18-cv-00296-GMN-BNW

**ORDER**

Pending before the Court is the Motion to Dismiss, (ECF No. 34), filed by Defendant Slide Fire Solutions, LP ("Slide Fire"). Plaintiffs Devan Prescott and Brooke Freeman (collectively "Plaintiffs") filed a Response, (ECF No. 35), and Slide Fire filed a Reply, (ECF No. 36). For the reasons discussed herein, Slide Fire's Motion to Dismiss is **DENIED in part and GRANTED in part**.[1]

## I.    <u>BACKGROUND</u>

This case arises from the tragic mass shooting that occurred during the Route 91 Harvest Music Festival (the "Route 91 Festival") on October 1, 2017, in Las Vegas, Nevada. That day, an individual opened fire on concertgoers from the thirty-second floor of his hotel room at the Mandalay Bay Resort and Casino. (Am. Compl. ¶¶ 1–2, 9, ECF No. 29). In approximately eleven minutes, the shooter killed fifty-eight people, and injured hundreds more. (*Id.* ¶ 12). Plaintiffs and their loved ones attended that Route 91 Festival.

According to Plaintiffs, this "military-style assault" could not have happened with a conventional handgun, rifle, or shotgun. (*Id.* ¶ 2). Rather, Plaintiffs allege that because the

---

[1] Also before the Court is Plaintiffs' Motion to Strike, (ECF No. 46), which the Court **GRANTS** with respect to Slide Fire's filing styled as an "Errata," (ECF No. 42).

shooter's rifles were equipped with sliding rifle stocks, commonly known as "bump stocks," he was able to fire upon the concertgoers "at a rate comparable or equivalent to that of a fully automatic weapon." (*Id.* ¶ 11). Slide Fire designed, manufactured, marketed, and sold these bump stocks, and it holds itself out to be the "sole patent holder of bump fire technology." (*Id.* ¶¶ 53, 56).

Plaintiffs allege that Slide Fire obtained a favorable evaluation from the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF") by representing bump stocks as intended to assist persons with limited mobility in their hands. (*Id.* ¶ 15). Based upon this misrepresentation, according to Plaintiffs, the ATF concluded that bump stocks are not subject to regulation as firearm devices under the Gun Control Act or the National Firearms Act. (*Id.*).

Notwithstanding Slide Fire's alleged statement that bump stocks are intended for use by disabled persons, Plaintiffs state that Slide Fire took no action to limit its marketing to such a class of customer. (*Id.* ¶¶ 21, 26). Plaintiffs continue that "Slide Fire's own marketing materials and advertisements belie any notion that bump stock devices are intended for use of persons with limited mobility." (*See id.* ¶ 22). For example, Slide Fire's promotional catalogue states, "[r]apid fire capabilities can add fun to your shooting sessions, and can really take your rifle to the next level." (*Id.*).

Plaintiffs also point to statements made by Slide Fire's inventor, Jeremiah Cottle ("Cottle"), which suggest that bump stocks are intended for consumers who seek a firearm that mimics a fully automatic weapon. (*Id.* ¶ 64); (*see also id.* ¶ 65) (quoting Cottle discussing how bump stocks are geared toward "people like me, [who] love full auto."). Cottle allegedly made public comments promoting bump stocks as providing the "full auto experience but without the prohibitive price tag." (*Id.* ¶ 66).

Similarly, Plaintiffs allege that Slide Fire's various bump stock patents are silent as to the purported benefits for persons with limited mobility in their hands. (*Id.* ¶ 24). Instead, the

patents identify bump stocks' "primary advantages" as "increas[ing] the 'enjoyment and excitement' of shooting firearms" and "enhanc[ing] the firing rate of a semi-automatic weapon." (*Id.* ¶ 25).

Plaintiffs contend that Slide Fire promoted and sold bump stocks "to the general public, without any reasonable measures or safeguards," and despite "indicia that it would be used, with firearms and ammunition, for unlawful purposes." (*Id.* ¶¶ 2–3). By marketing bump stocks as a "military-grade accessory for civilians," and not limiting such promotion to persons with disabilities, Slide Fire's acts and omissions, according to Plaintiff, foreseeably caused the carnage that took place at the Route 91 Festival. (*Id.* ¶¶ 2–3, 68–69).

Plaintiffs initially filed their class action complaint in state court on October 6, 2017; and Slide Fire subsequently removed the case to this Court. (*See* Pet. for Removal, ECF No. 1). On September 17, 2018, the Court granted Slide Fire's motion to dismiss without prejudice, giving Plaintiffs leave to file an amended complaint.

Plaintiffs filed their Amended Complaint on October 8, 2018, bringing the following claims against Slide Fire: (1) negligence; (2) negligence per se; (3) negligent infliction of emotional distress under a theory of bystander liability; (4) negligent infliction of emotional distress under a theory of direct liability; (5) negligent entrustment; (6) negligent products liability; (7) strict products liability; (8) public nuisance; (9) private nuisance; (10) false advertising in violation of § 43(a) of the Lanham Act; and (11) deceptive trade practices under Nevada Revised Statute ("NRS") 598.0915. (Am. Compl. ¶¶ 121–266).

Slide Fire now moves to dismiss each of Plaintiffs' claims in that Amended Complaint. (*See* Def.'s Mot. to Dismiss ("MTD"), ECF No. 34).

## II.   **LEGAL STANDARD**

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegations are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  "However, material which is properly submitted as part of the complaint may be considered." *Id.*  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III. **DISCUSSION**

Slide Fire moves to dismiss Plaintiffs' Amended Complaint on the following grounds: (1) Plaintiffs' common-law claims are barred by the Protection of Lawful Commerce in Arms Act, 15 U.S.C. §§ 7901–7903 ("PLCAA"); (2) the amended allegations fail to plausibly demonstrate how an exception to the PLCAA applies, warranting dismissal of all claims; and (3) even if the PLCAA is not a bar to this action, Plaintiffs' claims are not cognizable under Nevada law. (MTD at 9–24, ECF No. 34).

### A. Scope of Amendment

As a preliminary matter, Slide Fire contends that the Court granted Plaintiffs leave to amend their complaint for the limited purpose of pleading additional facts to support an exception to the PLCAA. (*Id.* at 8). By incorporating five "unrelated new causes of action," and not pleading additional facts to support an exception to the PLCAA, Slide Fire claims that Plaintiffs have exceeded the scope of the Court's Order. (*Id.*). The Court disagrees.

First, Slide Fire's argument is factually misplaced. Plaintiffs' Amended Complaint *does* include new facts to establish an exception to the PLCAA. (*See* Am. Compl. ¶¶ 93–102). Also, the new claims are not "unrelated" as Slide Fire argues; they are premised upon the same acts and omissions alleged in the initial complaint. (*See id.* ¶¶ 133–153, 186–199, 239–266).

Secondly, the Court's prior Order permitted Plaintiffs to plead facts in support of "*an* exception to the PLCAA." *Prescott v. Slide Fire Sols., LP*, 341 F. Supp. 3d 1175, 1192 (D. Nev. 2018) (emphasis added). The Court did not limit Plaintiffs' amendment to the predicate exception, as Slide Fire asserts. (MTD at 8). With one exception, Plaintiffs' new causes of action—for negligent entrustment, negligence per se, false advertising, and consumer fraud—

are pleaded to establish that an exception to the PLCAA applies in this case.[2] Indeed, by arguing that these claims do not fit within a PLCAA exception, Slide Fire has implicitly acknowledged these claims are being advanced to demonstrate an exception to the PLCAA, consistent with the Court's Order.

Finally, even if Plaintiffs' Amended Complaint exceeded the scope of this Court's Order, this would not, in and of itself, warrant striking portions of the pleading. *See, e.g.*, *Sapiro v. Encompass Ins.*, 221 F.R.D. 513, 518 (N.D. Cal. 2004) (declining to strike complaint that had been amended without leave from the court); *Beavers v. New Penn Fin. LLC*, No. 1:17-cv-00747-JLT, 2018 WL 385421, at *3 (E.D. Cal. Jan. 11, 2018) (refusing to strike an amended complaint that disputedly exceeded the scope of the court's order given the absence of prejudice to the opposing parties and the infancy of the case); *see also Allen v. Cty. of Los Angeles*, No. CV 07-102-R (SH), 2009 WL 666449, at *2 (C.D. Cal. Mar. 12, 2009) (collecting cases). Slide Fire has not made any argument to establish prejudice, and the Court cannot discern any conceivable harm. Given this case's procedural posture, particularly the Court's imposition of a stay pending resolution of the present Motion to Dismiss, any prejudice resulting from Plaintiffs' addition of new claims is significantly mitigated.

**B. PLCAA**

Congress enacted the PLCAA upon finding that manufacturers and sellers of firearms "are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products . . . that function as designed and intended." *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1135 (9th Cir. 2009) (quoting 15 U.S.C. § 7901(a)(5)). To that end, the PLCAA provides that federal courts must "immediately dismiss[]" any case meeting the definition of a "qualified civil liability action." 15 U.S.C. § 7902(b). A qualified civil liability action

---

[2] Plaintiffs' appear to have abandoned their claim for private nuisance, *see infra* Section III.D.5.

encompasses, among other things, civil actions "brought by any person against a manufacturer or seller of a qualified product . . . for damages . . . or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party, but shall not include [specified enumerated exceptions.]" *Id.* § 7903(5)(A).

The Court previously determined that bump stocks are component parts of firearms, rendering them qualified products under the PLCAA. *See Prescott*, 341 F. Supp. 3d at 1187– 90; *see also* 15 U.S.C. § 7903(4) (defining "qualified product" as "a firearm . . . or a component part of a firearm or ammunition . . . ."). Further, it is undisputed that this is a "civil action" for damages against a manufacturer and seller of a qualified product arising from the "misuse of a qualified product by . . . a third party." *See id.* § 7903(5)(A).

Consequently, the PLCAA bars Plaintiffs from asserting their general tort claims[3] unless an exception to the PLCAA applies here. *Ileto*, 565 F.3d at 1136.

## C. Exceptions to the PLCAA

In enacting the PLCAA, Congress codified six exceptions to the definition of "qualified civil liability action," pursuant to which a seller or manufacturer of qualified products may be liable for a third party's unlawful misuse of its products. 15 U.S.C. § 7903(5)(A).

Of those six exceptions, Plaintiffs point to two that may apply here, thus permitting the case to proceed: (a) "an action brought against a seller for negligent entrustment or negligence per se;" and (b) "an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought[.]" *Id.*

---

[3] Because the Ninth Circuit has expressly addressed the scope of immunity provided by the PLCAA, and the PLCAA's preemption of "general tort theories of liability" in particular, *Ileto*, 565 F.3d at 1135, the Court rejects Plaintiffs' argument in favor of a narrower construction of the PLCAA. (Pls.' Resp. 14:7–16:12, ECF No. 35). *See Ileto*, 565 F.3d at 1135 n.6 (explaining that the PLCAA's preemption of common-law tort claims is consistent with the PLCAA's exception for negligence per se and negligent entrustment actions, which "demonstrates that Congress consciously considered how to treat tort claims.").

§§ 7903(5)(A)(ii)–(iii); (Pls.' Resp. to MTD ("Resp.") 2:19–24, 3:12–14:2, ECF No. 35).  The Court addresses each exception in turn.[4]

### 1.  Negligent Entrustment and Negligence Per Se

The PLCAA does not bar actions against sellers of qualified products for negligent entrustment or negligence per se. 15 U.S.C. § 7903(5)(A)(ii).  The PLCAA defines negligent entrustment as "the supplying of a qualified product by a seller for use by another person when the seller knows, or reasonably should know, the person to whom the product is supplied is likely to, and does, use the product in a manner involving unreasonable risk of physical injury to the person or others." *Id.* § 7903(5)(B).  Because the PLCAA does not "create a public or private cause of action or remedy," *id.* § 7903(5)(C), courts look to state law.

### a)  *Negligent Entrustment*

Under Nevada law, "[t]he key elements are whether an entrustment actually occurred, and whether the entrustment was negligent." *Zugel by Zugel v. Miller*, 688 P.2d 310, 313 (Nev. 1984).  Negligent entrustment applies "where one who has the right to control [an instrumentality] permits another to use it in circumstances where he knows or should know that such use may create an unreasonable risk of harm to others." *Goggin v. Enter. Leasing Co.-W., LLC*, 324 F. Supp. 3d 1179, 1182 (D. Nev. 2018) (quoting *Mills v. Continental Parking Corp.*, 475 P.2d 673, 674 (1970)).

Slide Fire argues that this claim fails because there is no allegation that Slide Fire sold, or otherwise entrusted the shooter with, a bump stock. (MTD at 14–15).  Plaintiffs respond that the negligent entrustment theory is cognizable under a theory of indirect entrustment and,

---

[4]  Slide Fire argues that an additional enumerated exception to the PLCAA, concerning products liability, has no application to this case. (MTD at 12–13); *see* 15 U.S.C. § 7903(5)(A)(v).  Plaintiffs do not appear to rely upon this exception in the Amended Complaint; nor do they advance any argument in favor of its application in their Response.  Pursuant to this District's local rules, the Court construes Plaintiffs' failure to support this exception as consenting to the Court's dismissal of claims insofar as they are premised upon this exception. *See* D. Nev. LR 7-2(d).

therefore, they need not plead a direct sale to demonstrate this claim's plausibility. (Resp. 10:20–26, ECF No. 35).

The Court agrees with Slide Fire that the entrustment element is lacking from this claim. Even under Plaintiffs' indirect entrustment theory, the allegations tying Slide Fire to the shooter are too attenuated to constitute entrustment.

### b) *Negligence Per Se*

To prevail under a negligence per se claim, a plaintiff must prove that (1) he or she belongs to a class of persons that a statute is intended to protect, (2) the plaintiff's injuries are the type the statute is intended to prevent, (3) the defendant violated the statute, (4) the violation was the legal cause of the plaintiff's injury, and (5) the plaintiff suffered damages. *Anderson v. Baltrusaitis*, 944 P.2d 797, 799 (Nev. 1997).

Plaintiffs assert that Slide Fire violated NRS 104.2314, which codifies the implied warranty of merchantability in Nevada, and NRS 598.0915(5), which counts knowingly false representations as to the characteristics of goods and services as a deceptive trade practice under Nevada law. *See* Nev. Rev. Stat. 104.2314; Nev. Rev. Stat. 598.0915(5).  Slide Fire argues that these statutes do not support a claim for negligence per se under Nevada law, and that Plaintiffs otherwise fail to satisfy the remaining elements of negligence per se. (MTD at 15–18).

The Nevada Supreme Court has endorsed negligence per se actions arising from violations of Nevada statutes in limited situations including, *inter alia*, building code violations, municipal code violations, and traffic statute violations. *See Del Piero v. Phillips*, 769 P.2d 53, 54 (Nev. 1989) (holding a jury may be instructed on negligence per se based upon a violation of the Reno Municipal Code governing pedestrians' right of way); *Barnes v. Delta Lines, Inc.*, 669 P.2d 709, 710–11 (Nev. 1983) ("[T]he two traffic statutes in question were clearly enacted to protect motorists such as appellant Barnes from other motorists who negligently proceed

onto a roadway without yielding the right of way to moving traffic.); *Vega v. E. Courtyard Assocs.*, 24 P.3d 219, 221 (Nev. 2001) ("[A]n alleged violation of a provision of the [Uniform Building Code] may be utilized as part of a plaintiff's negligence per se theory."). These decisions underscore the requirement that the statute in question must have been intended to protect against the type of injury asserted and the class of persons who suffer the injury.

Here, the Court concludes that the statutes at issue, governing breach of implied warranty of merchantability and deceptive trade practices, are not intended to protect against the injuries Plaintiffs assert. These statutes do not have the requisite specificity to meet the requirements of negligence per se. *Cf. Atikson v. MGM Grand Hotel*, 98 P.3d 678, 680 (Nev. 2004) (holding that NRS 455.010, which requires that excavators erect physical safeguards around excavations, applies to the plaintiff who fell into an excavation pit).

## 2. The PLCAA's Predicate Exception

Plaintiffs' next proffered exception to the PLCAA arises under 15 U.S.C. § 7903(5)(A)(iii), which provides that the PLCAA does not bar actions in which a manufacturer or seller of qualified products "knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought." The PLCAA provides examples where this exception applies, such as when a "manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product." *Id.* 7903(5)(A)(iii)(I). As the PLCAA does not confer any private rights of action, *see id.* § 7903(5)(C), this "exception has come to be known as the 'predicate exception,' because a plaintiff . . . must allege a knowing violation of a 'predicate statute.'" *Ileto*, 565 F.3d at 1132.

Here, Plaintiffs argue in favor of three avenues to establish a predicate statutory violation: (1) Slide Fire's alleged false entry on its application for a federal firearms license

("FFL"); (2) Slide Fire's alleged misrepresentations to the ATF about bump stocks being intended for persons with limited mobility; and (3) Slide Fire's alleged misrepresentations to the public at large concerning the safety and lawful status of bump stocks. (Resp. 3:12–9:5) (citing Am. Compl. ¶¶ 15–19, 91–103, 250–66, ECF No. 29). As explained below, the Court finds that only the third avenue—misrepresentations to the public concerning the safety and lawful status of bump stocks—plausibly alleges an applicable predicate statutory violation.

### a) *False Entry on FFL Application*

With its first avenue to establish a predicate statutory violation, Plaintiffs claim that Slide Fire violated 18 U.S.C. § 923(d)(1)(D) by knowingly and falsely representing itself to the ATF as a "manufacturer" of firearms in order to obtain a Type 7 FFL.[5] (Resp. 4:1–17). A Type 7 FFL application ("ATF Form 7") requires certification that the applicant is a "Manufacturer of Firearms Other than Destructive Devices," and, according to Plaintiffs, Slide Fire's bump stocks do not fall into the definition of "firearm" as provided on the ATF Form 7. (*Id.* 4:7–17).[6] Plaintiffs thus contend that Slide Fire must have misrepresented itself as a "manufacturer" because Slide Fire only sells third-party manufacturers' firearms after "merely add[ing] bump stocks." (*Id.* 4:18–28).

Slide Fire argues that, as a matter of law, it correctly represented itself as a manufacturer. Citing relevant ATF opinions, Slide Fire explains that attaching bump stocks to existing firearms and offering them for sale qualifies as manufacturing within the meaning of the relevant statutes and regulations. (Reply 3:24–4:6). Therefore, Slide Fire contends, "it is

---

[5] 18 U.S.C. § 923(d)(1)(D) prohibits firearm license applicants from "willfully fail[ing] to disclose any material information required," or making a "false statement as to any material fact."

[6] The Gun Control Act of 1968 defines a firearms "manufacturer" as "any person engaged in the business of manufacturing firearms or ammunition for purposes of sale or distribution." 18 U.S.C. § 921(a)(10). That statute does not, however, provide a further explanation.

pure speculation that [it] made any misrepresentations or false entries on its FFL application."
(Reply 3:13–14).

Slide Fire further contends that whether it acquired a Type 7 manufacturer's license or a
Type 1 dealer's license is immaterial to the allegations in the Amended Complaint. (*Id.* 4:10–
15). Consequently, Slide Fire argues that, even taking Plaintiffs' allegations as true, Plaintiffs
cannot show how any purported false entry on the ATF Form 7 proximately caused the harm
giving rise to their claims. (*Id.*).

The Court agrees with Slide Fire: applicable ATF rulings and regulations confirm a
firearms "manufacturer" can encompass entities, such as Slide Fire, who obtain firearms from
third-party manufacturers, reassemble or alter them to change their function or utility, and offer
them for further distribution. For example, ATF Ruling 2009-2 found that a person who
installs "drop in" replacement parts—meaning a part that can be installed in or on an existing,
fully assembled firearm without drilling, cutting, or machining—does not need to be licensed as
a manufacturer. *See* Ruling, *Definitions Licenses Required*, 2009 WL 10633416, at *2 (ATF
Jan. 12, 2009). Essential to that Ruling was how a drop-in replacement part "has the same
design, function, substantially the same dimensions, and does not otherwise affect the manner
in which the weapon expels a projectile by the action of an explosive." *Id.* In line with the
2009-2 decision, the ATF's 2009-1 Ruling found that a person who "primarily adds to or
changes a firearm's appearance by camouflaging the firearm by painting, dipping, or applying
tape does not need to be licensed as a manufacturer under the Gun Control Act." Ruling,
*Definitions Licenses Required*, 2009 WL 10633415, at *2 (ATF Jan. 12, 2009). The 2009-1
Ruling explained how, "[u]nlike manufacturing processes that primarily enhance a firearm's
durability, camouflaging is primarily cosmetic." *Id.*

In light of these ATF Rulings, Plaintiffs' allegations do not plausibly reveal that Slide
Fire knowingly made a false statement by applying as a "Manufacturer of Firearms Other than

Destructive Devices." Plaintiffs' claims depend on alleging that bump stocks significantly alter the function of semi-automatic weapons. (Am. Compl. ¶¶ 11–15, 25). Because the allegations show how a bump stock alters a rifle's function and rate in which it fires bullets, (*Id.* ¶ 25), and given the broad interpretation of "manufacturer" under federal firearms laws, Slide Fire would not have violated the law by applying for a Type 7 FFL as a manufacturer of firearms as alleged in the Amended Complaint. *See, e.g.*, *Broughman v. Carver*, 624 F.3d 670, 676 (4th Cir. 2010) ("The manner in which Broughman conducts his gun business; i.e., 'build[ing] custom bolt action rifles' by threading and chambering barrels to fit firearms actions, bluing the actions, and making and fitting stocks to the actions and barrels; undoubtedly places him within the statutory category of a firearms 'manufacturer.'").

### b) *Misrepresentations to the ATF*

Plaintiffs' second avenue to escape the PLCAA's restrictions arises from allegations that Slide Fire provided false information to the ATF in violation of 18 U.S.C. § 1001(a)(2). (Am Compl. ¶ 89). Section 1001(a)(2) criminalizes the making of any "materially false, fictitious, or fraudulent statement or representation" in "any matter within the jurisdiction of the [federal government]." "[A] concealment or misrepresentation is material if it 'has a natural tendency to influence, or was capable of influencing, the decision of' the decisionmaking body to which it was addressed." *Kungys v. United States*, 485 U.S. 759, 770 (1988) (citation omitted).

According to Plaintiffs, in 2010 Slide Fire sent a letter to the ATF explaining that bump stocks are intended to assist "persons whose hands have limited mobility." (*Id.* ¶¶ 16, 89–91). ATF then reviewed the bump stock device in view of Slide Fire's letter and concluded that this device did not need to be regulated as a firearm under the National Firearms Act or Gun Control Act. Plaintiffs allege that, had Slide Fire represented the true purpose behind bump stocks—"to convert a semi-automatic weapon into one with the capability of a fully automatic weapon"—the ATF would have subjected bump stocks to greater regulatory restrictions. (*Id.*

¶ 92). And with the ATF's unrestricted approval, according to the Amended Complaint, Slide Fire created a false, misleading impression that the ATF approved the legality of the bump stock device, and "enticed users" like the shooter at the Route 91 Festival. (*Id.*).

Slide Fire, in response, argues that its marketing of bump stocks was not a consideration in ATF's 2010 letter approving its sale and manufacture. (Reply 5:3–4, ECF No. 36). Slide Fire contends that Plaintiffs have not come forward with any statute or regulation that would make it illegal to sell the bump stock device unless it was useful or beneficial to persons with disabilities. (*Id.* 4:19–22).

The Court finds that Plaintiffs have not plausibly alleged how Slide Fire could have violated 18 U.S.C. § 1001(a)(2) by making materially false statements or representations to the ATF in its 2010 Letter. (Order 20:14–21:16). Slide Fire recently produced the 2010 letter it sent to the ATF. (Letter to ATF Requesting Evaluation, Ex. A to MTD, ECF No. 34-1).[7] That Letter states that the bump stock device has the "added benefit of allowing someone with limited mobility in their fingers the ability to use their off-hand to assist them in firing the rifle." (Letter to ATF Requesting Evaluation, Ex. A to MTD). The Amended Complaint does not, however, allege that this language about the device's "added benefit" was false. Rather, it imputes the ATF's statement that the device was intended to "assist persons whose hands have limited mobility" as Slide Fire's purpose for the device. (Am. Compl. ¶ 15).

Because the Amended Complaint does not allege or reveal falsity of Slide Fire's statement that its bump stocks had the "added benefit" of assisting those with limited mobility in their fingers, Plaintiffs have not plausibly alleged that Slide Fire violated 18 U.S.C. § 1001(a)(2) by making this statement to the ATF. Moreover, Plaintiffs do not identify a

---

[7] The Court considers Slide Fire's 2010 Letter at this stage without converting the Motion to Dismiss, (ECF No. 34), into a motion for summary judgment because neither party challenges its authenticity and it is referenced within Plaintiffs' Amended Complaint. (Am. Compl. ¶ 89); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

regulation, statute, or legal duty that required Slide Fire to correct the ATF's advisory evaluation and clarify its intent.

Even if Plaintiffs could plausibly plead that Slide Fire violated 18 U.S.C. § 1001(a)(2), that statute still must be a "Federal statute applicable to the sale or marketing" of a "qualified product" to invoke the PLCAA's predicate exception pursuant to 15 U.S.C. § 7903(5)(A)(iii). Based on the Ninth Circuit's decision in *Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009), the Court finds that § 1001(a)(2) would not fit within § 7903(5)(A)(iii)'s limited language.

The *Ileto* court provided guidance as to what statutes can serve as those "applicable to the sale or marketing" of a firearm, thus within the reach of the PLCAA's predicate exception. The specific holding in *Ileto* was "that Congress intended to preempt general tort law claims such as [the plaintiffs'], even though [a state] has codified those claims in its civil code." *Id.* at 1138. Thus, California's Civil Code sections 1714, 3479, and 3480—which codified common law rights of action for negligence and nuisance—were preempted by the PLCAA. *Id.* at 1133, 1138–39. Aside from that specific holding, the circuit did not identify a list of statutes that would fall within the PLCAA's predicate exception, *see id.* at 1138 n.9; but it provided brief guidance. That is, the *Ileto* court stated, based on the text and purpose of the PLCAA, "[w]e find it more likely that Congress had in mind [for the scope of the predicate exception] only these types of statutes—statutes that regulate manufacturing, importing, selling, marketing, and using firearms or that regulate the firearms industry—rather than general tort theories that happened to have been codified by a given jurisdiction." *Id.* at 1136.

The legal backdrop explained in *Ileto* steers the Court to find that 18 U.S.C. § 1001(a)(2) cannot serve as a predicate statute for purposes of the PLCAA. First, § 1001(a)(2) is not specific to regulating "manufacturing, importing, selling, marketing, and using firearms or . . . the firearms industry." *See Ileto*, 565 F.3d at 1136. It, instead, is a broad statute prohibiting false statements "in any matter within the jurisdiction of the executive, legislative, or judicial

branch of the Government of the United States" even when the underlying statement is not required to be made or kept under another statute or regulation. *See* 18 U.S.C. § 1001(a); *United States v. Facchini*, 832 F.2d 1159, 1161 (9th Cir. 1987), *on reh'g*, 874 F.2d 638 (9th Cir. 1989) (explaining how § 1001(a)(2) does not require the government to prove falsifications concerned a matter which another statute or a regulation required the defendant to provide).

Although the PLCAA provides an example of a predicate statute involving false statements (15 U.S.C. § 7903(5)(A)(iii)), that example is substantially different from 18 U.S.C. § 1001(a)(2). The PLCAA's false statement example applies when a manufacturer or seller "knowingly made any false entry in, or failed to make appropriate entry in, any record *required to be kept* under Federal or State law *with respect to* the qualified product . . . ." 15 U.S.C. § 7903(5)(A)(iii)(I) (emphasis added). Section 1001(a)(2), by contrast, prohibits falsification irrespective of statutory record-keeping requirements and irrespective of qualified products under the PLCAA. *See* 15 U.S.C. § 7903(4) (defining a "qualified product" as "a firearm . . . or ammunition . . . or a component part of a firearm or ammunition . . . ."). Section 1001(a)(2), consequently, is not a predicate statute.

### c) *Misrepresentations to the Public*

The third avenue that Plaintiffs pursue to establish a predicate exception arises through allegations that Slide Fire knowingly violated Nevada's Deceptive Trade Practices Act ("NDTPA"), specifically, NRS 598.0915(5), through the manner in which it conducted its sale and marketing of bump stocks.[8] (Am. Compl. ¶¶ 103). NRS 598.0915(5) creates a right of action against a person who "[k]nowingly makes a false representation to the characteristics . . . of goods . . . for sale . . . or a false representation as to the sponsorship, approval, status,

---

[8] Plaintiffs also point to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as capable of serving as a predicate statute. Because the Court finds that the NDTPA can serve a predicate statute, it need not presently address the potential for Section 43(a) of the Lanham Act to serve the same function.

affiliation or connection of a person therewith." Nev. Rev. Stat. 598.0915(5); Nev. Rev. Stat. 41.600.

Plaintiffs allege that Slide Fire violated the NDTPA, by making several false or misleading statements in connection with the sale of its bump stocks. First, Slide Fire apparently made the false representation that the ATF approved the legality of its bump stocks by displaying "ATF Approved" on the legend of its website's homepage. (Am. Compl. ¶ 146). Slide Fire also provided a link on its website's "Frequently Asked Questions" page to a letter from the ATF, which stated that bump stocks are not subject to regulation as a firearm. (*Id.* ¶¶ 17–19, 262). Plaintiffs last allege that Slide Fire made a false or misleading statement to the public by representing that purchasers could lawfully acquire bump stocks without submitting to a background check. (*Id.* ¶ 252).

Slide Fire makes two arguments in response. First, Slide Fire argues that under the Ninth Circuit's *Ileto* decision, the Nevada Deceptive Trade Practices Act cannot serve as a predicate statute because it generally applies to any and all advertisements and products rather than firearms specifically. (MTD at 19–20). Alternatively, Slide Fire argues that any alleged violation of the NDTPA cannot serve as a predicate statute because Plaintiffs cannot establish any alleged violation proximately caused the harm for which Plaintiffs seek relief. (*Id.*).

The Court again turns to the circuit's decision in *Ileto* for guidance and finds that neither this decision nor the PLCAA's language, purpose, and legislative history foreclose the NDTPA from serving as a predicate statutory violation.

As detailed above in the Court's discussion about 15 U.S.C. § 1001(a)(2), the *Ileto* court held that statutes codifying general tort theories of negligence and public nuisance may not serve as predicate statutes. *Ileto*, 565 F.3d at 1138. In making that decision, however, the circuit noted that the defendant's proposed interpretation of the predicate exception—as arising only with statutes "that pertained *exclusively* to the sale or marketing of firearms"—was "too

narrow." *Id.* at 1134. The circuit rejected such a narrow interpretation in part because not all the examples in the PLCAA's predicate exception, § 7903(5)(A)(iii), are limited to firearm regulations. Rather, "[t]he illustrative predicate statutes pertain specifically to sales and manufacturing activities, and most also target the firearms industry specifically." *Id.*

Finding that the text precluded the defendant's proposed definition of "applicable," the *Ileto* court turned to the statute's purpose and legislative history. *Id.* at 1135-37. The court highlighted the PLCAA's legislative history, noting that "all of the congressional speakers' statements concerning the scope of the PLCAA reflected the understanding that manufacturers and sellers of firearms would be liable only for statutory violations concerning firearm regulations *or sales and marketing regulations*." *Id.* at 1136–37 (emphasis added).

Here, unlike the general common law tort theories of negligence and nuisance at issue in *Ileto*, which can apply to any private conduct capable of being tortious, the NDTPA specifically regulates the sale and marketing of goods. Consequently, the circuit's decision in *Ileto* does not foreclose the NDTPA from serving as a predicate statute, and instead appears to permit it. *See Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 321 (Conn. 2019) ("Because [the Connecticut Unfair Trade Practices Act] specifically regulates commercial sales and marketing activities such as those at issue in the present case . . . it falls squarely within the predicate exception, as *Ileto* construed the legislative history.").

Because the Court finds that the NDTPA may serve as predicate statute, the Court now turns to the allegations in Plaintiffs' Amended Complaint. To survive Slide Fire's Motion to Dismiss, the Amended Complaint must plausibly allege that Slide Fire knowingly violated this statute and that the violation proximately caused Plaintiffs' alleged harm. 15 U.S.C. § 7903(5)(A)(iii).

The Court finds that the Amended Complaint plausibly alleges how Slide Fire violated the NDTPA for purposes of the predicate exception. Specifically, according to the Amended

Complaint, Slide Fire indicated in two locations on its website that the ATF approved the bump stock: the legend on the homepage said "ATF approved" and the FAQs section stated, in response to the question "ARE SLIDE FIRE® STOCK SYSTEMS LEGAL IN MY STATE," that its products "have been approved by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (BATFE) and we provide a copy of the approval letter on our website www.slidefire.com to any interested individual." (Am. Compl. ¶¶ 17–19, 262). The Amended Complaint alleges that the ATF did not approve the bump stock as being officially legal for any use, nor did the letter state that the ATF had done so. (*Id.* ¶¶ 15, 146, 262). Rather, the letter states that "the 'bump-stock' is a firearm part and is not regulated as a firearm under the Gun Control Act or the National Firearms Act." (*Id.*); (Letter from ATF Dated June 10, 2010, Ex. C to MTD, ECF No. 8-4). Thus, Plaintiffs have plausibly alleged that Slide Fire knowingly made the false statement that the bump stock was "approved" by the ATF in violation of the NDTPA.[9]

Finally, the Court concludes that, when viewing the facts alleged in the light most favorable to Plaintiffs, the Amended Complaint plausibly alleges that designating the bump stock as "ATF approved" proximately caused Plaintiffs' harm as required by 15 U.S.C.

_____

[9] The Court's below-discussion addressing the merits of Plaintiffs' claims finds that Plaintiffs' current allegations do not support standing for a private cause of action under the NDTPA. However, Slide Fire has not demonstrated, and the PLCAA's language does not appear to state, that a lack of standing to pursue a private cause of action under the NDTPA would then bar the NDTPA from serving as a predicate statute under 15 U.S.C. § 7903(5)(A)(iii). Moreover, Plaintiffs' claimed injuries based on Slide Fire's alleged knowing violation of a predicate statute extend to emotional damage, distress, and medical treatment, which are much broader than the commercial injuries for which Plaintiffs' NDTPA claim seeks to recover and assert for standing. (*See* Am. Compl. ¶¶ 102–113, 259–266) (Resp. 8:25–27, ECF No. 35) ("Plaintiffs have alleged all elements [to bring their NDTPA claim]: a commercial injury caused by Defendant's violation of N.R.S. § 598.0195."). Additionally, the PLCAA's examples of available predicates are illustrative on this issue. For instance, a civil plaintiff would not have a cause of action for a manufacturer knowingly making a false entry into a record required to be kept with respect to firearms. *See* 15 U.S.C. § 7903(5)(A)(iii); 15 U.S.C. § 7903(5)(C) ("[N]o provision of this chapter shall be construed to create a public or private cause of action."). However, such a violation would open the door for civil liability on other claims as long as the violation of the predicate statute proximately caused the plaintiff's harm. 15 U.S.C. § 7903(5)(A).

§ 7903(5)(A)(iii).  The Amended Complaint alleges that the shooter bought a bump stock from Slide Fire "in reliance on Defendants' misrepresentations that their methods of sale of the bump stocks were lawful." (Am. Compl. ¶ 255).  Specifically, they argue that "declaring Slide Fire's 'bump stock' to be 'legal' enticed users like [the shooter] (who only used legally purchased firearms during the October 1, 2017 massacre in Las Vegas) to purchase 'bump stock' devices from Slide Fire." (*Id.* ¶ 92).  Moreover, the Amended Complaint alleges how Slide Fire promoted the bump stock device for its high rate-of-fire capabilities, (*Id.* ¶¶ 66, 92); and later states that Slide Fire could then "foresee how [bump-stocks] would be misused" in the manner resulting in Plaintiffs' injuries. (*Id.* ¶¶ 69). *Cf. United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012) ("Short of bombs, missiles, and biochemical agents, we can conceive of few weapons that are more dangerous than machine guns.").  While the allegations are tenuous to establish proximate causation, they are sufficient to establish a predicate exception at the motion to dismiss stage.  The Court thus turns to the merits of Plaintiff's asserted claims below.

### D.  Claims for Relief[10]

#### 1.  Negligence

To state a claim for negligence, a plaintiff must plead: (1) the existence of a duty of care; (2) breach of that duty; (3) legal causation; and (4) damages. *Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280 (Nev. 2009).

---

[10]  Plaintiffs bring claims for negligent entrustment and negligence per se, both as independent claims for relief and to demonstrate that an exception to the PLCAA applies to this case.  Having decided these claims do not support an exception to the PLCAA because they are not cognizable under the facts of this case, these claims independently fail for the same reason.

Additionally, Plaintiffs appear to have abandoned, as a stand-alone cause of action, their sixth claim for negligent products liability because Plaintiffs do not provide a distinct response to Slide Fire's Motion seeking dismissal. Rather, Plaintiffs seem to address their theory underlying this claim in their discussion on negligence per se, negligence, and strict products liability. (*See* Resp. 17:13–18:2, 20:20–21:12, 14:23–15:19, ECF No. 17); (Resp. 23:10–14, ECF No. 35).  The Court thus addresses the merits of the underlying theory as discussed in Plaintiffs' Responses, but dismisses this claim without prejudice to the extent it is a stand-alone claim. *Cf. Nebab v. Bank of Am., N.A.*, No. 2:10-cv-01865-KJD, 2012 WL 2860660, at *3 (D. Nev. July 11, 2012) ("Plaintiff consents to granting the Motion to Dismiss by offering no response to Defendants' argument on this matter.").

### a) *Duty*

In determining whether a duty exists, courts rather than juries possess "the ultimate responsibility to define the scope of duty in relation to particular circumstances and to define the legal standard of reasonable conduct in light of the apparent risk." *Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 133 (Nev. 1998). "[T]he foreseeability of harm is a predicate to establishing the element of duty." *Dakis v. Scheffer*, 898 P.2d 116, 118 (Nev. 1995) (quoting *Merluzzi v. Larson*, 610 P.2d 739, 742 (Nev. 1980)). "A negligent defendant is responsible for all foreseeable consequences proximately caused by his or her negligent act." *Id.* (quoting *Taylor v. Silva*, 615 P.2d 970, 971 (Nev. 1980)). Whether a particular harm is foreseeable is generally a question for the trier of fact. *Id.*; *Merluzzi*, 610 P.2d at 742.

Slide Fire argues there is no legal basis to establish it "had a duty to market a bump stock solely as a device to help individuals with limited mobility." (MTD at 23). Slide Fire further contends that because Plaintiffs' injuries were caused by the intentional criminal actions of a third party, Plaintiffs' cannot establish foreseeability without demonstrating that the parties enjoyed a special relationship. (*Id.*).

While Slide Fire is correct that it is under no duty to control the dangerous conduct of another, *Sanchez*, 221 P.3d at 1280, Plaintiffs' allegations center upon Slide Fire's duty to reasonably and safely sell and market bump stocks given its alleged knowledge that customers would purchase them seeking an inexpensive alternative to a fully automatic machine gun. (Am. Compl. 122–23). "[A] negligent defendant is not relieved of liability," when a "third party's intervening intentional act is reasonably foreseeable." *Dakis for Dakis v. Scheffer*, 898 P.2d 116, 118 (Nev. 1995). "In such a scenario, the negligent party will only be liable if he knew or should have known at the time of the negligent conduct that he was creating such a situation and that a third party 'might avail himself of the opportunity to commit such a tort or

crime.'" *Bower v. Harrah's Laughlin, Inc.*, 215 P.3d 709, 725 (Nev. 2009) (quoting Restatement (Second) of Torts § 448 (1965)).

Plaintiffs argue that Slide Fire was best situated to control who had access to bump stocks and therefore could have taken reasonable precautions to limit their sale and distribution. According to the Amended Complaint, while Slide Fire manufactures bump stocks purportedly for use by disabled gun owners, Slide Fire took no action to limit its sales or marketing efforts to such persons. (Am. Compl. ¶ 26). On the contrary, Slide Fire promoted bump stocks as inexpensive alternatives to machine guns, thus permitting others and the shooter in this case to "circumvent federal law in obtaining fully automatic weapons." (*Id*. ¶¶ 20–22, 123).[11]

In support, Plaintiffs cite authority for the proposition that a firearm manufacturer's affirmative conduct in marketing and distributing a product may create a foreseeable risk of harm notwithstanding the absence of a special relationship. *See Ileto v. Glock, Inc.*, 349 F.3d 1191, 1201 (9th Cir. 2003) (holding that California law recognizes a duty arising from a firearm manufacturer's "affirmative actions in distributing their products to create an illegal secondary market for guns that targets illegal purchasers."); *City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1144 (Ohio 2002) ("[T]he issue is whether appellees are themselves negligent by manufacturing, marketing, and distributing firearms in a way that creates an illegal firearms market that results in foreseeable injury.").

While the Nevada Supreme Court has not squarely addressed a firearm manufacturer's duty in analogous contexts, the Court has recognized that a negligent party may be liable for knowingly creating, at the time of the negligent conduct, "such a situation . . . that a third party 'might avail himself of the opportunity to commit such a tort or crime.'" *Bower v. Harrah's*

---

[11] On January 29, 2019, Plaintiffs submitted a Notice of Regulatory Action, (ECF No. 38), notifying the Court that, after the commencement of this case, the Department of Justice amended the regulations of the Bureau of Alcohol, Tobacco, Firearms, and Explosives to clarify that bump-stock-type devices "are 'machineguns' as defined by the National Firearms Act of 1934 and the Gun Control Act of 1968," though this does not factor into the Court's analysis for purposes of this Order.

*Laughlin, Inc.*, 215 P.3d 709, 725 (Nev. 2009) (quoting Restatement (Second) of Torts § 448 (1965)); *see, e.g.*, *Price v. Blaine Kern Artista, Inc.*, 893 P.2d 367, 369–70 (Nev. 1995). In those scenarios, and contrary to Slide Fire's arguments, a special relationship is not a prerequisite to demonstrating a duty. *See, e.g.*, *Dobson v. Sprint Nextel Corp.*, No. 2:13-cv-00816-GMN-GWF, 2014 WL 553314, at *7 (D. Nev. Feb. 10, 2014) (holding a duty may arise on the part of a manufacturer notwithstanding the lack of a special relationship between the parties).

Assuming Plaintiffs' allegations are true, as the Court must at this stage, then Slide Fire's purposeful campaign to promote bump stocks as akin to machine guns establishes a foreseeable risk that third-party criminals may use bump stocks in furtherance of a military-style assault. Because of the potential for harm attendant to the sale of machine guns,[12] and given Plaintiffs' allegations that Slide Fire marketed bump stocks to "circumvent" the federal prohibition on machine guns, the Court cannot say as a matter of law that Slide Fire owed no duty to Plaintiffs. (Am. Compl. ¶ 123).

### b) *Breach*

Slide Fire argues that even if it owed Plaintiffs a duty of care, "there is no evidence that [Slide Fire] breached any such duty. (MTD at 23). Slide Fire explains that "the ATF expressly found that [its] product did not circumvent the law," leaving no basis for a finding of a breach. (*Id.*).

The problem with Slide Fire's argument here is that the breaches identified in the Amended Complaint concern Slide Fire's acts and omissions *after* the ATF's evaluation, when Slide Fire is alleged to have negligently marketed and promoted the bump stock. (*See* Am.

---

[12] *See United States v. Hale*, 978 F.2d 1016, 1018 (8th Cir. 1992) ("The legislative history of section 922(o) indicates that Congress considered the relationship between the availability of machine guns, violent crime, and narcotics trafficking.").

Compl. ¶ 123). Specifically, Slide Fire allegedly breached its duty of reasonable care by (a) failing to limit advertisement and promotion of bump stocks to only persons with disabilities, for whom bump stocks are purportedly designed; and (b) marketing bump stocks as "inexpensive device[s] to circumvent federal law in obtaining fully automatic weapons." (*Id.*). Whether or not the ATF concluded that the bump stock is legal under federal law, Nevada common law imposes stand-alone duties upon manufactures in the context of marketing and selling their products.

### c) *Causation*

Next, Slide Fire argues that the shooter's intentional conduct "constitutes a superseding and intervening act," such that Plaintiffs cannot establish proximate cause. (MTD 20:6–7). Plaintiffs respond that because the shooter's actions were foreseeable, his unlawful acts do not supersede causation. (Resp. 16:10–11).

While "unlawful conduct can interrupt and supersede the causation between a negligent act and injury, an unlawful act will not supersede causation if it was foreseeable." *Anderson v. Mandalay Corp.*, 358 P.3d 242, 248 (Nev. 2015). Plaintiffs point the Court to other cases in which courts have held a firearm manufacturer or seller may be liable in negligence for allegedly enabling criminal acts of third parties. (Resp. 16:17–21). *See, e.g.*, *Ileto v. Glock Inc.*, 349 F.3d 1191, 1209 (9th Cir. 2003); *James v. Arms Tech., Inc.*, 820 A. 2d 27, 44 (N.J. Super. Ct. App. Div. 2003); *Williams v. Beemiller, Inc.*, 100 A.D. 3d 143, 152 (N.Y. App. Div. 2012). Because Plaintiffs have adequately pleaded that the shooter's actions were a foreseeable consequence of Slide Fire's negligent marketing, distribution, and sales, the Court is satisfied, at this stage, that he did not break the chain of causation. Further, Slide Fire has not established, as a matter of law, that Plaintiffs' allegations are insufficient to establish causation. Such a determination will ultimately be left to the fact finder.

### 2. Negligent Infliction of Emotional Distress

Slide Fire moves to dismiss Plaintiffs' claims for negligent infliction of emotional distress ("NIED") under theories of direct liability and bystander liability. (MTD 21–22). According to Slide Fire, the bystander claim should be dismissed because Plaintiffs fail to allege a close relationship to any victim of the shooting. (MTD at 22). With respect to direct liability, Slide Fire contends that Nevada does not recognize such a theory of NIED. (*Id.* at 21–22). The Court agrees on both points.

#### a) *Bystander Liability*

"A bystander who witnesses an accident may recover for emotional distress" provided the bystander-plaintiff can prove that he or she "(1) was located near the scene; (2) was emotionally injured by the contemporaneous sensory observance of the accident; and (3) was closely related to the victim." *Grotts v. Zahner*, 989 P.2d 415, 416 (Nev. 1999). Under Nevada law, the closeness of the relationship between victim and bystander member is determined "upon family membership, either by blood or marriage." *Id.*

Here, Plaintiffs have not alleged the relation between the victims and themselves. Because Nevada law imposes strict limitations on the relationships that may give rise to a claim of NIED bystander liability, this claim, as presently pleaded, will be dismissed with leave to amend. *See, e.g.*, *King v. United States*, No. 5:15-cv-00753-CAS-DTBX, 2016 WL 146424, at *9 (C.D. Cal. Jan. 11, 2016).

#### b) *Direct Liability*

"Nevada law does not provide a cause of action for plaintiffs to allege direct infliction of emotional distress from conduct that was merely negligent." *Garcia v. Nevada Prop. 1, LLC*, No. 2:14-cv-1707-JCM-GWF, 2015 WL 67019, at *3 (D. Nev. Jan. 6, 2015); *See Kennedy v. Carriage Cemetery Serv., Inc.*, 727 F. Supp. 2d 925, 935 (D. Nev. 2010) (discussing *Schoen v. Amerco, Inc.*, 896 P.2d 469, 477 (Nev. 1995)).

In *Schoen*, which Plaintiffs cite in support of their direct NIED theory, the Nevada Supreme Court noted that "[i]f a bystander can recover for the negligent infliction of emotional distress, it is only logical that the direct victim be permitted the same recovery." *Schoen*, 896 P.2d at 477.  However, the Court made this observation in service of its conclusion that "the direct victim should be able to assert a negligence claim that includes emotional distress as part of the damage suffered as well as an intentional tort cause of action." *Id.*

Rather than recognizing a new cause of action for direct NIED, the *Schoen* Court merely held that emotional distress is a category of damages recoverable under existing tort theories of liability.  Other courts in this District are in accord with this reading of *Schoen*. *See, e.g.*, *Peterson v. Miranda*, 57 F. Supp. 3d 1271, 1279 (D. Nev. 2014) ("[T]he recovery for emotional distress by a direct victim does not change the basic requirement that only a bystander may bring a claim for negligent infliction of emotional distress."); *Carriage Cemetery Servs.*, 727 F. Supp. 2d at 935 ("*Shoen* permits a direct victim of a defendant's negligence to recover emotional damages, but there still must be an underlying injury separate from the emotional harm."); *Pitti v. Albertsons, LLC*, No. 2:11-cv-00280-MMD-CWH, 2012 WL 1931243, at *4 (D. Nev. May 29, 2012).

In light of this authority establishing that Nevada does not recognize an NIED claim based upon a theory of direct liability, the Court dismisses this claim with prejudice, though this does not foreclose recovery of emotional damages with Plaintiffs' negligence claim.

### 3.  Strict Products Liability

According to Slide Fire, Plaintiffs' strict products liability claim is premised upon bump stocks being unreasonably dangerous solely because of the potential for third-party misuse, which Slide Fire argues is a theory unsupported by any legal authority. (MTD at 24).  In response, Plaintiffs make clear that they are not proceeding under a "no defect" form of strict products liability. (Resp. 21:1–2, ECF No. 17); (Resp. 23:11–14, ECF No. 35).  Consequently,

for Plaintiffs to adequately support a claim for strict products liability under Nevada law, they must allege an injury "caused by a defect in the product, and that such defect existed when the product left the hands of the defendant." *Allison v. Merck & Co.*, 110 Nev. 762, 767 (Nev. 1994). A product is defective "when it fails to perform in the manner reasonably to be expected in light of its nature and intended function," which generally means that the product "malfunctions" as an "incident of normal handling." *Id.*; *Van Duzer v. Shoshone Coca Cola Bottling Co.*, 741 P.2d 811, 813 (Nev. 1987);

Here, Plaintiffs provide only a conclusory allegation that Slide Fire's product is "defective." (Am. Compl. ¶¶ 213–25). Plaintiffs do not explain how Slide Fire's bump stock device failed to perform in the manner reasonably expected or malfunctioned under normal handling conditions. Nor do Plaintiffs identify applicable legal authority that removes this pleading requirement and permits their theory of strict products liability to proceed under Nevada law as currently pleaded. The Court thus dismisses this claim, but does so without prejudice because it is not certain that Plaintiffs are entirely unable to provide factual allegations that can support a claim for strict products liability. *See DeSoto*, 957 F.2d at 658.

### 4. Public Nuisance

With respect to Plaintiffs' public nuisance cause of action, Plaintiffs' have not stated a claim upon which relief may be granted. In Nevada, "there is no private right of action for a public nuisance." *Diamond X Ranch LLC v. Atlantic Richfield Co.*, No. 3:13-cv-00570-MMD-WGC, 2017 WL 4349223, at *11 (D. Nev. Sept. 29, 2017); *Coughlin v. Tailhook Ass'n, Inc.*, 818 F. Supp. 1366, 1371–72 (D. Nev. 1993), *aff'd by Coughlin v. Tailhook Ass'n*, 112 F.3d 1052 (9th Cir. 1997). Accordingly, the Court dismisses this claim with prejudice.

### 5. Private Nuisance

Slide Fire argues that dismissal is warranted on the private nuisance claim because NRS 40.140 limits such claims to those implicating an interference with the use and enjoyment of

real property. Because firearm use is neither a nuisance per se nor an activity that concerns use and enjoyment of real property, Slide Fire contends that Nevada law does not recognize a private nuisance claim in this context. (MTD at 23–24). Plaintiffs have not responded to Slide Fire's Motion as to private nuisance. The Court construes the lack of response as Plaintiffs consenting to dismissal of this claim. *See* D. Nev. LR 7-2(d).

### 6. False Advertising in Violation of Section 43(a) of the Lanham Act

A cause of action under Section 43(a) of the Lanham Act extends to a plaintiff that alleges "an injury to a commercial interest in reputation or sale." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–32 (2014). Moreover, a plaintiff suing under Section 43(a) must show "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising;" which "occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133.

Here, Plaintiffs' alleged injuries do not support a claim under Section 43(a) of the Lanham Act as currently pleaded because they are not to a "commercial interest in reputation and sale." *See id.* at 131–32. Rather, the alleged injuries are to "[Plaintiffs'] ability to carry on their commercial business." (Am. Compl. ¶ 255). Further, that inability to carry on their commercial business is not from a withholding of trade by consumers due to Slide Fire's deception of customers, but is instead from "the emotional trauma [Plaintiffs] experienced as a result of defendants' sale of the bump stock device and its subsequent use by the shooter." (Am. Compl. ¶ 255). The Court thus dismisses this claim without prejudice.

### 7. Deceptive Trade Practices Pursuant to NRS 598.0915(5)

Pursuant to NRS 598.0915(5), a defendant engages is a "deceptive trade practice" if, "in the course of his or her business or occupation," the defendant "knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval,

status, affiliation or connection of a person therewith." Nev. Rev. Stat. 598.0915. NRS 41.600 governs standing to bring a claim under NRS 598.0915(5), and it states that "an action may be brought by any person who is a victim of consumer fraud." NRS 41.600 does not define who qualifies as a "victim," but Courts interpreting NRS 41.600's language have determined standing by cross-referencing the sections defining deceptive trade practices named in NRS 41.600. In doing so, courts have found standing under NRS 41.600 beyond just "business competitors" of a defendant or "consumers" of a defendant's goods or services. *Del Webb. Del Webb Communities, Inc. v. Partington*, 652 F.3d 1145, 1153 (9th Cir. 2011). Moreover, the circuit in *Del Webb* found that NRS 41.600 generally limits standing to those who were "directly harmed" by a defendant's deceptive trade practices. *Id.*

Here, Plaintiffs allege that Slide Fire violated NRS 598.0915(5) and caused them commercial injury by: (1) creating the "false and misleading impression that the bump stock device could be used by members of the public for a lawful, safe purpose"; and (2) "displaying the 'ATF approved' legend on its homepage . . . [thereby] knowingly creat[ing] the false and misleading impression that the ATF letter was an official approval of the legality of the bump stock." (Am. Compl. ¶¶ 261–62) (Resp. 8:25–27, ECF No. 29) (clarifying that their claim under the NDTPA concerns "a commercial injury"). These allegations do not, however, reveal a direct harm of commercial injury by Slide Fire's actions. According to the Amended Complaint, it was not the false statement about the lawfulness of a bump stock device or ATF's approval that "deprived Plaintiffs of their commercial business"; it was the "emotional trauma they experienced as a result of defendants' sale of the bump stock device *and* its subsequent use by the shooter." (*Id.* ¶ 255) (emphasis added). Thus, while NRS 598.0915(5) is not limited to only consumers or competitors of a defendant, Plaintiffs' alleged commercial injuries here are too attenuated to establish standing for this claim. Nevertheless, the Court is not certain that

Plaintiffs would be unable to cure this deficiency; and thus, dismissal is without prejudice. *See DeSoto*, 957 F.2d at 658.

### E. Constitutionality of the PLCAA

Finally, Plaintiffs contend the PLCAA is unconstitutional because it violates the Tenth Amendment, the Fifth's Amendment's Due Process Clause, and the Fifth Amendment's Equal Protection Clause. (Resp. 18:16–23:9). According to Slide Fire, the Court must reject Plaintiffs' constitutional arguments because each federal and state court to address these precise contentions has rejected them in favor of upholding the PLCAA. (Reply 9:22–12:17). In line with the decisions of other courts that have dealt with this issue, the Court agrees with Slide Fire. *See Ileto v. Glock*, 565 F.3d 1126, 1138–42 (9th Cir. 2009), *cert denied*, 560 U.S. 924 (2010); *City of New York v. Beretta*, 524 F.3d 384, 392–98 (2nd Cir. 2008), *cert denied*, 556 U.S. 1104 (2009); *Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216, 1222 (D. Colo. 2015); *District of Columbia v. Beretta*, 940 A.2d 163, 172–82 (D.C. 2008), *cert denied*, 556 U.S. 1104 (2009); *Delana v. CED Sales, Inc.*, 486 S.W.3d 316, 323–25 (Mo. 2016).

## V. <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Slide Fire's Motion to Dismiss, (ECF No. 34), is **DENIED in part** and **GRANTED in part**. Plaintiffs have plausibly alleged a claim for negligence against Slide Fire. By contrast, Plaintiffs have not plausibly alleged the following claims, and they are dismissed without prejudice with leave to amend: negligent infliction of emotional distress under a theory of bystander liability; negligent products liability; strict products liability; false advertising in violation of Section 43(a) of the Lanham Act; deceptive trade practices pursuant to Nev. Rev. Stat. 598.0915; and private nuisance. Last, the following claims alleged by Plaintiffs are dismissed with prejudice: public nuisance; negligent infliction of emotional distress (direct); negligence per se pursuant to NRS 104.2314 and NRS 598.0915; and negligent entrustment of a dangerous instrument.

**IT IS FURTHER ORDERED** that if Plaintiffs elect to amend their claims that are dismissed without prejudice, Plaintiffs shall have twenty-one days from the date of this Order to do so.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike, (ECF No. 46), is **GRANTED**.

**IT IS FURTHER ORDERED** that the stay of discovery previously authorized by the Court, (ECF No. 27), is lifted. This action shall return to the normal litigation track.

**DATED** this __26__ day of September, 2019.


_____
Gloria M. Navarro, District Judge
United States District Court